```
_____ FILED   _____ ENTERED
_____ LODGED  _____ RECEIVED

         DEC 01 2016      JMG

              AT SEATTLE
       CLERK U.S. DISTRICT COURT
    WESTERN DISTRICT OF WASHINGTON
BY                         DEPUTY
```

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| STATE OF WASHINGTON, | ) Case No. CV-16-1655 RAJ-JPD |
| --- | --- |
| Plaintiff, | ) No. 16-1-03103-6 SEA |
| vs. | ) |
| Kyle Canty, | ) STATE'S BRIEFING ON DESTROYED CELL PHONE – ARIZONA v. YOUNGLBOOD ANALYSIS |
| Defendant *Pro Se*. | ) |

COMES NOW, State of Washington, by and through its attorney of record and requests this Court not dismiss the case at bar.

### A. ISSUES PRESENTED

1. Is the "missing" video materially exculpatory evidence that warrants dismissal, or is the evidence only "potentially useful?"
2. Has the defendant failed to meet his burden of showing bad faith?

### B. RELEVANT FACTS

On July 2, 2016, Seattle Police Department Officer Culbertson made contact with the defendant near 3rd Avenue and Dilling Way. Officer Culbertson has interacted with Mr. Canty previously. Culbertson rolled down his window and said "Hi" to Canty. Canty began yelling at Officer Culbertson, saying he was being harassed by police and spewing obscenities. Culbertson

ORDER THAT DEFENDANT BE ALLOWED TO
VIEW DISCOVERY VIA LAPTOP AT A KING
COUNTY CORRECTIONAL FACILITY - 1

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION
W400 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9015/FAX (206) 296-0191

had prior interactions with Canty. Canty stated to Officer Culbertson that he "was not afraid to throw bullets at him". He also told Culbertson that he would assault other officers. Officer Culbertson, based on his training, experience and knowledge took this as a threat to shoot him. Canty then told the officer "You going to sit in your car and talk shit" and then told Culbertson to get out of the car to see what would happen. Officer Culbertson felt he was being baited by Canty to engage in police interaction and believed he would have been assaulted by Canty if he got out of his police car. Culbertson left the area in an attempt to deescalate Canty and completed an SPD report on the incident, as well as requested a "Hazard" be posted in the NCIC database to alert other officers of the threat. Officer Culbertson believed he had probable cause to arrest Canty at the time for Felony Harassment but did not attempt to at the time due to officer safety considerations. Canty was never under arrest during this contact, and at all times he was free to go.

Detective Renihan began a follow up investigation of Canty. Culbertson described Canty to Renihan as Culbertson "legitimately believes S/Canty could be the next Christopher Monfort" and could kill an officer. He found that in addition to his interactions with Culbertson, Canty had been threatening other SPD officers. Specifically, on 7/5/2016 Canty made statements at the Seattle Police Department OPA office. Canty made statements that he would purchase a firearm to defend himself and would shoot officers if they pulled a gun or taser on him without a warrant.

**Count 2 – Assault 3**

As Renihan continued his investigation, Canty continued his contact with police. At a rally on July 7, 2016, Canty told officers, to include Detective Fry, that a box he was carrying had extended magazines and that he was going to buy a Glock next. On July 7, 2016, five Dallas

ORDER THAT DEFENDANT BE ALLOWED TO
VIEW DISCOVERY VIA LAPTOP AT A KING
COUNTY CORRECTIONAL FACILITY - 2

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION
W400 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9015/FAX (206) 296-0191

1  Police Officers were killed and 12 people were shot. Canty also called the Seattle Police
2  Department speaking to civilian administrative staff, and threatening the shoot officers "if they
3  come towards him".  Fearing the community safety was at risk by Canty's increasingly
4  concerning contacts with police, coupled with information he gleaned during his investigation,
5  Detective Renihan began the process for an Emergent Detention under Washington RCW
6  71.05.153.

7  On July 8, 2016, SPD SWAT Officer Marshall Coolidge was working as a rapid response
8  unit deployed in response to the Dallas Police murders.  Coolidge was given a safety bulletin
9  with Canty's picture on it.  Coolidge recognized Canty from his picture as a man he had
10 encountered just prior to receiving the bulletin.  Canty had just previously been taunting officers,
11 seemingly in a way to attempt to elicit a response.  Officer Coolidge and other members of this
12 response unit contacted Canty and attempted to take him into custody for an emergent detention.
13 Canty fought with the officers.  During this fight, Canty kicked Coolidge in the head, causing
14 him pain, and knocking him back.  Canty continued to kick at Coolidge.  Coolidge noted that as
15 the kick was occurring, Canty was looking directly at Coolidge and appeared to be targeting
16 Coolidge with his kicks.

17

18 ### C. PROCEDURAL HISTORY

19 On July 8, 2016, the defendant was picked up by SPD and taken to Harborview Medical
20 Center (HMC) for evaluation based on his numerous interactions with police, federal entitites, and
21 threats to police and news.  At HMC, Detective Renihan provided Canty's items that he had with
22 him at the time to HMC security staff.  That staff took the items to Canty's location in the hospital.
23

ORDER THAT DEFENDANT BE ALLOWED TO
VIEW DISCOVERY VIA LAPTOP AT A KING
COUNTY CORRECTIONAL FACILITY - 3

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION
W400 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9015/FAX (206) 296-0191

1     On July 12, 2016, Renihan was contacted by an Involuntary Treatment Act Court prosecutor
2 about Canty. Renihan provided more information about Canty that he had learned to the ITA court
3 prosecutor[1]. On July 13, 2016, Detecitve Renihan referred the current cause to the King County
4 Prosecutor's office for filing of Felony Harassment charges.

5     After charges were filed on July 13, 2016, Detective Renihan went to HMC and picked
6 Canty and his effects for transport to jail. At police headquarters Renihan separated Canty's items,
7 removing a brown box to hold for evidence Canty had told Sgt. Fry earlier on July 7th, 2016, who the
8 state will be calling at 3.5, that he had high capacity weapon magazines in the box. The rest of
9 Canty's items were placed into safekeeping at Seattle Police.

10     Canty has filed many motions, none ever properly served on the state. On August 9, 2016,
11 Canty filed a motion to dismiss detailing "he was the one narrating the video with both hands on my
12 phone.". This description matches the video the state has of Canty's interaction with Officer
13 Culbertson. The court forwarded these motions to the prosecutor on August 24, 2016, as Canty did
14 not properly file them.

15     On September 1, 2016, the court heard the defendant's motions to dismiss, which were
16 denied. AT that time the defendant said there may be other video of an interaction . The prosecutor
17 emailed the Detective requesting a check for the video, not knowing if it was ICV or otherwise.
18 Detective Renihan followed up with Officer Culbertson requesting info about possible other video.
19 Culbertson noted that he did not have his ICV running at the time but thought the defendant may
20 have recorded a video of incidents between them. Prosecutor Aubony Burns located a video on
21 Youtube of Canty interacting in a harassing way with Culbertson. This was provided to Canty in
22 discovery.

---

[1] ITA prosecutors represent the various psychiatric hospitals and practice in civil court, not Washington criminal courts.

ORDER THAT DEFENDANT BE ALLOWED TO
VIEW DISCOVERY VIA LAPTOP AT A KING
COUNTY CORRECTIONAL FACILITY - 4

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION
W400 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9015/FAX (206) 296-0191

1  On September 30, based on the history of the case and the various claims brought
2  out by the defendant in a letter to the court (not sent to the prosecutor but received from the court as
3  courtesy), Prosecutor Aubony Burns wrote an email to DAJD Sergeant Michael Allen trying to
4  arrange a safe way for Canty to view his cell phone that may be kept in his property. Canty did not
5  have an investigator nor had he requested the phone directly from anyone the State was aware of at
6  the time (or now). Allen informed the State that his phone was in his property with Seattle PD
7  safekeeping and that Canty had receipts of this. The Prosecutor also emailed with DAJD attorney
8  Robin Fox about this and was advised that normally investigators or family arrange for property
9  pickup and not the jail. On September 30, 2016, Prosecutor Burns emailed Detective Renihan
10 requesting information on how to get a detective to pull the phone for trial for Canty as Renihan was
11 out on FMLA leave.

12  Trial in this case was sent out on October 3, 2016. At that time the State requested the Court
13 issue an order to allow pick up of the phone from Seattle Police safekeeping by any officer with the
14 order as Renihan was on FMLA and the State wanted Canty to be able to have this phone as he
15 alleged there may be exculpatory material on it. The court signed an order. This was not entered
16 into ECR that the State can find, but will be reflected on the minutes/. Moments later in court, the
17 Court, Honorable Judge Spearman, raised competency based on Canty's behavior in court, stating
18 concerns he was not able to represent himself. A competency evaluation was done and Mr. Canty
19 was found competent. The case was put back on the trial calendar for November 21, 2016. The case
20 was sent out for November 28, 2016 trial when Prosecutor Burns' current trial ended on November
21 23, 2016.

22  The State arranged with Detective Renihan to pull the phone from safekeeping for trial to
23 comply with Judge Spearman's order. On November 28, 2016, Renihan went to SPD Safekeeping

ORDER THAT DEFENDANT BE ALLOWED TO
VIEW DISCOVERY VIA LAPTOP AT A KING
COUNTY CORRECTIONAL FACILITY - 5

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION
W400 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9015/FAX (206) 296-0191

to pick up the phone to learn that it had been destroyed by SPD policy. Renihan explained in court that a Safekeeping Tag would be given to the defendant in custody by the jail where he would be able to contact the SPD safekeeping unit and request items. The slip indicates the process for a request for an extension of time to hold the items.

Prosecutor Burns asked Detective Renihan to look into what happened at the jail with the property slip. Renihan provided a report of his actions from November 28, 2016, detailing he spoke with Corrections Tech Naylor at the King County Jail property room. Per Renihan, Naylor stated that the Safekeeping slips were in Canty's property bag, but not listed on Canty's "I card", as it should have been. Per Naylor, Canty requested this "I card" in August. Per Renihan, Naylor advised that had the property tags/slips been logged onto the I Card, the jail would have known to look for them when Canty requested his I Card.

### D. ARGUMENT

#### I. THE ALLEGED "MISSING" VIDEO EVIDENCE IS NOT "MATERIALLY EXCULPATORY"; AT BEST, IT IS ONLY "POTENTIALLY USEFUL."

In Arizona v. Youngblood, the United States Supreme Court announced the seminal standard for evaluating whether the destruction of evidence in a criminal case constitutes a due process violation requiring dismissal. This standard divides evidence into two categories: "materially exculpatory" evidence and "potentially useful" evidence. Youngblood, 488 U.S. at 57-58. If the State fails to preserve "materially exculpatory" evidence, criminal charges must be dismissed. Wittenbarger, 124 Wn.2d at 475; State v. Groth, 163 Wn. App. 548, 557, 261 P.3d 183 (2011). In contrast, if the State destroys "potentially useful" evidence, dismissal is warranted only if the defendant proves that the evidence was destroyed in bad faith.

ORDER THAT DEFENDANT BE ALLOWED TO
VIEW DISCOVERY VIA LAPTOP AT A KING
COUNTY CORRECTIONAL FACILITY - 6

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION
W400 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9015/FAX (206) 296-0191

1  Youngblood, 488 U.S. at 58; Wittenbarger, 124 Wn.2d at 477. This distinction is based on the
2  Supreme Court's "unwillingness to … impos[e] on the police an undifferentiated and absolute
3  duty to retain and to preserve all material that might be of conceivable evidentiary significance in
4  a particular prosecution." Youngblood, 488 U.S. at 58.

5      Youngblood has governed destruction of evidence claims in Washington State since at
6  least 1992, when this standard was expressly adopted by the Washington Supreme Court. State
7  v. Ortiz, 119 Wn.2d 294, 305, 831 P.2d 1060 (1992). In 1994, the Washington Supreme Court
8  clarified that the Youngblood standard governs due process claims under the Washington
9  constitution as well. Wittenbarger, 124 Wn.2d at 481 ("We are not convinced separate and
10 independent state grounds exist to support a broader interpretation of the state due process clause
11 in the context of preservation of evidence.").

12     Defense relies City of Seattle v. Fettig, 10 Wn. App. 773, 519 P.2d 1002 (1974) for the
13 proposition that the court's inquiry should be focused instead on whether the evidence was
14 "materially favorable." Like this case, Fettig considered whether destruction of video evidence
15 violated due process. Id. at 774. But Fettig was decided 14 years before Youngblood and 20
16 years before Wittenbarger, and to the extent that Fettig applies a standard other than that
17 announced in Youngblood and Wittenbarger, that case is no longer good law. Should this court
18 rely on the "materially favorable" standard in Fettig rather than Youngblood, this court will
19 apply an incorrect legal standard.

20     Although Fettig's legal analysis has not survived Youngblood, it is worth noting that the
21 Fettig court would have reached the same result under the Youngblood standard. In other words,
22 in a post-Youngblood world, Fettig reached the right result for the wrong reason. In Fettig, a
23 videotape had been admitted in evidence at the defendant's first trial. Id. The video was

ORDER THAT DEFENDANT BE ALLOWED TO
VIEW DISCOVERY VIA LAPTOP AT A KING
COUNTY CORRECTIONAL FACILITY - 7

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION
W400 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9015/FAX (206) 296-0191

negligently destroyed between his first trial and his second trial. Id. The trial judge from the first trial had seen the videotape and testified in the second trial that the video was both material and exculpatory. Id. Accordingly, the video in Fettig would have met the Youngblood and Wittenbarger standard for "materially exculpatory" evidence, the destruction of which requires dismissal.

Fettig is factually distinguishable from this case on the specific point that matters under Youngblood: the distinction between "materially exculpatory" and "potentially useful" evidence. The video in Fettig was "materially exculpatory" and, as discussed below, the video in this case is "potentially useful." This factual distinction is absolutely critical under the applicable Youngblood standard—because Fettig involves materially exculpatory evidence, Fettig is simply not applicable to this case. And to the extent that Fettig also applies an abrogated legal standard, this Court should not rely on it for authority.

At most, the "missing" video is potentially useful but entirely speculative. The video might support Canty's version of events, but it also might confirm Culbertson's version of events, it might show nothing of relevance, and it might never have existed in the first place. Concededly, among these many possibilities, it is possible that the video may have been favorable to Canty. But it is also possible that the video would not be favorable to Canty. And as a matter of clearly established law, evidence that "could" help the defense is not materially exculpatory. Wittenbarger, 124 Wn.2d at 475; Groth, 163 Wn. App. at 559.

"Materially exculpatory" is a term of art that describes a "very narrow category" of evidence. Groth, 163 Wn. App. at 557. Evidence is materially exculpatory ***only*** if the evidence "possess[es] an exculpatory value *that was apparent before it was destroyed*" and is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION
W400 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9015/FAX (206) 296-0191

available means." Wittenbarger, 124 Wn.2d at 475 (emphasis added). "A showing that the evidence *might* have exonerated the defendant is *not* enough." Id. (emphasis added). Stated differently, "[t]he mere *possibility* that an item of undisclosed evidence *might* have helped the defense or *might* have affected the outcome of the trial, however, does not establish 'materiality' in the constitutional sense." State v. Mak, 105 Wn.2d 692, 704-05, 718 P.2d 407, abrogated on other grounds by State v. Hill, 123 Wn.2d 641, 645, 870 P.2d 313 (1994) (emphasis in original).

Groth is instructive on this point. In that case, almost all of the physical evidence in the case was destroyed for an unknown reason. Groth, 163 Wn. App. at 559. Although the defendant argued that this evidence was materially exculpatory because it "probably exonerated him," the court disagreed. Id. at 558. Because the evidence had never been tested or analyzed, the court held that the evidence did not have "apparent exculpatory value" and therefore was not materially exculpatory under Youngblood and Wittenbarger. Id. At most, the evidence was only "potentially useful," which requires the defendant to show that the evidence was destroyed in bad faith. Id. at 557.

In this case, we do not know what the "missing" video would have showed. Therefore, as a matter of law, this video (assuming it existed at all) did not have apparent exculpatory value. Assuming it even existed, if it is anything like Canty's other videos, it could help Canty, it could help the State, or it could do neither. No one knows. This is simply not enough to meet the standard of materially exculpatory evidence. Wittenbarger, 124 Wn.2d at 475. At best, this evidence is potentially useful.

II. **CELL PHONE VIDEO EVIDENCE, IF IT EVEN EXISTED IN THE FIRST PLACE, WAS NOT DESTROYED IN BAD FAITH.**

ORDER THAT DEFENDANT BE ALLOWED TO VIEW DISCOVERY VIA LAPTOP AT A KING COUNTY CORRECTIONAL FACILITY - 9

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION
W400 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9015/FAX (206) 296-0191

Because the "missing" videos are not materially exculpatory, it must be analyzed as "potentially useful" evidence. Destruction of potentially useful evidence does not violate due process unless the defendant can show that the video was destroyed in bad faith. Youngblood, 488 U.S. at 57-58. "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." Id. at 56. In other words, a defendant must show that the destruction of evidence was improperly motivated with respect to evidentiary value. Groth, 163 Wn. App. at 559.

It is the *defendant's* burden to prove bad faith. Youngblood, 488 U.S. at 58; Wittenbarger, 124 Wn.2d at 477; State v. Copeland, 130 Wn.2d 244, 280, 922 P.2d 1304 (1996); State v. Straka, 116 Wn.2d 859, 884-86, 810 P.2d 888 (1991); Groth, 163 Wn. App. at 559. A defendant does *not* meet this burden by showing that evidence was destroyed for an unknown reason or that the State acted negligently. Groth, 163 Wn. App. at 559; see also State v. Ortiz, 119 Wn.2d 294, 302, 831 P.2d 1060 (1992) (holding that negligent destruction of semen samples did not rise to the level of bad faith that justifies dismissal). As a matter of law, negligent destruction of potentially useful evidence does *not* rise to the level of bad faith that constitutes a due process violation. Groth, 163 Wn. App. at 559.

  a. **Requiring the State to produce evidence to show the absence of bad faith improperly shifts the burden under Wittenbarger.**

As noted above, it is the defendant's burden to show bad faith. Youngblood, 488 U.S. at 58; Wittenbarger, 124 Wn.2d at 477. It is not the State's obligation to show an absence of bad faith. See id.

The State is not aware of any authority to support shifting the burden to the State, nor is the State aware of any authority requiring the State to provide reasons for failing to preserve

ORDER THAT DEFENDANT BE ALLOWED TO
VIEW DISCOVERY VIA LAPTOP AT A KING
COUNTY CORRECTIONAL FACILITY - 10

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION
W400 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9015/FAX (206) 296-0191

potentially useful evidence. In doing so, the Court will apply an unprecedented rule that, whenever evidence of any conceivable evidentiary significance is destroyed, the burden shifts to the State to explain why it was not preserved and to prove that the reason is a good one. This rule not only eliminates any distinction between materially exculpatory or potentially useful evidence, it also directly contravenes the policy decision of the United States Supreme Court when it declined to "impos[e] on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Youngblood, 488 U.S. at 583

In this case, the defendant cannot meet his burden because he has alleged no facts supporting his claim that the State destroyed evidence in bad faith. Because the defendant has not met his burden, the motion to suppress should be denied.

**b. SPD acted reasonably and conformed to standard policies and procedures regarding surveillance video evidence.**

Should the court choose to impose the burden on the State, the State expects to elicit testimony regarding the standard policies and procedures of collecting, recording, and logging property and evidence of detained and arrested subjects. Detecitve Renihan logged all of his actions with the property in his reports, and the State attempted to get this phone for the defendant through the court process, despite the defendant never actually requesting it directly from the State. For these reasons, there is no evidence of bad faith, and the case should not be dismissed due to destruction of the cell phone in the normal course of business.

### E. CONCLUSION

For the foregoing reasons, the State requests this Court deny the Defendant's Motions to Suppress.

ORDER THAT DEFENDANT BE ALLOWED TO
VIEW DISCOVERY VIA LAPTOP AT A KING
COUNTY CORRECTIONAL FACILITY - 11

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION
W400 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9015/FAX (206) 296-0191

1 | DATED this ____ day of _____, 2016.

DAN SATTERBERG
King County Prosecuting Attorney

By: _____
Aubony Burns, WSBA #46544
Deputy Prosecuting Attorney

ORDER THAT DEFENDANT BE ALLOWED TO
VIEW DISCOVERY VIA LAPTOP AT A KING
COUNTY CORRECTIONAL FACILITY - 12

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION
W400 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9015/FAX (206) 296-0191