UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FILED / ENTERED

AUG 10 2017

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                    DEPUTY

| | |
|---|---|
| KYLE LYDELL CANTY<br>Plaintiff, | Case No. 2:16-CV-01655-RAJ-JPD |
| VS.<br><br>CITY OF SEATTLE, et al<br>Defendants. | PLAINTIFF'S CONSOLIDATED NOTICE AND MOTION PURSUANT TO SIXTH AMEND RIGHTS VIOLATIONS OF U.S. CONST./ FOUL PLAY/ HABEAS CORPUS/ EXCESSIVE FORCE "ORAL ARGUMENT REQUESTED" NOTE ON MOTION CALENDAR AUGUST ___ 2017 |

P 1 of 5

COMES NOW, the Plaintiff Kyle Lydell Canty, In Propria Persona and of Sui Juris on the 7th day of month of August year 2017, moves this Court Pursuant to Sixth Amendment U.S. Const. Rights Violations, Foul Play, Habeas Corpus, and Excessive Force

I. Relief Requested

Plaintiff Kyle Lydell Canty requests the Federal Witness Protection Program Under the Federal Whistle-Blowers Act if one still exsists, to be released from King County Correctional Facility- the Plaintiff has been Caged like a animal here at this facility for Eight months in which equals one State year, the Plaintiff arived back here at this facility on December 22nd 2016, after he was released on November 29, 2016 the first Case was

P 2 of 5

Dismissed With Prejudice, for Brady Violations remember?

## II.  Statement of Facts

Plaintiff has been locked up here at this Correctional facility for Eight months Straight. The Plaintiff no longer feels safe anymore at this facility When inmates are getting murderd and Correctional officers have Some role in it (officer Myron Allen) According to the Sentencing reform act of Washington "S.R.A." The Plaintiffs Sentence on both Charges of assault in the Second degree With no prior felonies Would be 3-9 months only, no exceptions. The Plaintiff maintains his innocence on King County Cause No. 16-1-06917-3 SEA. The Plaintiff Was not representing himself "Pro se" on King County Cause No. 16-1-06917-3 SEA

P 3 of 5

The Plaintiff's assigned Counsel on King County Cause No. 16-1-06917-3-SEA is Sandro Parrotta WSBA No. 27948 (Exhibit 20) Defendants King County tried to force the Plaintiff Kyle Lydell Canty to sign a Waiver of Counsel and Mr. Canty refused several times (Exhibit 21) The Plaintiff's assigned Counsel Withdrew himself by making up lies two weeks before the Plaintiff Kyle Lydell Canty's Criminal trial on King County Cause No. 16-1-06917-3 SEA (Exhibit 22) The Plaintiff Never Signed not one speedy trial Waiver not even for Sandro Parrotta, in fact Kyle Lydell Canty never Signed any Court documents at all (Exhibit 23)

IV    Evidence Relied Upon

The Plaintiff Kyle Lydell

P 4 of 5

Canty rely on official time stamped King County Superior Court documents, before King County had a chance to fasify and destroy all of the evidence. The Plaintiff has attached the numbered Exhibits as the proof. The Plaintiff also rely on his own medical records that he is submitting that King County is trying to hide. (Exhibit 24)

## V    Argument

For reasons that are unclear all defendants are trying to use the Plaintiff as the escape goat/fall guy/Patsy for their corruption, the Question and legal Argument for all the defendants and the Courts is What happens when the Plaintiff already had this Premonition Ten years ago?

Prepared by:
KC 08/07/2017

P 5 of 5

Kyle Lydell Canty
BA# 216035994
500 Fith Ave
Seattle WA 98104

EXhibit 20  1-8 Pgs front+Back

To:     DPDexpertservices@kingcounty.gov

Re:     Expert service request for Kyle Canty 16-1-06917-3 SEA
        Expert name David Latourette
        DBA DL investigations

        Enclosed are my Motion and certification for appointment of expert, order
        authorizing expert and certification for probable cause in this case.  This order
        will not be sealed.

        Thank you

        Sandro Parrotta
        Attorney



FILED

17 MAR -2 AM

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

DPD FEB 13 '17 P 3:30

## SUPERIOR COURT OF THE STATE OF WASHINGTON
## FOR KING COUNTY

STATE OF WASHINGTON, )
                        )
     Plaintiff,           )      Cause No. 16-1-06917-3 SEA
                        )
v.                      )
                        )
KYLE LYDELL CANTY,     )      MOTION AND CERTIFICATION FOR
                        )      APPOINTMENT OF EXPERT
     Defendant          )
                        )

I.                         <u>MOTION</u>

COMES NOW the defendant, KYLE CANTY, by and through his undersigned attorney, SANDRO PARROTTA, moving the court for an order authorizing expert services at public expense. This motion is brought pursuant to U.S. Const. Ams, VI and XIV; Wash. Const. Art. 1 secs. 3, 12 and 22 (Am.10); and CrR 3.1(f). The motion is based on the Certification of Counsel that follows.

DATED this 13th day of February, 2017.

_____
Attorney Sandro Parrotta
WSBA No. 27948
Attorney for Kyle Canty

RECEIVED

APR 27 2017

Department of Public Defense

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

STATE OF WASHINGTON, )
                            )
    Plaintiff, )      Cause No. 16-1-06917-3 SEA
                            )
v. )
                            )
KYLE LYDELL CANTY, )      MOTION AND CERTIFICATION FOR
                            )      APPOINTMENT OF EXPERT
    Defendant )

I.                       <u>MOTION</u>

COMES NOW the defendant, KYLE CANTY, by and through his undersigned attorney,

SANDRO PARROTTA, moving the court for an order authorizing expert services at public expense.

This motion is brought pursuant to U.S. Const. Ams, VI and XIV; Wash. Const. Art. 1 secs. 3, 12 and

22 (Am.10); and CrR 3.1(f). The motion is based on the Certification of Counsel that follows.

DATED this 25th day of April, 2017.

s/Sandro Parrotta
WSBA No. 27948
email: parrottalaw@zoho.com

Firm Name: <u>Sandro Parrotta- Attorney</u>
Address: <u>18 W. Mercer #360, Seattle 98119</u>
Phone: <u>206-552-3739</u>

Sandro Parrotta
Attorney for Defendant
Email: parrottalaw@zoho.com
Telephone: 206-552-3739

Date submitted: 4/25/2017

☐ **DENIED**

for the Department of Public Defense
R. BURNS · PETERSON
OR Trial Judge (If Less Than $250)

Date ORDERED: 4/26/17

II.                              CERTIFICATION OF COUNSEL

Pursuant to RCW 9A.72.085, Sandro Parrotta certifies as follows:

1.  I am appointed counsel of record for defendant Kyle Canty, and am familiar with the
records and files herein;

2.  The information charges the defendant with the crime(s) of two counts Assault in the
second degree. A copy of the Information and Certification of Probable Cause is attached.

3.  Expert services for an expert on police misconduct and excessive use of force is essential
in this case for the following reasons:

4.  The Department of Assigned Counsel assigned this case to me on December 29, 2016.
Assault in the second degree is a strike offense.

5.  On or about December 22, 2016 , at approximately 4:15 pm, police officers were conducting
an arrest of a suspect in downtown Seattle, Washington. Several police officers on bicycles and
vehicles arrived on the corner of 4th avenue and Pike Street.

6.  While the officers were arresting and processing a suspect, several citizens walked by or
even stopped to observe the incident. It appeared that the suspect was being arrested for a low
level drug transaction.

7.  During this incident, Kyle Canty happened to walk by and observe the man being arrested.
Initially, one of the arresting officers allowed the suspect who was being arrested, to have a short
conversation with Mr. Canty.

8.  Soon after this Mr. Canty was arguing with the police officers.  While Mr. Canty and one
officer continued to argue, Mr. Canty was soon surrounded by several officers.

9.  Soon a scuffle between the officers and Mr. Canty broke out.

10. The officers in their reports describe Mr. Canty as the aggressor. Some state he was making fists and positioning himself in a fighting stance.

11. This incident resulted in several officers tackling Mr. Canty to the ground. He was arrested for assault.

12. Mr. Canty was taken to Swedish Hospital and treated for injuries.

13. Officer Canek Gordillo claimed that Mr. Canty punched him in the face during this incident. Officer Christopher Myers claims that Mr. Canty pushed him and during the tackling of Mr. Canty Officer Myers twisted and broke his ankle.

14. Mr. Canty denies the State's version of events and is adamant that the Seattle Officers assaulted him.

15. Initially the State provided the Defense with a fair amount of discovery which included over 300 pages of police reports( including unrelated incidents), police audio and video recordings, photographs, medical reports and private videos capturing some of this incident.

16. On March, 27, 2017 the Defense learned that the SPD was conducting its own internal investigation regarding excessive use of force by Officers Canek Gordillo and Officer Christopher Myers against Mr. Canty.

17. On April 4, 2017 the SPD untimely turned over voluminous amounts of discovery on a thumb drive. Some of this discovery is repetitive but there are many files the Defense did not have previously. Some of this discovery includes more detailed written statements, and additional audio recorded statements by material witnesses in this case. It also includes statements by witnesses and potential witnesses that were not provided in the initial discovery packet.

18. I still have to go through this new discovery which includes videos, audio recordings, transcripts, medical records and internal emails. The State has also provided jail phone calls made by Mr. Canty.

19. Unfortunately, there has been a recent tragic event where there Seattle Police Officers were shot during an armed robbery investigation. Officer Hudson Kang was seriously injured. Officer Elizabeth Kennedy was shot but not seriously hurt because her protective vest saved her from serious injury. And officer Christopher Myers was injured but released from the hospital on the same day. All three officers are material witnesses in this case.

20. I have spoken with Professor Gregory Gilbertson. He is currently the Professor and Director of the Criminal Justice Program at Centralia College in Centralia Washington.

21. Professor Gilbertson has recently been used successfully as an expert witness in King County assault of police officer cases. Professor Gilbertson has testified in police misconduct, false arrest, and excessive use of force cases. He is a former international police officer trainer and instructor and a former SWAT officer. In addition he has worked for NATO in an advisory role for police academies ( see attached cv and fee schedule). He lectures nationally on proper and improper police techniques and conduct involving the detention, arrests, and de-escalation of suspects.

22. ACA attorney Matt Sanders recently obtained the use of Professor Gilbertson in his Assault of a police officer case in which his client was acquitted. ACA supervisor Edwin Aralica observed Professor Gilbertson testify in the case and stated that he did an excellent job.

23. Mr. Gilbertson was kind enough to speak with me in detail about this case, what is needed and what he can provide. He informed me that this case sounds similar to the case he just

Motion and Certification for      4      Firm Name: **Sandro Parrotta- Attorney**
Appointment of Expert      Address: **18 W. Mercer #360, Seattle 98119**
Phone: **206-552-3732**

worked on for Matt Sanders. He is very willing to work on this case if authorized.

24. This is a police misconduct case. Kyle Canty is up against potentially 20 or more officers who will testify against him. The recent incident involving SPD officers being shot is not going to help Mr. Canty's case. It is absolutely vital that Mr. Canty receive the assistance of Professor Gilbertson's expertise.

25. Professor Gilbertson essentially charges $150.00 per hour for pre-trial and trial work. His fees are fair and reasonable.

26. Although he will not have to review all the discovery in this case, Professor Gilbertson will need to review a fair amount including several police reports, transcribed interviews and audio and video recordings. I will need to consult with Professor Gilbertson and he may be called to testify which means he would be interviewed by the State. Professor Gilbertson my be asked to write a report in this case.

27. I am requesting that $3600.00 be authorized for his services. This involves 24 hours of work. 15 hours to review discovery and write a report, 3 hours to consult with defense counsel, 2 hours to be interviewed by the State and 4 hours for testimony.

28. It is possible 24 hours of services will not be needed. If more is needed a request for supplemental funds will be made at the appropriate time.

29. I hereby certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this 25th day of April, 2017.

s/Sandro Parrotta
WSBA No. 27948
email:parrottalaw@zoho.com

Firm Name: **Sandro Parrotta- Attorney**
Address: **18 W. Mercer #360, Seattle 98119**
Phone: **206-552-3739**

**EXHIBIT 21**

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

STATE OF WASHINGTON,

                           Plaintiff,

    vs.

**Kyle Lydell Canty**

                           Defendant.

No. **16-1-06917-3**

WAIVER OF COUNSEL

1.   My true name is **Kyle Lydell Canty**

2.   I understand that I have the right to be represented by a lawyer and if I cannot afford to pay for a lawyer, to have one provided at public expense.

3.   I understand that I also have a constitutional right to represent myself.

4.   I understand that I am charged with these crimes, which are described in the Information:

Count 1, the crime of **Assault 2**

Count 2, the crime of **Assault 2**

Count 3, the crime of _____

Additional counts: _____

5.   I understand that the maximum penalty for each charged crime is:

Count(s)_____: life imprisonment and a $50,000 fine

Count(s) **I & II**_____: 10 years in prison and a $20,000 fine

Count(s)_____: 5 years in prison and a $10,000 fine

Count(s)_____: _____years in jail or prison and a $___fine

6.   I understand that an attorney would:

**Daniel T. Satterberg**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000, FAX (206) 296-0955

WAIVER OF COUNSEL - 1

- Represent me and speak on my behalf in court.
- Advise me about my legal rights and options.
- Explain and assist me with legal and court procedures.
- Investigate and explore possible defenses to the charges against me that may or may not be readily apparent to me.
- Prepare and conduct my defense at any motion hearing or trial.

7. I understand that if I represent myself:
- The judge cannot be my attorney and cannot give me any legal advice.
- The prosecuting attorney cannot be my attorney and cannot give me any legal advice.
- The judge, prosecuting attorney and court personnel are not required to explain court procedures or the law.
- I will be required to follow all legal rules and procedures, including the rules of evidence.
- I have the right to remain silent, but if I decide to testify on my own behalf, I may be required to present my testimony by asking questions of myself.
- It may be difficult for me to do a good job as my own attorney.
- If I represent myself, the judge is not required to provide me with an attorney as a legal advisor or standby counsel.
- If I later change my mind and decide that I want an attorney to represent me, the judge may require me to continue to represent myself without the assistance of a lawyer.

8. I have the following legal training and experience (including prior experience representing myself or others in court) _pro se under 16-1-03103 (dismissed on 11/29/16 previously following a pro se motion to dismiss)_

9. I am making this decision to represent myself knowingly and voluntarily. No one has made any promises or threats to me, and no one has used any influence, pressure or force of any kind to get me to waive my right to an attorney.

10. I have read, or have had read to me, this entire document. I want to give up my right to an attorney. I want to represent myself in this case.

Dated: _5/24/17_ _____          _____

_____
ATTORNEY FOR DEFENDANT

_____

COURT'S FINDING

I find the defendant's waiver of counsel to be knowingly, intelligently and voluntarily made. The defendant understands the charges and consequences of his/her waiver. The defendant is competent. The defendant is permitted to exercise his/her constitutional right to represent himself/herself.

DATED:_____          _____
                                    JUDGE

**Daniel T. Satterberg**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000, FAX (206) 296-0955

WAIVER OF COUNSEL - 2

Exhibit 22   1-5 Pgs

## SANDRO PARROTTA - ATTORNEY

206-552-3739
18 W. Mercer St. Ste 360
Seattle, WA
98119

Re: State v Canty 16-1-06917-3 SEA

Dear Mr. Canty,

As you know I am no longer your attorney on this case. I returned discovery to the State on May 25, 2017. Lou Frantz and Burns Petersen requested that I send them the expert contact information in this case so they can forward it to you along with a pro se packet. I sent them the information requested. He asked that I send you copies of the expert orders for your investigator and ophthalmologist. Attached are expert authorization orders for investigator David Latofurette. If you need more funding for your investigator, you will need to address that with him and either Mr. Frantz or Mr. Petersen. The expert order for Dr. Ted Zollman ophthalmologist, is attached, as are my notes for his consultation. I believe the majority of authorized funding is still available for Dr. Zollman, but that needs to be addressed with him. Professor Gilbertson indicated to me on Friday May 26, 2017 that he will not work with a pro se defendant and will only work with a defendant represented by an attorney. I informed Mr. Frantz of this when he contacted me. Mr. Frantz informed me he would pass on this information to you. If your position changes and you obtain an attorney, your new attorney can contact Mr. Petersen or Mr. Frantz or myself to get Mr. Gilbertson's contact information if his service are still needed. All experts understand they are not to exceed the amounts authorized for their services and if more funding is needed an additional request for supplemental funding needs to be made and authorized. You can contact Lou Frantz or Burns Petersen for more information regarding expert services.

Thank you,

Sandro Parrotta

Attorney

**SANDRO PARROTTA - ATTORNEY**

18 W. Mercer St, Suite #360,
Seattle, 98119
email: parrottalaw@zoho.com
phone:206-552-3739

To: Kyle Lydell Canty

Dear Mr. Canty,

enclosed is a copy of my order to seal the motion and declaration to
withdraw as your attorney.   I strongly advise you to read my
declaration and not distribute it to anyone.  It is for your protection to
seal this order so no one other than the reviewing judge, you and
myself will know its contents.  If you make this document available to
third parties and the State sees it, the State could potentially use it
against you.

Thank you

Sandro Parrotta- Attorney

Washington State Bar # 27948

1

2

3

4

5

6    IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON IN AND FOR THE
     COUNTY OF KING

7

STATE OF WASHINGTON,            )
8              Plaintiff,       )        NO.    16-1-06917-3 SEA
                                )
9    vs.                        )        MOTION TO WITHDRAW
                                )
10   KYLE CANTY                 )
               Defendant.       )
11   _____)

12           COMES NOW,  SANDRO PARROTTA, COUNSEL FOR THE DEFENDANT,

13   KYLE CANTY and hereby requests to withdraw as counsel from this case because of a

14   personal conflict.

15                        CERTIFICATION OF COUNSEL

16

     Pursuant to RCW 9A.72.085, Sandro Parrotta certifies as follows:

17   1.  I am appointed counsel of record for defendant Kyle Canty, and am

Declaration of counsel
– PAGE 1 OF 3

Sandro Parrotta, Attorney at Law
18 W. Mercer Street Suite 360
Seattle, WA 98119
(206) 552-3739

1    familiar with the records and files herein;

2.   I cannot continue to represent Mr. Canty based on a personal conflict.

2    Specifically Mr. Canty's recent explosive outbursts and threats causes me

3    concern for my personal safety.

3.   The attorney client relationship has deteriorated to the point that I cannot

4    
5    effectively represent Mr. Canty.

4.   Initially the relationship was workable, then it became difficult, and

6    unfortunately, finally unworkable.

7    5.   Mr. Canty on numerous occasions has been very verbally abusive. When

8    upset he will yell and sometimes scream at the top of his lungs. Mr. Canty

9    gets to the point where he does not calm down and conversations have been

10   terminated because of his anger.

6.   Mr. Canty's anger toward me has become unbearable and threatening. I

11   have told him on more than one occasion to not threaten me. Initially, the

12   threats were vague but delivered with loud angry warnings.

7.   Mr. Canty screams at the top of his lungs, and tries to intimidate me with

13   verbally abusive, insults, warnings, and threats.

14   8.   In our most recent conversations it appears he is more purposely

15   intimidating about his threats. He has shouted that I will be surprised at

16   what he will do to me the next time we are in court…that I will be shocked

17   at what he is going to do…. and that I won't see it coming.

9.   Mr. Canty even said that he is going to hit me. Then he claims not

Declaration of counsel
– PAGE 2 OF 3

Sandro Parrotta, Attorney at Law
18 W. Mercer Street Suite 360
Seattle, WA 98119
(206) 552-3739

meaning to hit me physically. After weeks of several verbally abusive tirades, threats and attempts to intimidate me, his side comment about not physically hitting me, does not assuage my concerns.

10. His anger toward me is out of control. The intense abuse toward me is more frequent and explosive.

11. I no longer trust Mr. Canty to control himself around me. Our relationship has deteriorated to the point where he treats me like his adversary. I find myself spending far too much time constantly worrying about our next interaction so things do not get out of control. For all the above reasons my ability to effectively represent. Mr. Canty has been seriously compromised and I cannot continue as his attorney.

12. I respectfully request the Court to allow me to withdraw as Mr. Canty's attorney.

I hereby certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this day 16th day of May 2017

s/ Sandro Parrotta
WSBA 27948

E-mail: parrottalaw@zoho.com

Declaration of counsel
– PAGE 3 OF 3

Sandro Parrotta, Attorney at Law
18 W. Mercer Street Suite 360
Seattle, WA 98119
(206) 552-3739

Exhibit 23    1-18 Pgs

SUPERIOR COURT OF THE STATE OF WASHINGTON FOR KING COUNTY

STATE OF WASHINGTON,

               Plaintiff,

               vs.

KYLE LYDELL CANTY,

               Defendant.

No.  16-1-06917-3 SEA

ORDER ON WAIVER OF JURY TRIAL

THIS MATTER having come on duly and regularly before the undersigned Judge of the above-entitled Court upon written motion of defendant Kyle Lydell Canty, pursuant to CrR 6.1(a) to waive his right to a jury trial.  The court having found that Mr. Canty's waiver of his right to a jury trial was done knowingly, voluntarily, and intelligently, after the court advised him that all 12 jurors would have to agree that the elements of the crimes charged had been proved beyond a reasonable doubt before he could be found guilty.

IT IS HEREBY ORDERED the Court consents to the waiver of trial by jury and orders that the cause be tried to the court without a jury.

DATED this 20th day of June, 2017

                                      Lori K. Smith, Judge

Appearing:

refused to sign
_____
Defendant

_____
Deputy Prosecutor   3597

ORDER

Judge Lori Kay Smith
King County Superior Court
516 Third Avenue, E847
Seattle, WA  98104
206-477-1354

1015
Sue Ann
of contraindication

**SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY**

STATE OF WASHINGTON,

                    Plaintiff,

v.

KYLE LYDELL CANTY,

                    Defendant.

NO.  16-1-06917-3 SEA

ORDER TO TRANSPORT DEFENDANT TO
COURT AND AUTHORIZING JAIL TO USE
REASONABLE FORCE

☒ Plaintiff ☐ Defendant moves the Court for an order requiring that

<u>Kyle Lydell Canty</u> be brought to court by reasonable force by King County Jail staff if necessary,

now, therefore, it is hereby

          ORDERED that <u>Kyle Lydell Canty</u> shall be brought from the King County Correctional

Facility to courtroom E-746 of the King County Superior Court   ☐ MRJC  ☒ Seattle to attend

his/~~her~~ ~~hearing~~ Trial on Tuesday, July 25, 2017 at 10:30 AM/~~PM~~. The Court authorizes the

Jail to use reasonable force necessary to transport defendant to court.

DATED this 25th day of July, 2017.

_____
Judge of the Superior Court

**Lori K. Smith**

ORDER TO TRANSPORT DEFENDANT TO
COURT AND AUTHORIZING JAIL TO USE
REASONABLE FORCE

KING COUNTY SUPERIOR COURT



COPY

**FILED**
KING COUNTY, WASHINGTON

MAR 1 0 2017

DEPARTMENT OF
JUDICIAL ADMINISTRATION

SUPERIOR COURT OF THE STATE OF WASHINGTON COUNTY OF KING

STATE OF WASHINGTON,

Plaintiff,

v.

Kyle Canty

Defendant.

NO. 16-1-06917-3 SEA

ORDER on defendant's property

(ORCM)

☐ *Clerk's Action Required*

☐ Plaintiff ☒ Defendant moves the Court for an order ~~and def~~ preventing destruction of defendant's property in this case
is hereby                                    ; now, therefore, it

ORDERED the defendant's property currently possessed by SPD as evidence in this case, or currently possessed by the jail as property from this booking, shall not be destroyed.

DONE IN OPEN COURT this 15th day of March, 2017

_____
JUDGE

_____
Deputy Prosecuting Attorney , WSBA# 35397

_____
Attorney for the Defendant , WSBA# 27969

## SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

STATE OF WASHINGTON,

                          Plaintiff

vs.

**Kyle Lydell Canty**,

                          Defendant

☑ In custody     ☐ Out of custody

No: **16-1-06917-3**    **SEA**

ORDER CONTINUING TRIAL (SEA – E-1201)

SCOMIS CODES (ORCTD)
(CLERK'S ACTION REQUIRED)

---

It is ordered that the **NEXT HEARING** in this matter will be:

    a) Omnibus Hearing: **Held**     at 8:30 a.m. in Courtroom E-1201.

    b) Trial: **8/21/17**     at 9:00 a.m. The parties will be notified of assignment and standby status by e-mail or telephone by 3:00 p.m. the court day prior to the trial date.

**YOU MUST BE PRESENT FOR ALL HEARINGS NOTED ABOVE OR A WARRANT MAY BE ISSUED FOR YOUR ARREST AND YOUR FAILURE TO APPEAR MAY RESULT IN ADDITIONAL CRIMINAL CHARGES BEING FILED.**

---

        Defendant, Pro Se                    **Trial Expiration Date: 9/20/17**

The ☑ ~~Defense Counsel~~ ~~State~~ made this motion to continue for the following reasons, and ~~opposing~~ ~~joined~~ ☐ State did not object ☑ ~~objected~~: To allow defense investigator to interview remaining State's witnesses + defendant would like additional time to review electronic discovery. Court will schedule status conference + trial will resume before the Honorable Judge Smith on 8/21/17. Defendant waives speedy trial rights.

**ORDER:** ☐ The Defendant ☑ The State objects to this continuance, which is granted as required in the interest of justice under CrR 3.3(f)(2) for the reasons stated above and the following additional grounds: Status conference shall be held on _____ before The Honorable Judge Smith W-941.

☑ The Defendant and State agree to this continuance, which is granted for the reasons stated above under CrR 3.3(f)(1).

| | | |
|---|---|---|
| Attorney for Defendant    WSBA # _____ | Defendant ONLY if in agreement | Dated |
| ☐ AOD on behalf of _____ | | |

I am fluent in the _____ language, and I have interpreted this entire document for the defendant from English into that language. I certify under penalty perjury under the laws of the State of Washington that the foregoing is true and correct.

Interpreter: _____, King County, Washington

| | | |
|---|---|---|
| Deputy Prosecuting Attorney    WSBA# **35397** | Judge, King County Superior Court | Dated |

Order Continuing Trial- Seattle
Revised: 5/2017

☐   Plaintiff shall provide the defense with _____

_____ by _____, 200___.

☐   Defendant shall provide plaintiff with _____

_____ by _____, 200___.

☐   Witness interviews shall be completed by _____, 200___. No party may impede opposing counsel's investigation of the case, CrR 4.7(h)(1).

☐   The general nature of the defense is _____.

☐   Discovery orders: _____

_____

4. ☐   Plaintiff will move to amend the information to _____.
       Defense shall be served a copy of the proposed amended information ___ days before the trial date.

5.   Motions *in limine* are reserved for the trial court.

6.   Proposed jury instructions shall be served and filed when the case is called for trial, CrR 6.15(a).

7.   Other motions not specifically referenced in this order shall be noted before the chief criminal judge or criminal motions judge, and shall comply with CrR 8.1, CrR 8.2, CR 6 and CR 7(b) unless expressly agreed by the parties in writing.

8.   *Necessary witness SPD ofc. Hudson Kang on medical leave until 8/31/17. State is attempting to determine his availability for trial testimony & may note a motion to continue based on his availability*

DONE IN OPEN COURT this __25__ day of _____May_____, 20_17_.

_____
JUDGE

Submitted:

_____        _____
DEPUTY PROSECUTING ATTORNEY                  ATTORNEY FOR DEFENDANT
WSBA# _____                                        WSBA# _____

I am fluent in the _____ language. I have translated this document for the defendant into that language. I certify, under penalty of perjury under the laws of the State of Washington, that the foregoing is true and correct.

_____        _____
Date and Place                                              Interpreter

SUPERIOR COURT OF THE STATE OF WASHINGTON
COUNTY OF KING

STATE OF WASHINGTON,

                                        Plaintiff,        No. 16-1-06917-3 SEA

        vs.

Kyle Canty

                                        Defendant.        **NOTICE OF CASE SCHEDULING
                                                         HEARING DATE - SEA**

☒ In Custody        ☐ Out of Custody

CCN_____                                       **CLERK'S ACTION REQUIRED**

_____

You have been arraigned on this matter.  Your Case Scheduling Hearing has been set for __1-25-17__
at 1:00 p.m., in Courtroom E-1201, King County Courthouse, 516 3rd Avenue, Seattle, Washington.

**YOU MUST BE PRESENT AT ALL HEARINGS OR A WARRANT MAY BE ISSUED FOR YOUR ARREST AND
YOUR FAILURE TO APPEAR MAY RESULT IN ADDITIONAL CRIMINAL CHARGES AGAINST YOU.**

**IMPORTANT NOTICE**

You should have an attorney when you appear in court for your Case Scheduling Hearing.  IF YOU DO NOT HAVE AN
ATTORNEY OR CANNOT AFFORD ONE, IMMEDIATELY CONTACT THE KING COUNTY OFFICE OF PUBLIC
DEFENSE AT THE MALENG REGIONAL JUSTICE CENTER, 401 FOURTH AVENUE NORTH, ROOM 1-M, KENT;
OR AT THE KING COUNTY COURTHOUSE, 516 THIRD AVENUE, ROOM E-820, SEATTLE.  IF YOU HAVE
QUESTIONS, CALL 206-296-7662 (OR IF YOU ARE IN JAIL, SPEED DIAL "20").

                                                         _____
                                                         Judge

I received a copy of this notice.

Date: __1-10-2017__                                      X __Refused._____
                                                         Defendant

I am fluent in the _____ language, and I have interpreted this entire document for the defendant from English
into that language. I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and
correct.
Date: _____          _____
                                                         Interpreter

_____

NOTICE OF CASE SCHEDULING HEARING DATE                   SCOMIS CODE: NTSCH
FORMS/F Notice of Case Scheduling Hearing SEA.DOC 3/15   PAGE 1 OF 1
**SCForm 3**

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| STATE OF WASHINGTON<br>Plaintiff,<br>v.<br><br><br>Defendant. | No.<br><br>WAIVER OF JURY TRIAL<br><br>SCOMIS CODE WVJTD |

My attorney and I have discussed my right to a jury trial.  I understand that I have the right to have a jury of 12 decide my case.  I further understand that all 12 jurors would have to agree that the elements of the crime(s) with which I have been charged have been proved beyond a reasonable doubt before I could be found guilty.  After discussing this right with my attorney, I have decided to waive my right to a jury trial.

Dated this ____ day of _____, 2____.

_____        _____
DEFENDANT                                                    COUNSEL FOR DEFENDANT

**ORDER**

The court finds that defendant knowingly, voluntarily and intelligently waived his/her right to a jury trial.  The court therefore consents to the waiver of trial by jury and orders that the cause be tried to the court without a jury.

Dated this _____ day of _____ , 2_____.        _____
                                                                                          JUDGE

Interpreter's Declaration

I am a court certified interpreter or have been found otherwise qualified by the court to interpret in the _____ language, which the defendant understands, and I have interpreted the Waiver of Jury Trial order for the defendant from English into that language. I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Interpreter Signature _____        Dated _____

Revised 10/2007
H:\SharePoint\Criminal Forms\Web2 - Trial Forms\ZWaiver of Jury Trial.doc

**FILED**
KING COUNTY, WASHINGTON

**JAN 1 1 2017**

DEPARTMENT OF
JUDICIAL ADMINISTRATION

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

STATE OF WASHINGTON,

               Plaintiff,

      vs.

KYLE LYDELL CANTY,

               Defendant.

No. 16-1-06917-3 SEA

**ORDER PROHIBITING CONTACT**

THIS MATTER having come on before the undersigned judge of the above-entitled court, and the court having considered the records and files herein and being fully advised in the premises; now, therefore,

IT IS HEREBY ORDERED that the defendant shall have no contact, directly, or indirectly in person, in writing, or by phone, personally or through another person, with

SPD Officer Christopher Myers & SPD Officer Canek Gordillo, except in an official capacity.

until the trial of this cause is concluded.

DONE IN OPEN COURT this 11 day of December, 2016.

                                     JUDGE

Presented by:

                                     Copy Received:

Brynn N. H. Jacobson
Deputy Prosecuting Attorney, WSBA#47820

                                     Refused

                                     Defendant

**FILED**
KING COUNTY, WASHINGTON

JAN 25 2017

DEPARTMENT OF
JUDICIAL ADMINISTRATION

**SUPERIOR COURT OF WASHINGTON, COUNTY OF KING**

| | |
|---|---|
| STATE OF WASHINGTON,<br>Plaintiff,<br><br>vs.<br>_K Y L E   C M V T Y_<br>Defendant<br>☒ In custody   ☐ Out of custody | No.: _16-1-06917-3 SEA_<br>**ORDER TO HOLD OVER CASE SCHEDULING HEARING**<br>SCOMIS Code (ORCNT)<br>(Clerk's Action Required) |

☐ The State of Washington ☐ The defendant moves this court for an order to hold over the case scheduling hearing for the following reason: _ATTORNEY UNAVAILABLE_
_For Hearing to Continue cure/certify_

☒ The hearing is held over without a speedy trial waiver.

☐ The defendant did not appear.        ☐ The defendant was not transported.

☐ Defense counsel did not appear.        ☐ The defendant needs to screen with DPD.

☐ A plea hearing has been scheduled by the court for:

Date: _____   Time: _____   Room: _____

Based on the foregoing, IT IS ORDERED that the Case Scheduling Hearing be held over to:

Date: _1/26/2017_   1:00 p.m., Seattle, Court E1201.

☒ Defense counsel requests that DAJD transport defendant to the next hearing. This box to be checked only by defense counsel.

☐ The Court requests that DAJD transport defendant to the next hearing.

DATED this _26_ day of _January_, 20_17_

_[signature]_
Judge

_[signature]_
Deputy Prosecutor   WSBA No. _43063_

_[signature]_
Attorney for Defendant   WSBA No. _27948_

_____
Defendant

**FILED**
KING COUNTY, WASHINGTON

JAN 1 1 2017

DEPARTMENT OF
JUDICIAL ADMINISTRATION

SUPERIOR COURT OF THE STATE OF WASHINGTON
COUNTY OF KING

STATE OF WASHINGTON,

                                                Plaintiff,

vs.

Kyle Canty

                                                Defendant.

☒ In Custody    ☐ Out of Custody

CCN_____

No. 16-1-06917-3 SEA

**NOTICE OF CASE SCHEDULING
HEARING DATE - SEA**

**CLERK'S ACTION REQUIRED**

You have been arraigned on this matter.  Your Case Scheduling Hearing has been set for   1-25-17

at 1:00 p.m., in Courtroom E-1201, King County Courthouse, 516 3rd Avenue, Seattle, Washington.

**YOU MUST BE PRESENT AT ALL HEARINGS OR A WARRANT MAY BE ISSUED FOR YOUR ARREST AND
YOUR FAILURE TO APPEAR MAY RESULT IN ADDITIONAL CRIMINAL CHARGES AGAINST YOU.**

**IMPORTANT NOTICE**

You should have an attorney when you appear in court for your Case Scheduling Hearing.  IF YOU DO NOT HAVE AN
ATTORNEY OR CANNOT AFFORD ONE, IMMEDIATELY CONTACT THE KING COUNTY OFFICE OF PUBLIC
DEFENSE AT THE MALENG REGIONAL JUSTICE CENTER, 401 FOURTH AVENUE NORTH, ROOM 1-M, KENT;
OR AT THE KING COUNTY COURTHOUSE, 516 THIRD AVENUE, ROOM E-820, SEATTLE.  IF YOU HAVE
QUESTIONS, CALL 206-296-7662 (OR IF YOU ARE IN JAIL, SPEED DIAL "20").

I received a copy of this notice.

Date:   1-10-2017

Judge _____

X  Refused.
Defendant _____

I am fluent in the _____ language, and I have interpreted this entire document for the defendant from English
into that language.  I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and
correct.
Date:

☐   Plaintiff shall provide the defense with _____

_____ by _____, 200___.

☐   Defendant shall provide plaintiff with _Expert Witness_

_____ by _____, 200___.

☒   Witness interviews shall be completed by _April 5th_, 200 _7_. No party may *orders on on*
impede opposing counsel's investigation of the case, CrR 4.7(h)(1). *O/C ~ until 4/27*
*PMLA*
*O/C. Kane*
*al vacation*
*until 3/27*

☐   The general nature of the defense is _Denial_

☒   Discovery orders: _Parties stipulate to the_
_authenticity of the surveillance videos._

4.  ☐   Plaintiff will move to amend the information to _____.
Defense shall be served a copy of the proposed amended information ___ days
before the trial date.

5.  Motions *in limine* are reserved for the trial court.

6.  Proposed jury instructions shall be served and filed when the case is called for trial,
CrR 6.15(a).

7.  Other motions not specifically referenced in this order shall be noted before the chief
criminal judge or criminal motions judge, and shall comply with CrR 8.1, CrR 8.2, CR 6 and
CR 7(b) unless expressly agreed by the parties in writing.

8.  _State May seek a continuance in order to review_
_defence expert report + conduct interview. State's counsel on_
_vacation 4/5 - 4/17._

DONE IN OPEN COURT this _24_ day of _March_, 20_17_

_____
JUDGE

Submitted:

_____     _____
DEPUTY PROSECUTING ATTORNEY      ATTORNEY FOR DEFENDANT
WSBA# _35913_                     WSBA# _27965_

I am fluent in the _____ language. I have translated this document for the defendant into that language. I
certify, under penalty of perjury under the laws of the State of Washington, that the foregoing is true and correct.

_____     _____
Date and Place                   Interpreter

FILED
KING COUNTY, WASHINGTON

JAN 26 2017

DEPARTMENT OF
JUDICIAL ADMINISTRATION

**SUPERIOR COURT OF WASHINGTON, COUNTY OF KING**

STATE OF WASHINGTON,
Plaintiff,

vs.

*KYLE CANTY*
Defendant

☒ In custody      ☐ Out of custody

No.: *16-1-06917-3 SEA*

ORDER CONTINUING CASE SCHEDULING AND WAIVER OF SPEEDY TRIAL

DATE OF ARRAIGNMENT_____

SCOMIS Codes: ORCNTS

**(Clerk's Action Required)**

The defendant moved to continue the case scheduling hearing, currently set *1-26-2017*, for the following reasons: *Defense received Discovery - approx Several Discs, thumb-drive, electronic delivery*

The State ☐ joined ☒ did not object to ☐ objected to the defendant's motion.

The motion is granted. The case scheduling hearing is continued to *2-22-2017*, Seattle, Court E1201, 1:00 p.m., which will be the new commencement date; speedy trial expiration is *4-24-17*.

DATED this *26* day of *Jan*, 20 *17*

_____
Judge

_____
Deputy Prosecutor   WSBA No. *30687*
*William Doyle*

_____
Attorney for Defendant   WSBA No. _____

**Waiver:** I understand that I have the right pursuant to Criminal Rule 3.3 to a trial within 60 days of the commencement date if I am in jail on this case, or 90 days of the commencement date if I am not in jail on this case. I am voluntarily and knowingly giving up this right for a specific period of time for the purposes listed above. I agree that the expiration date is _____.I have read and discussed this waiver with the defendant and believe that the defendant fully understands his rights and this waiver.

_____          _____
Attorney for Defendant                    Defendant

☐ **Defense counsel requests that DAJD transport defendant to the next hearing.** This box to be checked only by defense counsel.

☐ **The Court requests that DAJD transport defendant to the next hearing.**

I am fluent in the _____ language, and I have translated this entire document for the defendant from English into that language. I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Interpreter                    King County, Washington



**FILED**
KING COUNTY, WASHINGTON

APR 1 8 2017

SUPERIOR COURT CLERK
BY Shaylynn Nelson
DEPUTY

## SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

STATE OF WASHINGTON,
                                    Plaintiff,

v.

_KYLE LYDELL CANTY_
                                    Defendant.

CCN _____

)
)
)
)
)
)

No. _16-1-06917-3 SEA_

**ORDER CONTINUING TRIAL**
**(ORCTD)**
**(CLERK'S ACTION REQUIRED)**

This matter came before the court for consideration of a motion for continuance brought by
☐ plaintiff   ☒ defendant   ☐ the court. It is hereby
ORDERED that the trial, currently set for _____ _4-18-2017_ _____ is continued to
_____ _May - 2017_ _____ ☐ *Upon agreement of the parties [CrR 3.3(f)(1)] or ☒ required in the
administration of justice [CrR 3.3(f)(2)] for the following reason:
☐ plaintiff's counsel in trial; ☐ defense counsel in trial; ☒ other: _Complete outstanding_
_interviews, expert witness for defense,_
It is further ORDERED:

    ☒ Omnibus hearing date is _4/28/17_ .
    ☒ Expiration date is _6/3/17_ .

DONE IN OPEN COURT this _18_ day of _April_ . 20 _17_ .

                             **JUDGE**

Approved for entry:

_____
Deputy Prosecuting Attorney WSBA No. _35897_

_____
Attorney for Defendant   WSBA No. _27918_

**I agree to the continuance:**

_____

*Defendant [signature required only for agreed continuance]

I am fluent in the _____ language, and I have translated this entire document for the defendant from English into that language. I
certify under penalty perjury under the laws of the State of Washington that the foregoing is true and correct.

Interpreter: _____, King County, Washington
(Effective 1 September 2003)

**FILED**
KING COUNTY, WASHINGTON

APR 28 2017

DEPARTMENT OF
JUDICIAL ADMINISTRATION

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

STATE OF WASHINGTON,

Plaintiff,

v.

Kyle Canty ,

Defendant.

CCN

No. 16 - 1 - 06917-3

ORDER CONTINUING TRIAL
(ORCTD)
(CLERK'S ACTION REQUIRED)

This matter came before the court for consideration of a motion for continuance brought by
☐ plaintiff   ☐ defendant   ☐ the court. It is hereby
ORDERED that the trial, currently set for ___5/4/17___ is continued to
___6/7/17___ ☐ *Upon agreement of the parties [CrR 3.3(f)(1)] or ☒ required in the
administration of justice [CrR 3.3(f)(2)] for the following reason:
☐ plaintiff's counsel in trial; ☐ defense counsel in trial; ☒ other: *defense awaiting experts*
*finding + consultation with experts, victim on prescheduled vacation 5/6/17-5/27/17*
It is further ORDERED: *+ victim 2 on leave 5/4/17-6/12/17,*
☒ Omnibus hearing date is ___5/12/17___ . *necessary witness seriously*
☒ Expiration date is ___7/7/17___ *wounded in shooting + just released from*
*hospital 4/27/17.*

DONE IN OPEN COURT this 28 day of ___April___ , 20 17.

_____
JUDGE

Approved for entry:

_____
Deputy Prosecuting Attorney WSBA No. 35397

_____
Attorney for Defendant  WSBA No. 27946

I agree to the continuance:

_____
*Defendant [signature required only for agreed continuance]

I am fluent in the _____ language, and I have translated this entire document for the defendant from English into that language. I
certify under penalty perjury under the laws of the State of Washington that the foregoing is true and correct.

Interpreter: _____ , King County, Washington
(Effective 1 September 2003)

☐   Plaintiff shall provide the defense with _____

_____ by _____, 200___.

☐   Defendant shall provide plaintiff with _Expert Witness_____

_____ by _____, 200___.

☒   Witness interviews shall be completed by _April 5th_, 200_7_. No party may _defers on or_
impede opposing counsel's investigation of the case, CrR 4.7(h)(1). O/C. _Prudential until 4/27_
_FMLA_ _O/C. Karne_
_on vacation_
_until 3/27_

☐   The general nature of the defense is _Denial_____

☒   Discovery orders: _parties stipulate to the_
_authenticity of the surveillance video._

4.  ☐   Plaintiff will move to amend the information to _____,
Defense shall be served a copy of the proposed amended information ___ days
before the trial date.

5.  Motions *in limine* are reserved for the trial court.

6.  Proposed jury instructions shall be served and filed when the case is called for trial,
CrR 6.15(a).

7.  Other motions not specifically referenced in this order shall be noted before the chief
criminal judge or criminal motions judge, and shall comply with CrR 8.1, CrR 8.2, CR 6 and
CR 7(b) unless expressly agreed by the parties in writing.

8.  _State may seek a continuance in order to review_
_defense expert report + conduct interview. State's counsel on_
_vacation 4/5 - 4/7._

DONE IN OPEN COURT this _24_ day of _March_, 20_17_.

                               **JUDGE**              4/8/17

**Submitted:**

_____    _____
**DEPUTY PROSECUTING ATTORNEY**    **ATTORNEY FOR DEFENDANT**
WSBA# _3517_    WSBA# _27946_

I am fluent in the _____ language. I have translated this document for the defendant into that language. I
certify, under penalty of perjury under the laws of the State of Washington, that the foregoing is true and correct.

_____    _____
Date and Place                        Interpreter



**FILED**
KING COUNTY, WASHINGTON

APR 1 8 2017

SUPERIOR COURT CLERK
BY Shaylynn Nelson
DEPUTY

**FILED**
KING COUNTY, WASHINGTON

MAR 2 4 2017

DEPARTMENT OF
JUDICIAL ADMINISTRATION

## SUPERIOR COURT OF THE STATE OF WASHINGTON COUNTY OF KING

STATE OF WASHINGTON,

Plaintiff,

vs.

KYLE LYDELL CANTY

Defendant

NO. 16-1- 06917-3 SEA

ORDER ON OMNIBUS HEARING — Amended
(OOR)
Charge: ASSAULT 2 - 2 COUNTS

Trial Date: April 18, 2017

Expiration: May 18, 2017

Estimated length of trial: 7 DAYS

☒ In Custody     ☐ Out of Custody

An omnibus hearing was held on this date.

1.  CrR 3.5:

    ☐     No custodial statements will be offered in the state's case-in-chief, or in rebuttal.
    ☐     The statements of defendant will be offered in state's rebuttal case only.
    ☒     The statements referred to in the state's omnibus application will be offered and:
          ☐     May be admitted into evidence without a pretrial hearing, by stipulation of
                the parties.
          ☒     A pretrial hearing shall be held.

2.  CrR 3.6:

    ☐     No motion to suppress evidence pursuant to CrR 3.6(a) shall be made.
    ☒     Defendant will move to suppress evidence. Moving party shall comply with CrR 3.6,
          8.1 and CR 6. The motion shall be heard, immediately before trial, by the trial judge.

3.  CrR 4.7:

    ☒     Plaintiff has provided the defense with all discovery required by CrR 4.7(a).
    ☐     Defendant has provided the plaintiff with all discovery required by CrR 4.7(b).

1

2

3    By: _____

4         Jennifer Petersen, WSBA #35397
         Senior Deputy Prosecuting Attorney

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

STATE'S TRIAL MEMORANDUM - 24

DANIEL T. SATTERBERG
Prosecuting Attorney

By:

Brandy L. Gevers, WSBA# 45234
Deputy Prosecuting Attorney

AMENDED INFORMATION - 2

**Daniel T. Satterberg**, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 296-9000  FAX (206) 296-0955

Exhibit 24
placed under seal
due to sensitive
personal identifiers

Bonus Exhibit

Exhibit 25

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

STATE OF WASHINGTON, )
) 
Plaintiff, ) No. 16-1-06917-3 SEA
)
vs. )
) STATE'S TRIAL MEMORANDUM
KYLE LYDELL CANTY, )
)
Defendant *Pro Se*. )
)
)
)

## I.    CHARGES

The defendant, Kyle Canty, is currently charged by Amended Information with two counts of Assault in the Second Degree alleged to have occurred on December 22, 2016.

## II.    TIME ESTIMATES

The State expects that this case will take approximately 6 court days, including pre-trial motions, selection of a jury and trial.

## III.    POTENTIAL WITNESSES

Law Enforcement

Officer Christopher Myers, SPD
Officer Canek Gordillo, SPD
Officer Hudson Kang, SPD

STATE'S TRIAL MEMORANDUM - 1

**Daniel T. Satterberg**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000, FAX (206) 296-0955

1   Officer Elizabeth Kennedy, SPD
    Officer Rhonda Anderson, SPD
2   Officer Jayme Beckon, SPD
    Officer Norhihisa Etoh, SPD
3   Sgt. Colin Carpenter, SPD
    Officer Michael Virgilio, SPD
4   Sgt. Scott Schenck, SPD
    Sgt. Robert Brown, SPD
5   Sgt. Gabriel Conrad, SPD

6   Medical

7   Dr. Wendy Kudritzki, Swedish Medical Center
    Dr. Jason Wong, Harborview Medical Center
8   Dr. Yewlin Chee, Harborview Medical Center Eye Institute

9                    IV.     FACTS

10  **Background**

11      Mr. Canty has had several recent contacts with the Seattle Police Department.  The State

12  provides the following background to familiarize the Court as the State anticipates the below

13  issues may be raised in pre-trial motions or during trial.

14      On June 20, 2016 officers responded to Office Max following the report of a terminated

15  employee (Canty) who had made threatening statements.  The Office Max Loss Prevention

16  Manager reported that Mr. Canty had resigned from Office Max earlier in the month and was

17  upset to learn that his final paycheck had been mailed to his mailing address.  Mr. Canty

18  reportedly called the Office Max corporate office and on a recorded phone call said "situations

19  like this gets people shot." Officers took a report under SPD #2016-219276 and entered the

20  recording into evidence; Mr. Canty was not arrested or charged with a crime.

21      On June 27, 2016, Mr. Canty arrived at the front reception desk of the Seattle City Attorney's

22  Office.  He appeared to reception staff to be "in crisis over pending legal actions."  Reception

23  staff described Mr. Canty as confrontational, aggressive, and hostile toward them causing them

24

STATE'S TRIAL MEMORANDUM - 2

**Daniel T. Satterberg**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000, FAX (206) 296-0955

1   to become fearful and alarmed.  Mr. Canty expressed his displeasure stating he would sue the

2   Seattle City Attorney's Office.  Mr. Canty was escorted out of the building by security before

3   officers arrived.  The incident was documented under SPD #2016-230940.  Mr. Canty was not

4   arrested or charged with a crime.

5      On July 2, 2016, Mr. Canty encountered an SPD Officer Culbertson in a patrol car in

6   downtown Seattle.  When the officer stopped his patrol car, Mr. Canty began yelling at him

7   about perceived harassment by police.  Mr. Canty told him that he was "not afraid to throw

8   bullets at him."  Officer Culbertson asked Mr. Canty "what do you mean?" and Mr. Canty

9   responded, "you know what I mean."  Mr. Canty repeatedly challenged the officer to get out of

10  his patrol car and "see what would happen."  Mr. Canty told the officer he would assault officers

11  if they tried to put hands on him.  The officer left the area in part to diffuse the contact.  The

12  defendant was subsequently charged on July 13, 2016 with Felony Harassment under 16-1-

13  03103-6.

14     On July 5, 2016 Mr. Canty came to the OPA office and on July 6, 2016 he phoned Sgt.

15  Fiorini with OPA.  Mr. Canty complained about SPD officers and said he was going to buy a gun

16  to defend himself.

17     On July 7, 2016, Mr. Canty called an admin at the Civil Rights Division of the US

18  Courthouse.  He stated he believed police were trying to get him and he described how he sought

19  refugee status in Canada because police were trying to murder him.  He described seeing officers

20  in a Starbucks and stomping in and screaming at them for wasting taxpayer money.  He told the

21  admin he was suing the FBI and DOJ for mishandling cases and that if police come towards him

22  he will start shooting up SPD officers. Later that same day, Mr. Canty attended a protest in

23  Seattle about police shootings.  During the protest Mr. Canty was videotaping officers and

24

STATE'S TRIAL MEMORANDUM - 3

1   holding a brown box.  Mr. Canty told officers that "there are two magazines in the box,

2   extended, hoping to buy a Glock 19 next.  Google the State of Washington, anyone can buy a

3   gun unless a felon or DV."

4        On July 8, 2016, Mr. Canty called the receptionist at the Seattle Police Chief's office more

5   than ten times.  He told the receptionist that he wanted to talk to the Chief about police brutality

6   and said if police officers come toward me I will shoot them.  He spoke in a separate call to the

7   Executive Assistant to the Chief and said if officers come toward him he is going to shoot them

8   and defend himself.

9        On July 8, 2016, Mr. Canty called KOMO news and talked about video he had taken of SPD

10  officers.  He alleged murder charges and wanted them to watch the videos. He mentioned

11  "killing cops" during the call and told them he was trying to tell the police department that he is

12  going to buy a gun and if police pull a gun on him he will shoot them.

13       On July 8, 2016 Mr. Canty was detained and taken to Harborview Medical Center for an

14  involuntary mental health assessment.  On July 9, 2016 a psychiatric hold was placed on Mr.

15  Canty.  On July 13, 2016 when Felony Harassment and Assault in the Third Degree charges were

16  filed under 16-1-03103-6 the defendant was transferred from HMC to the King County Jail.  On

17  November 28, 2016 trial commenced and Mr. Canty proceeded pro se.  Mr. Canty filed a motion

18  to dismiss pursuant to CrR 8.3 alleging the Seattle Police Department destroyed materially

19  exculpatory evidence when it destroyed a cell phone recovered from the defendant after his arrest

20  and held for safe keeping at SPD.  On November 29, 2016 the case was dismissed pursuant to

21  CrR 8.3 and Mr. Canty was released from custody.

22  **Current Incident**

23

24

STATE'S TRIAL MEMORANDUM - 4

1    On December 22, 2016, at 4:13pm Seattle Police Department Officers Gordillo and Merritt

2   were attempting to arrest a suspect in the 1600 block of 4th Avenue.  The suspect fled on foot.

3   Officers Gordillo and Merritt broadcast the foot pursuit and several other bike patrol officers

4   responded to assist including Officer Kang, Officer Kennedy, Officer Meyers and Officer

5   Anderson. The suspect fled into an alley on Pike Street between 3rd Ave and 4th Ave where he

6   was caught and arrested.  Surveillance video captured the events as they unfolded on the

7   sidewalk near the mouth of the alley.

8    As officers were completing their arrest, they were approached by the defendant Kyle Canty.

9   Mr. Canty was not involved in the original incident or associated with the unrelated arrested

10  suspect.  Mr. Canty approached the officers approximately 5 minutes after they had placed the

11  unrelated suspect into custody.

12   When Mr. Canty first approached the officers, Officers Merritt and Gordillo were standing

13  with the unrelated suspect at the front of the patrol car which was parked inside the alley facing

14  into the alley.  Mr. Canty was immediately upset and agitated apparently at the mere presence of

15  the officers.  He began yelling at the unrelated suspect about phone numbers or calling someone.

16  Officer Kang walked to the rear of the patrol car near the mouth of the alley, pointed out the sign

17  above the alley that read "no admittance," and told Mr. Canty he needed to stay out of the alley.

18  Mr Canty began yelling profanities at the Officer Kang.  He repeatedly told Officer Kang "fuck

19  you" and "bring it" and asked him "what are you going to do about it? Make me move."  Mr.

20  Canty yelled at Officer Kang that he was suing the entire Seattle Police Department, and he

21  yelled "tell Detective [unknown] it's on!"  Officer Kang continued to stand at the mouth of the

22  alley as a cover officer for Officers Merritt and Gordillo because he did not know what Mr.

23  Canty might do.

24

STATE'S TRIAL MEMORANDUM - 5

**Daniel T. Satterberg**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000, FAX (206) 296-0955

1    Officer Kennedy, who had responded to the initial foot pursuit, approached Mr. Canty and

2    Officer Kang. Officer Kennedy was concerned that Mr. Canty's behavior, demeanor and posture

3    suggested he was ready to fight and that his rage was directed at Officer Kang. She tried to de-

4    escalate the situation by lowering her voice and attempting to communicate with Mr. Canty. Mr.

5    Canty did not even acknowledge her presence and remained fixated on Officer Kang continuing

6    his tirade.

7    After nearly two minutes of Mr. Canty yelling and cursing at Officer Kang, Officer Meyers

8    approached and stood in a cover position behind Mr. Canty. Mr. Canty's body language was

9    agitated and aggressive and he continued to yell at Officer Kang, "do you have a problem" and

10   "do you want to go?" Mr. Canty was so agitated he was spitting as he yelled. Mr. Canty yelled

11   that he had just gotten out of jail and that he got off (free) for assaulting cops.

12   Mr. Canty turned, noticed Officer Meyers, and began directing his anger at Officer Meyers.

13   Canty yelled "you want to go" to Officer Meyers who put up both open hands with palms facing

14   Mr. Canty to tell him there was no reason to yell. Before Officer Meyers could finish his

15   attempts at verbally de-escalating the situation, Mr. Canty struck Officer Meyers in his right

16   forearm slamming Officer Meyers' forearm into Officer Meyers' chest.

17   Officer Gordillo, who had completed the arrest of the unrelated suspect, approached and

18   asked Officer Meyers if Mr. Canty had just assaulted him. Officer Meyers confirmed he had and

19   both approached Mr. Canty to take him into custody. Mr. Canty took a few steps back as if he

20   was going to run. As Officer Gordillo reached for Mr. Canty, Mr. Canty immediately threw a

21   "right hook" punching Officer Gordillo in the left temple. The punch connected solidly. Officer

22   Gordillo saw a sudden flash of light in his vision and reeled backward disoriented. Both officers

23   tried to take Mr. Canty to the ground but he continued to resist. Mr. Canty spun around and

24

STATE'S TRIAL MEMORANDUM - 6

1   lunged his weight onto Officer Meyers' right leg dropping onto Officer Meyers' right leg. This

2   caused Officer Meyers to fall onto Mr. Canty. Officer Meyers felt a loud pop in his right leg,

3   immediately felt his ankle began to swell with a great deal of pain.

4       Meanwhile, Mr. Canty continued to struggle with Officer Gordillo. Immediately after

5   punching Officer Gordillo, Mr. Canty grabbed the left side of Officer Gordillo's equipment vest

6   pulling him forward. Officer Gordillo fell on his left side hitting his left arm and elbow on the

7   sidewalk. Mr. Canty continued to pull at Officer Gordillo's vest with such force that he

8   separated the vest at the seam on the left shoulder. Mr. Canty ripped off Officer Gordillo's radio

9   microphone and repeatedly tried to punch Officer Gordillo while holding the microphone in his

10  hand. Mr. Canty was spitting in Officer Meyers' face as Mr. Canty lay on his back face up. Mr.

11  Canty punched Officer Meyers on the right side of his face knocking his safety glasses off his

12  face.

13      Officer Kang, Officer Kennedy and Officer Anderson moved to assist in detaining Mr.

14  Canty. Officer Meyers assisted Officer Kang in handcuffing Mr. Canty and then moved to the

15  side and told other officers he believed his ankle was broken. Mr. Canty was placed in a patrol

16  car for transport and advised of Miranda by Officer Kang. He did not acknowledge the warnings

17  and continued to argue and yell at officers.

18      Mr. Canty complained during transport of an injury to his left eye and insisted his eye was

19  bleeding severely. Officer Virgilio transported Mr. Canty and did not observe any injury to Mr.

20  Canty's eye, but he requested Seattle Fire to respond to the precinct to evaluate Mr. Canty.

21  Medics could not find evidence of an eye injury and Mr. Canty was photographed at the precinct.

22  His only visible injury was an abrasion to the knuckles of his right hand. Mr. Canty claimed he

23  lost consciousness during the arrest. As a result of this claim Mr. Canty was transported to

24

STATE'S TRIAL MEMORANDUM - 7

1  Harborview Medical Center for evaluation.  Mr. Canty was booked into the King County Jail the

2  same day.

3      Seattle Fire Department medics responded to the scene to treat Officer Meyers and he was

4  transported to Ballard Swedish Hospital where he was diagnosed with a fracture of his lower

5  right fibula and an ankle sprain.

6      Officer Gordillo was initially evaluated by Seattle Fire at the West Precinct for pain to his

7  head and left elbow and vision difficulties.  Later that same night Officer Gordillo began to

8  develop a severe headache and noticed several "floaters" in his left eye and a shadow in the

9  periphery of his vision.  He went to the emergency room at Harborview for treatment and was

10  referred to the Harborview Eye Institute.  Officer Gordillo was diagnosed with posterior vitreous

11  detachment (PVD) in his left eye as a result of the punch to his temple.  As a result of the PVD,

12  he sees "floaters" in his left eye constantly.  There is no treatment for the floaters and the

13  condition is permanent.

14  **V.     PROCEDURAL HISTORY AND PRETRIAL MOTIONS AND RULINGS**

15      On February 15, 2017 the State moved to amend count II of the information from Assault

16  in the Third Degree to Assault in the Second Degree.  The Court granted the motion over defense

17  objection.  The defendant was initially represented by Sandro Parrotta.

18      On March 10, 2017 upon the defendant's motion, the parties entered an agreed order on

19  the defendant's property.  The order directs that the Seattle Police Department shall not destroy

20  defendant's property currently being held as evidence in this case.

21      On March 13, 2017 the defendant filed a Motion for a Bill of Particulars seeking

22  clarification of count II.  The State provided a written response to defense counsel on March 22,

23  2017.

24

STATE'S TRIAL MEMORANDUM - 8

**Daniel T. Satterberg**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000, FAX (206) 296-0955

1    On April 20, 2017, the defendant filed a motion to dismiss pursuant to CrR 8.3.  The

2    motion was heard before the Honorable Judge O'Donnell on May 2, 2017.  The motion was

3    denied.

4    On May 12, 2017 during the omnibus hearing, Sandro Parrotta moved to withdraw.  Mr.

5    Parrotta filed a declaration under seal in support of the motion and on May 19, 2017 the Court

6    granted Mr. Parrotta's motion.  Confirmation of new counsel was scheduled for May 24, 2017.

7    On May 24, 2017, Mr. Canty's new counsel informed the Court that Mr. Canty wished to

8    proceed pro se.  The Court reserved ruling until May 25, 2017.  On May 25, 2017 the Court

9    granted Mr. Canty's motion to proceed pro se.

10    VI.    **STATE'S MOTIONS IN LIMINE & EVIDENTIARY ISSUES**

11    **Introduction**

12    Washington courts encourage early ruling by a trial court on motions in limine for a

13    number of reasons.  Such ruling are "helpful to both parties and [avoid] interruption of

14    proceedings before the jury." State v. Porter, 36 Wn. App. 451, 453, 674 P.2d 694 (1984); see

15    also State v. Moore, 33 Wn. App. 55, 651 P.2d 765 (1982).  It is particularly important to obtain

16    rulings on sensitive evidentiary issues in criminal cases before a jury is impaneled.  See, e.g.,

17    Porter, 36 Wn. App. at 452; State v. Latham, 30 Wn. App. 776, 638 P.2d 592 (1981), aff'd, 100

18    Wn.2d 59, 667 P.2d 56 (1983); State v. Koloske, 34 Wn. App. 882, 667 P.2d 635 (1982).  One

19    important purpose of a motion in limine is to "dispose of legal matters so counsel will not be

20    forced to make comments in the presence of the jury which might prejudice his [or her]

21    presentation." State v. Evans, 96 Wn.2d 119, 123, 634 P.2d 845 (1981).  An early ruling on

22    matters concerning the admissibility of certain evidence also facilitates the efficient

23    administration of justice.  See Latham, 30 Wn. App. at 780.

24

STATE'S TRIAL MEMORANDUM - 9

**Daniel T. Satterberg**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000, FAX (206) 296-0955

1   With these principles in mind, the State asks the Court to rule on its motions in limine,

2   except where otherwise noted.  Legal authority for these motions is provided where appropriate.

3   The State reserves the right to bring further motions if necessary during the course of this trial.

4   **1.    Motion to Exclude Witnesses.**

5   The State moves this Court for an order excluding all witnesses from the courtroom

6   except during their own testimony.  This motion is based on ER 615.

7   **2.    Disclosure of Defense**

8   The nature of the defense that has been disclosed is general denial and self-defense.  The

9   State moves at this time for further disclosure of the general nature of the defense if it is other than

10   specified and moves to preclude the defense from offering evidence of, or arguing, other defenses

11   that have not been disclosed. See CrR 4.7(b).

12   **3.    Disclosure of Defense Witnesses**

13   The defense has not disclosed any witnesses.  The State requests at this time for the identity

14   of any anticipated defense witness, the witness's contact information, and a summary of their

15   expected testimony. CrR 4.7(b)(1).  If any witness that has not been disclosed is intending on giving

16   testimony on behalf of the defendant, the State requests sufficient time to interview that person

17   before trial.

18   **4.    Discovery Demand:**

19   Motion for discovery of all defense:

20       a)  Witnesses, names, addresses, sex, date of birth and summary of testimony or
           substance of all oral statements;

21       b)  Written or recorded statements of all potential defense witnesses;

22       c)  Written or recorded statements of all potential State's witnesses, signed or
           unsigned, which were not prepared by the State;

23       d)  All potential exhibits, allow inspection of physical or documentary evidence
           in Defendant's possession which may be offered by Defendant at any stage of

24

STATE'S TRIAL MEMORANDUM - 10

**Daniel T. Satterberg**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000, FAX (206) 296-0955

the hearings for trial of this case, including cross examination of State's witnesses, in Defendant's case, or in rebuttal;

e) Scientific or expert evidence – all reports and the substance of any oral statements relative to any tests, experiments, comparisons or other proposed testimony by lay or professional experts, as well as the substance of all information upon which such experts relied in forming opinions which Defendant may use at any stage of the hearings for trial of this case, including cross examination of State's witnesses, in Defendant's case, or in rebuttal, and the names, addresses and telephone numbers of all persons who conducted or participated in the conduct of such tests, and of all such experts;

A defendant's discovery obligations are outlined in CrR 4.7(b) and <u>State v. Yates</u>, 111 Wn.2d 793, 765 P.2d 291 (1988).  In brief, every defendant is required to provide the State with discovery of all material and information within the defendant's control, as outlined above.  This discovery should include endorsement of all witnesses a defendant intends to call as a witness, even if the same witness has been endorsed by the State.

**5.    Motion to Admit the Defendant's Statements Pursuant to CrR 3.5**

When Mr. Canty approached law enforcement officers on December 22, 2017 he made statements to them prior to being placed under arrest.  The State intends to offer these statements in its case-in-chief.  The defendant also made statements after he was arrested which were captured on In Car Video.  The defendant was advised he was being audio and video recorded and was advised of his Miranda rights on In Car Video. The State does not intend to offer Mr. Canty's statements made after he was placed under arrest.

In order for Miranda warnings to be required the defendant must be both "in custody" and subject to "interrogation."  Both factors must be present for the Miranda protection to attach. <u>State v. Warness</u>, 77 Wn. App. 636, 639-40, 893 P.2d 665 (1995).  "A suspect who is not in custody does not have Miranda rights … A suspect who is in custody but not being interrogated does not have Miranda rights." <u>Id.</u>

STATE'S TRIAL MEMORANDUM - 11

**Daniel T. Satterberg,** Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000, FAX (206) 296-0955

1   "Custody" for the purposes of Miranda is established "as soon as a suspect's freedom of

2   action is curtailed to a 'degree associated with formal arrest.'" State v. Walton, 67 Wn. App. 127,

3   129, 834 P.2d 624 (1992), quoting Berkmer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138 (1984).

4   In determining whether the defendant was in custody, the relevant inquiry is based upon an

5   objective standard: how would a reasonable person in the defendant's position understood his

6   situation.  Id; see also, State v. Ferguson, 76 Wn. App. 560, 566, 886 P.2d 1164 (1995).  The

7   issue is not whether a reasonable person would believe he was not free to leave, but whether a

8   reasonable person would believe he was in police custody of the degree associated with formal

9   arrest. Id., citing 1 W. LaFave & J. Israel, Criminal Procedure sec. 6.6, at 105 (Supp.1991).  In

10  addition, a statement is held to be voluntary if it is "made spontaneously, is not solicited, and not

11  the product of custodial interrogation."  State v. Ortiz, 104 Wn.2d 479, 484, 706 P.2d 1069

12  (1985).

13      The State bears the burden of showing whether a defendant has made a knowing,

14  voluntary and intelligent waiver of his Miranda rights. State v. Massey, 60 Wn. App 131, 141,

15  803 P.2d 340 (1990).  The State must prove by a preponderance of the evidence that the

16  defendant made a knowing, voluntary and intelligent waiver of his constitutional rights. State v.

17  Gross, 23 Wn. App. 319, 323, 597 P.2d 894 (1979).  In determining whether a defendant's

18  confession following the reading of Miranda warnings is voluntary, the courts look at the totality

19  of the circumstances under which the defendant's confession was made.  State v. Aten, 130

20  Wn.2d 640, 663-64, 927 P.2d 210 (1996).  The court considers factors such as the defendant's

21  physical condition, age, mental abilities, physical experience, and the conduct of the police. Id

22

23

24

STATE'S TRIAL MEMORANDUM - 12

**Daniel T. Satterberg**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000, FAX (206) 296-0955

A waiver by the defendant depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." State v. Robtoy, 98 Wn.2d 30, 36, 653 P.2d 284 (1982).

The State will seek to admits statements made by Mr. Canty after he approached the officers who were arresting an unrelated suspect. Mr. Canty spent several minutes shouting profanities at officers, challenging them by shouting, among other things, "fuck you," "bring it," "what are you going to do about it, make me move," "do you have a problem," and "you want to go?" These statements preceded Mr. Canty's assault of the officers and occurred prior to their efforts to take him into custody. Mr. Canty was not in custody at the time he made these statements. As such, Miranda warnings are not applicable.

Mr. Canty made several post-Miranda statements after his arrest which were captured on In Car Video. The State does not intend to offer the statements made by Mr. Canty after he was placed in custody.

**6.      Motion to Suppress Pursuant to CrR 3.6**

The defense noted a motion to suppress evidence pursuant to CrR 3.6 on the omnibus order. To date, the State has not received any briefing in support of a motion to suppress evidence. Should the defendant provide briefing in support of such a motion, the State requests an adequate opportunity to respond in writing.

**7.      Motion to Admit Surveillance Video**

Portions of the interaction between Mr. Canty and the officers were captured on surveillance video of nearby businesses. The State intends to offer two surveillance videos capturing two different angles and requests a pretrial ruling regarding the admissibility of the videos.

STATE'S TRIAL MEMORANDUM - 13

**8.      Motion to Allow Statements Made to Medical Personnel**

The State will seek to introduce statements made by Officer Myers and Officer Gordillo to physicians at Harborview Medical Center and Swedish Medical Center under Evidence Rule 803(a)(4).

ER 803(a)(4) permits the introduction of statements made ". . . for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." "To be admissible, the declarant's apparent motive must be consistent with receiving treatment, and the statements must be information on which the medical provider reasonably relies to make a diagnosis." State v. Fisher, 130 Wn.App. 1, 14, 108 P.3d 1262 (2005).  However, statements by a very young child can be admitted under this rule even though the child is too young to be competent to testify as a witness. Id. at 16.

Statements made to physicians that are deemed admissible under ER 803(a)(4) have been held not to be "testimonial" and do not fall under the purview of Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354,  148 L. Ed. 2d 177 (2004), even when the declarant does not testify at trial.  See, e.g. Fisher, 130 Wn.App. 1.   Statements made to non-physicians in the course of receiving medical attention are admissible as statements made to medical personnel.  For example, in State v. Williams, 137 Wn.App. 736, 746-47, 154 P.3d 322 (2007), statements by the victim to an emergency room nurse were admissible, even though the nurse was employed by the hospital as a forensic nurse and even though the victim acknowledged that part of her reason for going to the hospital was to provide evidence against the defendant.

Because Officer Myer's and Officer Gordillo's respective motives in making their statements to treating physicians were consistent with receiving diagnosis and treatment, and

STATE'S TRIAL MEMORANDUM - 14

**Daniel T. Satterberg**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000, FAX (206) 296-0955

1   because the statements consisted of information on which the medical professions reasonably relied

2   in the course of their work, the statements should be admitted.

3   **9.      Prior Bad Acts**

4         As detailed in the Statement of Facts above, the defendant has had many prior contacts

5   with the Seattle Police Department.  The State does not intend to introduce these prior contacts

6   as prior bad acts under ER 404(b) in its case in chief.  If the defendant elects to testify and the

7   State believes the defendant has opened the door, the State will address the issue with the Court

8   outside the presence of the jury.

9   **10.     Motion to Exclude Self-Defense Instruction**

10         Mr. Canty's former defense counsel Sandro Parrotta provided notice to the State of the

11   defense's intention to assert a claim of self-defense.  It's unclear to the State whether Mr. Canty

12   appearing *pro se* intends to assert a claim of self-defense.  The State objects to a self-defense

13   instruction and moves to preclude any argument on self-defense.

14         In <u>State v. Holeman</u>, 103 Wn.2d 426, 693 P.2d 89 (1985), the state Supreme Court held

15   that an arrestee may not resist an arrest, and a bystander may not intervene on the arrestee's

16   behalf, unless the arrestee is actually about to be seriously injured or killed.  In so holding, the

17   court adopted the holding of the Court of Appeals in <u>State v. Westlund</u>, 13 Wn.App. 460, 536

18   P.2d 20 (1975).  The court found convincing the policy reasons articulated by the court in

19   <u>Westlund</u>:

20       [T]he arrestee's right to freedom from arrest without excessive force that falls
    short of causing serious injury or death can be protected and vindicated through

21       legal processes, whereas loss of life or serious physical injury cannot be repaired
    in the courtroom. However, in the vast majority of cases, as illustrated by the one

22       at bar, resistance and intervention make matters worse, not better. They create
    violence where none would have otherwise existed or encourage further violence,

23       resulting in a situation of arrest by combat. Police today are sometimes required to
    use lethal weapons for self-protection. If there is resistance on behalf of the

24

STATE'S TRIAL MEMORANDUM - 15

person lawfully arrested and others go to his aid, the situation can degenerate to the point that what should have been a simple lawful arrest leads to serious injury or death to the arrestee, the police or innocent bystanders. Orderly and safe law enforcement demands that an arrestee not resist a lawful arrest and a bystander not intervene on his behalf unless the arrestee is actually about to be seriously injured or killed.

Westlund, 13 Wn.App. at 467.

In State v. Valentine, 132 Wn.2d 1, 21, 935 P.2d 1294 (1997), the court reiterated its support of Westlund and Holeman and held that although a person who is being unlawfully arrested has a right to use reasonable and proportional force to resist an attempt to inflict injury on him or her during the course of an arrest, that person may not use force against arresting officers if he or she is faced only with the loss of freedom.

In State v. Mierz, 127 Wn.2d 460, 901 P.2d 286 (1995), the defendant appealed his conviction of assault in the third degree arguing, *inter alia*, he was provided ineffective assistance of counsel when his counsel failed to assert a claim of self-defense. The court affirmed the conviction holding, an arrestee charged with assault upon a law enforcement officer "must show that there was an imminent threat of serious physical harm in connection with an unlawful arrest in order to establish legitimate use of force in self-defense." Mierz, 127 Wn.2d at 476. The court noted there was no evidence the defendant was "about to suffer serious physical injury" when he was arrested thus a self-defense theory fails. Id. at 477.

Although a defendant is entitled to an instruction on self-defense if there is any evidence of a threat of serious bodily injury, a defendant must show evidence of this threat rather than evidence that the defendant violently resisted an otherwise peaceful arrest. State v. Gogolin, 45 Wn.App. 640, 727 P.2d 683 (1986).

In this case, there is no evidence whatsoever that Mr. Canty faced a threat of serious bodily injury. Rather, when the officers moved in to arrest Mr. Canty he responded violently, by

STATE'S TRIAL MEMORANDUM - 16

**Daniel T. Satterberg**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000, FAX (206) 296-0955

punching Officer Gordillo in the temple.  As Officers Meyers and Gordillo attempted to take Mr.

Canty to the ground, Mr. Canty continued to violently struggle with officers.  It ultimately took

several additional officers to control Mr. Canty – a direct response to Mr. Canty's actions.  While

this is evidence that Mr. Canty violently resisted his arrest, it is not evidence that he faced an

imminent threat of serious physical harm that would justify the use of force in self-defense.

Thus Mr. Canty is not entitled to a self-defense instruction.

11.   **Motion to Preclude Questioning, Testimony, & Argument About the Following Topics**

- Defendant's prior trial that ended in a dismissal pursuant to CrR 8.3.  This motion is based on ER 401, 402 and 403.

- Reference to "adding charges" or "increased charges" as charging decisions are not relevant to the issues of fact, are unfairly prejudicial and will mislead the jury.

- Reference to the defendant's motion to dismiss pursuant to CrR 8.3 and the Court's ruling on that motion.  This motion is based on ER 401, 402 and 403.

12.   **Motion to Exclude Hearsay Offered by the Defendant**

Pursuant to ER 801 and 802, the State moves the Court for an order precluding the

defendant from eliciting evidence or testimony about his own out-of-court statements.  The

defendant's version of the incident is an out-of-court statement offered for the truth of the matter

asserted; therefore, it is hearsay when offered through the testimony of the responding

officers.  ER 801(c).  No hearsay exception applies.

Although the State may offer the defendant's statements as admissions by a party-

opponent, ER 801(d)(2) does not allow the defendant to admit his own statements.  As explained

in Karl Tegland's Courtroom Handbook on Washington Evidence:  "Statements by a party are

admissible only when offered against that party.  The rule does not allow a party to introduce his

STATE'S TRIAL MEMORANDUM - 17

1   own out-of-court statements through the testimony of other witnesses." 5D Wash. Prac. §

2   801:16 at 355 (2013-2014 ed.).  Instead, ER 801(d)(2) envisions that a party will tell his or her

3   side of the story by taking the witness stand and testifying under oath, subject to cross-

4   examination.

5   **13.      Motion to Exclude the Defendant's Character Evidence**

6           The State hereby moves to exclude any evidence, argument, or suggestion concerning the

7   defendant's good character or reputation in the community for truth and honesty.  Such evidence

8   is irrelevant to this case and should not be admitted.

9           ER 404(a) governs the use of the defendant's character as substantive evidence at trial.

10  ER 404(a) provides the following:

11              Evidence of a person's character or trait of character is
            not admissible for the purpose of proving action in conformity
12          therewith on a particular occasion, except:
                1) **Character of the Accused** - Evidence of a pertinent
13          trait of character offered by an accused, or by the prosecution to
            rebut the same; 2) Character of the victim - Evidence of a
14          pertinent trait of character of the victim of the crime offered by
            an accused, or by the prosecution to rebut the same, or evidence
15          of a character trait of peacefulness of the victim offered by the
            prosecution in a homicide case to rebut evidence that the victim
16          was the first aggressor.

17  Although ER 404(a) permits the accused to introduce evidence of his own good character, the

18  evidence must be pertinent to rebut the nature of the charge.  For example, in State v. Harper, 35

19  Wn. App. 855, 859-60, 670 P.2d 296 (1983), the defendant was not permitted to introduce

20  testimony as to his good reputation for truthfulness in the community during his trial for indecent

21  liberties.  The court stated that the defendant's character trait for truthfulness was not pertinent to

22  a charge involving sexual assault. Id.  The court reasoned "[u]nless an accused's character for

23  truthfulness is a trait pertinent to the charge, *e.g.*, fraud, the defendant, as the accused, cannot

24

STATE'S TRIAL MEMORANDUM - 18

**Daniel T. Satterberg**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000, FAX (206) 296-0955

1    present evidence of his good reputation for truthfulness." Id. at 860.  Here, like the defendant in

2    Harper, this defendant's character for truthfulness in the community is irrelevant to the charges

3    of assault.  Thus, this court should exclude any testimony regarding the defendant's reputation

4    for truthfulness in the community and requests that defense counsel be prohibited from making

5    any argument regarding the defendant's reputation at trial.

6          If the defendant testifies at trial, then he has no greater right than any other witness to

7    have evidence of his truthful character presented to a jury. Id.  ER 608 will guide the trial court's

8    analysis on whether to admit evidence of the defendant's character through reputation evidence.

9    ER 608 says, in part, that "evidence of truthful character is admissible *only* after the character of

10   the witness for truthfulness has been attacked by reputation evidence or otherwise." ER 608

11   (Italics added).  Accordingly, only after the defendant testifies and becomes a witness and his

12   character for truthfulness has been attacked by reputation evidence or otherwise, can he rebut

13   with evidence of his good reputation for truthfulness. Harper, 35 Wn. App. at 860.  To be

14   admissible reputation evidence, the reputation must be shown to exist with a neutral and

15   generalized community. State v. Gregory, 158 Wn.2d 759, 147 P.3d 1201 (2006) (rape victim's

16   reputation among family members inadmissible).  This Court may also have to decide whether

17   the defendant has, in fact, been impeached triggering the right to rehabilitation under ER 608.

18   For example, in State v. Deach, 40 Wn. App. 614, 618, 699 P.2d 811 (1995), the defendant was

19   being prosecuted for second degree rape.  The court held that cross-examination of the defendant

20   that merely inquired about his version of the incident did not open up the subject of the

21   defendant's truthfulness and did not give him the right to present evidence of his truthful

22   character. Id.

23

24

STATE'S TRIAL MEMORANDUM - 19

1    Here, the State does not intend to attack the defendant's character for truthfulness if he

2    testifies at trial.  Moreover, the State is not aware of any defense witnesses who would qualify as

3    witnesses who could testify about the defendant's reputation within a neutral and generalized

4    community.  Reputation character evidence must be excluded at trial unless the defendant can

5    satisfy the foundational requirements of ER 608.

6    **14.     Motion To Limit Admissibility Of Character Evidence And Impeachment Evidence
             For State's Witnesses**

7           The State asks the court to seek clarification from the defendant regarding any prior bad

8    acts, reputation evidence, character evidence, or criminal history the defendant seeks to introduce

9    at trial regarding any of the State's witness, whether under ER 404, ER 405, ER 608, or ER 609

10   or any other relevant rule.  Further, the State moves for disclosure of any specific instances of

11   misconduct that the defendant intends to use for the purpose of attacking any witness's

12   credibility, pursuant to ER 608.

13          Pursuant to ER 404(b), the defendant has not informed the State of any evidence of prior

14   misconduct or crimes by the State's witnesses that he intends to introduce at trial.  In order for

15   this court to be able to exercise its discretion, as required by the above rules of evidence, the

16   court must have advance notice of any such evidence.  The State requests the court require offers

17   of proof at this time related to any such evidence.

18          Under ER 608, the defendant may use character evidence to attack or support a witness'

19   credibility at trial.  ER 608 provides two ways to use character evidence:

20               (a) Reputation evidence of character - The credibility of a
21          witness may be attacked or supported by evidence in the form of
            reputation, but subject to these limitations: (1) the evidence may
22          relate only to character for truthfulness or untruthfulness, and (2)
            evidence of truthful character is admissible only after the character
23          of the witness for truthfulness has been attacked by reputation
            evidence or otherwise.
24

STATE'S TRIAL MEMORANDUM - 20

**Daniel T. Satterberg**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000, FAX (206) 296-0955

(b) Specific Instances of Conduct - specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness, (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross examined has testified.

Established case law makes clear that when a party attacks a witness' credibility they may not "prove up" a specific instance of misconduct with extrinsic evidence. State v. Emanuel, 42 Wn.2nd 1, 13, 253 P.2d 386 (1953).

First, if the defendant intends on attacking a witness's "character for truthfulness," he may do so by way of reputation evidence. Counsel may conduct the following limited inquiry:

(1) Do you know the general reputation at the present time of [witness], in the community in which she lives, for truth and veracity?
(2) Is her reputation good or bad?

Tegland, Courtroom Handbook on Washington Evidence, Vol. 5D, pg. 274 (2013-14). Any deviation from this standard script is error. State v. Maule, 35 Wn. App. 287, 667 P.2d 96 (1983).

If the defendant intends to elicit reputation evidence by a witness, the State respectfully requests the opportunity to voir dire the witness outside the presence of the jury. Only if this Court finds that a proper foundation is laid for such reputation should such evidence be allowed.

Secondly, ER 608(b) provides that specific instances of a witness's conduct may "in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination." If the cross-examiner intends to introduce evidence under this rule, then he must have a good faith basis for the inquiry, and the court, in its discretion, may require that the basis be revealed in the absence of the jury before the cross-examination is allowed. Additionally, the

STATE'S TRIAL MEMORANDUM - 21

**Daniel T. Satterberg**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000, FAX (206) 296-0955

court may curtail inquiry into specific instances of conduct pursuant to ER 403 if its probative

value is outweighed by the danger of unfair prejudice.  The State therefore moves to exclude the

defendant from cross-examining State's witnesses about specific acts of conduct unless the

requirements of ER 608(b) have been satisfied.  Accordingly, the State requests that the

defendant make an offer of proof to the court outside the presence of the jury.

Under ER 609, the State is not aware of any criminal conviction history for any of the

State's witnesses.  If the defendant intends to elicit ER 609 history, then the State requests that

the defendant make an offer of proof outside the presence of the jury.

**15.     Regarding Application of the Rules of Evidence to a Pro Se Defendant**

The State moves this Court for an order reminding the defendant that he is held to the same

standard as a lawyer while representing himself in terms of the presentation of evidence and acting

within the bounds of courtroom procedures and the Washington Rules of Evidence.  "[W]hen a

criminal defendant chooses to represent himself and waive the assistance of counsel, the defendant

is not entitled to special considerations and the inadequacy of the defense cannot provide a basis for

a new trial or appeal."  State v. DeWeese, 117 Wn.2d 369 (1991).  "The court is under no duty to

inform a pro se defendant of the relevant rules of law, and the defendant must nonetheless conform

to substantive and procedural rules."  State v. Bebb, 108 Wn.2d 515, 524 (1987).

**16.     Motion to Prohibit the Defendant from Testifying While Not on the Witness Stand**

This motion is based on ER 611 and ER 403.

**17.     Motion to Prohibit the Defendant From Arguing Any Facts Not Presented to the Jury During Closing Argument**

This motion is based on ER 611 and ER 403.

**18.     Motion to Preclude the Defendant From Testifying in Narrative Form**

STATE'S TRIAL MEMORANDUM - 22

**Daniel T. Satterberg**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000, FAX (206) 296-0955

1         Although pro se defendants are often permitted to testify in narrative form to facilitate

2   presentation of their case, it is not necessarily an abuse of discretion to require a pro se defendant to

3   use a question-and-answer format.  State v. Joyner, 69 Wn. App. 356, 365, 848 P.2d 769 (1993).

4   Given the issues likely to arise in this case, the State respectfully asks this Court to require the

5   defendant to testify in a question-and-answer format, rather than in narrative form.

6   **19.   Motion to Exclude Evidence or Argument Concerning Penalty**

7         Penalties, or potential penalties, for the charged crimes should be entirely excluded.  The

8   jury is instructed in WPIC 1.02 with the following:  "You have nothing whatever to do with any

9   punishment that may be imposed in case of a violation of the law.  The fact that punishment may

10  follow conviction cannot be considered by you except insofar as it may tend to make you

11  careful."  Reference to, allusion to, or discussion of the following should be excluded:

12      - potential loss of employment,

13      - plea negotiations,

      - jail/prison incarceration,

14      - labeling the defendant(s) as a criminal, or

15      - that a conviction would be a "felony."

16  Such a discussion at any point in the trial, including jury selection, is not relevant to the jury's

17  consideration of the charges; is unfairly prejudicial; may mislead the jury; and is likely to cause

18  undue delay and waste of time.  See, ER 401, 402, and 403.

                     **VII.   CONCLUSION**

19        This memorandum has been prepared solely to acquaint the trial court with the issues as

20  they will be presented at trial.

21        DATED this _____ day of June, 2017

22

23                    DANIEL T. SATTERBERG
                  King County Prosecuting Attorney

24

STATE'S TRIAL MEMORANDUM - 23

EXhibit 26

**FILED**

17 APR 26 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 16-1-06917-3 SEA

1

2

3

4

5

6   IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON IN AND FOR THE
COUNTY OF KING

7

STATE OF WASHINGTON,       )
8            Plaintiff,       )       NO.     16-1-06917-3 SEA
                             )
9   vs.                      )       AMENDMENT ON
                             )       MOTION TO DISMISS
10                           )
                             )
    KYLE LYDELL CANTY        )
11          Defendant.       )
_____)

12

13

14

15       COMES NOW, KYLE LYDELLL CANTY, the Defendant by and through

counsel, SANDRO PARROTTA- ATTORNEY,   and moves to amend the motion to
16
dismiss this pursuant to CrR 8.3 - The Seattle Police Department withholding
17
discoverable evidence.

Motion to Dismiss
– PAGE 1 OF 10

Sandro Parrotta, Attorney at Law
18 W. Mercer Street Suite 2~~
Seattle, WA 98119
(206) 552-3739

1

2   I.      **Statement of facts**

3          **( This amendment concerns additions to the statement of facts which will be**

4   **added to the end of this section )**

5   1.             Mr. Canty was arraigned on January 11, 2017.   He was originally

6   charged with one count of Assault in the third degree and one count of assault in the

7   second degree.

8   2.             Mr. Canty adamantly denies the charges.   It is the Defense Position that

9   Mr. Canty was assaulted by Seattle Police Officers.

10  3.             On February 15, 2017, at a bond hearing the State amended the charges

11  to two counts of Assault in the second degree.   At the bond hearing Prosecutor Brandy

12  Gevers informed me that the Seattle Police wanted all its officer interviews to be

13  arranged through the prosecutor's office.   This has slowed down the investigation in

14  this case.

15  4.             On March 27, 2017 the Defense conducted the first interview in this

16  case.  The Defense interviewed Officer Gordillo.  During this interview it became clear

17  to the Defense that there was more discovery produced based on this incident.

Sandro Parrotta, Attorney at Law
18 W. Mercer Street Suite 360
Seattle, WA 98119
(206) 552-3739

1  Specifically, there was an internal investigation conducted by the Seattle Police

2  Department for excessive use of force by its officers against Mr. Canty.

3  5.           Shortly after this interview the Defense contacted prosecutor Jennifer

4  Petersen and requested for assistance in obtaining this discoverable material.   Ms.

5  Petersen agreed to assist the Defense in obtaining the material from the Seattle Police

6  Department.

7  6.           On April 4, 2017 the State notified the Defense it had the discovery

8  ready for pick up on a thumb drive.  On April, 6, 2017 I picked up the discovery from

9  the prosecutor's office.

10  7.           The amount of material produced by the Seattle Police Department

11  during its investigation is voluminous.   It includes audio recorded and written

12  statements by the alleged victims in this case, as well as, material witnesses that were

13  present during the incident or arrived shortly after the incident occurred.

14  8.           The alleged victims gave more detailed information to the internal

15  investigators than they put in the police reports for the criminal case.   This vital

16  information is relevant in that it can be used to impeach these witnesses for inconsistent

17

Motion to Dismiss
– PAGE 3 OF 10

Sandro Parrotta, Attorney at Law
18 W. Mercer Street Suite 360
Seattle, WA 98119
(206) 552-3739

1    statements.   Officer Gordillo's statement appears to be made on January 13, 2017 and

2    Officer Myers' Statement appears to be produced on February 1, 2017.

3    9.              What is of particular significance is that the Seattle Police interviewed

4    and recorded Mr. Canty while he was restrained in the hospital on the incident date,

5    December, 22, 2016.

6    10.             This material was not made available to the Defense until April 4, 2017.

7    Almost 90 days after the date of arraignment.

8              **In addition to the above the following facts are added to this motion.**

9    1.              On January 23, 2017 Seattle Police investigators audio recorded AMR

10   employee Mr. Gavin Peck who spoke to Mr. Canty about his injuries and the incident.

11   Mr. Peck took detailed notes of Mr. Canty's version of the incident, as well as, the

12   injuries he suffered.   This material was not provided to the Defense in the original

13   discovery packet but was made available to the Defense on April 4, 2017.   Two other

14   AMR employees were interviewed and audio recorded by SPD investigators on

15   February 2, 2017 and February 3, 2017.

16   2.              On February 13, 2017, SPD investigators audio recorded civilian witness

17   Kadeem McLaurin.   This discovery was made available to the Defense on April 4, 2017.

Motion to Dismiss                                    Sandro Parrotta, Attorney at Law
 - PAGE 4 OF 10                                        18 W. Mercer Street Suite 360
                                                          Seattle, WA 98119
                                                           (206) 552-3739

1    3.          Officer Gordillo's Initial Police Report that was printed on January 17,

2    2017 and provided to the Defense omitted the fact that he punched Mr. Canty in the face

3    during this incident.   The Defense first learned of this assault on Mr. Canty during the

4    Defense interview of Officer Gordillo that took place on March 27, 2017.

5    4.          On April 17, 2017, I obtained Mr. Canty's medical records from Swedish

6    Hospital.   On April 19, 2017 I provided a copy of the records to prosecutor Jennifer

7    Petersen.    The medical reports did not contain the AMR employee reports or notes

8    involving this incident.

9

10   **II.         Argument**

11        **A.    A dismissal under 8.3 is warranted because the Seattle Police
                  Department's    misconduct and mismanagement prejudiced Mr.**
12                **Canty.**

13        Dismissing a criminal case is an extraordinary remedy and appropriate under

14   certain circumstances.    The court may take action to sanction the government under

15   CrR 8.3(b) if the defendant shows by the preponderance of the evidence (1) that the

16   government engaged in arbitrary action or governmental misconduct; and (2) that this

17   misconduct prejudiced the defendant's right to a fair trial. *State v. Rohrich*, 149 Wn.2d

Motion to Dismiss
– PAGE 5 OF 10

Sandro Parrotta, Attorney at Law
18 W. Mercer Street Suite 360
Seattle, WA 98119
(206) 552-3739

1    647, 654, 71 P.2d 638 (2003). This power to dismiss is discretionary and is reviewable

2    only for manifest abuse of discretion. *State v. Burri*, 87 Wn.2d 175, 183, 550 P.2d 507,

3    513 (1976); *State v. Sulgrove*, 19 Wn.App. 860, 863, 578 P.2d 74 (1978). "Discretion is

4    abused when the trial court's decision is manifestly unreasonable, or is exercised on

5    untenable grounds or for untenable reasons." *State v Blackwell*, 120 Wn.2d 822, 830,

6    845 P.2d 1017 (1993). When the State violates a discovery order, the court may choose

7    to grant a continuance, dismiss the case, or enter such orders it deems just under the

8    circumstances. *State v. Sherman* 59 Wn.App, 763-766 (1990). When the State fails to

9    act with due diligence and the defendant is forced to choose between the rights to a

10    speedy trial or effective representation of counsel, the court may dismiss the action. *Id.*

11    at 763.

12

13       In *State v. Brooks,* 149 Wn.App. at 373. Mr. & Mrs. Brooks were charged with

Burglary in the First Degree, Robbery in the First Degree, and Theft of a Firearm.
14

*Brooks,* 149 Wn.App. at 373-378. At the omnibus hearing, the State moved to continue
15

because it received additional discovery. *Id.* Mr. & Mrs. Brooks indicated that the only
16

discovery they had received was the probable cause statement. *Id.* At the next hearing,
17

the court continued the omnibus hearing to allow the State to provide additional

Motion to Dismiss
– PAGE 6 OF 10

1   discovery to Mr. & Mrs. Brooks. *Id.*  Next, the State was late in providing a witness list.

2   *Id.*  The trial court pushed back the 3.5 hearing to allow Mr. & Mrs. Brooks time to

3   review the new materials. *Id.*  At the 3.5 hearing, the State provided Mr. & Mrs. Brooks,

4   "138 pages of new discovery." *Id* at 378.  The new discovery included statements from

5   Mr. & Mrs. Brooks and other police reports. *Id.* at 378-379.

6          Mr. & Mrs. Brooks filed a motion to dismiss based on discovery violations.

7   *Brooks,* 149 Wn.App. at 379.  The defendants were forced to choose between effective

8   assistance of counsel and their rights to a speedy trial.  The State argued that the proper

9   remedy was a continuance. *Id.*  The trial court inquired into the discovery problems in

10  the case. *Id.*   The prosecutor told the trial court that it did not have some of the

11  discovery "because the police had not yet transcribed it." *Id.*   Further, the prosecutor

12  was new to the case and "the first thing he did was to check for a witness list, and when

13  he did not see one, he asked another deputy prosecutor to prepare one." *Id.*

14          The trial court noted the delays in getting the discovery to the defendants.

15  *Brooks,* 149 Wn.App. at 382.

16          "Dumping the amount of information into the lap of the defense
            attorneys subsequent to the omnibus hearing and on the day of trial when
17          it was not newly created or discovered and which had been available for
            weeks is simply unfair and unacceptable."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

*Id.* at 387.  The trial court also noted that: "there [discovery] are some out there that still hasn't been delivered." *Id.*  The prosecutor responded that there were staffing issues in the sheriff's office. *Id.* 382-387.  The trial court dismissed the case under CrR 8.3.

   The State appealed.   The appellate court upheld the trial court's decision. *Brooks* recounted the lack of due diligence and mismanagement.   The decision expressed that: "[i]t does not appear here that the State put forth the same effort to satisfy its CrR 4.7(a) discovery obligations." *Brooks*, 149 Wn.App. at 385.  Moreover, the appellate court observed that the prosecutor did not attempt to work with the sheriff to resolve the time lag in the discovery. *Id.* at 386.

   On appeal, the State argued that their mismanagement did not prejudice the defendants. *Brooks*, 149 Wn.App. at 387.   The appellate court rejected the State's argument.   The trial court noted that there was a "total failure to provide discovery in a timely fashion." *Id.* at 388.  Moreover, prejudice includes forcing a defendant to choose between speedy trial and effective assistance of counsel. *State v. Price*, 94 Wn.2d 810, 814 (1980).  Prejudice results from the State's failure to provide discovery. *Brooks*, 149 Wn.App. at 387.   Finally, "it is, in fact, the prejudice to the defendant's right to a fair trial that must be material, rather than the evidence." *Id.* at 389.

Motion to Dismiss
– PAGE 8 OF 10

1          The *Brooks* decision is relevant in Mr. Canty's case.  Like Mr. & Mrs. Brooks,

2   Mr. Canty is facing a serious crime..  While all criminal cases are serious, Mr. Canty is

3   facing a strike offence that if convicted it will stay on his record for the rest of his life.

4   The Seattle Police Department deprived the Defense with vital exculpatory evidence in

5   a timely fashion.      In addition, the Seattle Police Department obtained a recorded

6   statement from Mr. Canty and did not turn it over to the prosecutor or Defense  until

7   April 4, 2017.   This is almost three months after the date or arraignment. It is gross

8   mismanagement and misconduct for the State to turn over such vital evidence so late in

9   the case.   The Defense is at a disadvantage now that it is reviewing evidence after

10  conducting several witness interviews.   Withholding evidence until this late stage of

11  representation also deprives the Defense with   time to consider reasonable tactical

12  decisions.  When the Defense reviews the evidence with his client several decisions go

13  into trial tactics, strategies for negotiations and tactic for interviewing witnesses.  Many

14  of these important decisions have been unnecessarily harmed because of the decision

15  for the Seattle Police to withhold vital evidence.

16      **Conclusion**

17          The Defense respectfully requests the Court to dismiss this case.

Motion to Dismiss
– PAGE 9 OF 10

1  DATED this  25th day of April, 2017

2                              s/ Sandro Parrotta
                              E-mail: parrottalaw@zoho.com

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

Motion to Dismiss                                    Sandro Parrotta, Attorney at Law
– PAGE 10 OF 10                                         18 W. Mercer Street Suite 360
                                                             Seattle, WA 98119
                                                             (206) 552-3739

EXHIBIT 27 ?!?

# ASSAULT SECOND DEGREE
*RCW 9A.36.021 (2) (a)*
*CLASS B – VIOLENT*
OFFENDER SCORING RCW 9.94A.525(8)

| OFFENDER'S NAME | OFFENDER'S DOB | STATE ID# |
|---|---|---|
| KYLE L. CANTY | 07/20/1985 | WA28555825 |
| JUDGE | CAUSE # | FBI # |
| | 16-1-06917-3 SEA | 279670HD6 |
| | | DOC # |

*If the present conviction is for a felony domestic violence offense where domestic violence was plead and proven, use the General Violent Offense Where Domestic Violence Has Been Plead and Proven scoring form on page 197.*

**ADULT HISTORY:**

Enter number of serious violent and violent felony convictions .................. _____ x 2 = _____

Enter number of nonviolent felony convictions ...................................... _____ x 1 = _____

**JUVENILE HISTORY:**

Enter number of serious violent and violent felony dispositions................ _____ x 2 = _____

Enter number of nonviolent felony dispositions................................... _____ x ½ = _____

**OTHER CURRENT OFFENSES:** Count II: Assault 2nd
*(Other current offenses that do not encompass the same conduct count in offender score)*

Enter number of other serious violent and violent felony convictions ............... 1 x 2 = 2

Enter number of other nonviolent felony convictions .............................. _____ x 1 = _____

**STATUS:**

Was the offender on community custody on the date the current offense was committed? (if yes) + 1 =      _____

Total the last column to get the **Offender Score** (Round down to the nearest whole number)     2

## SENTENCE RANGE

| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9+ |
|---|---|---|---|---|---|---|---|---|---|---|
| | 6m | 9m | 13m | 15m | 17.5m | 25.5m | 38m | 50m | 61.5m | 73.5m |
| LEVEL IV | 3-9 | 6-12 | 12+-14 | 13-17 | 15-20 | 22-29 | 33-43 | 43-57 | 53-70 | 63-84 |

✓  For attempt, solicitation, conspiracy (RCW 9.94A.595) see page 27 or for gang-related felonies where the court found the offender involved a minor (RCW 9.94A.833) see page 185 for standard range adjustments.

✓  For deadly weapon enhancement, see page 188.

✓  For sentencing alternatives, see page 176.

✓  For community custody eligibility, see page 186.

✓  For any applicable enhancements other than deadly weapon enhancement, see page 182.

The Caseload Forecast Council is not liable for errors or omissions in the manual, for sentences that may be inappropriately calculated as a result of a practitioner's or court's reliance on the manual, or for any other written or verbal information related to adult or juvenile sentencing. The scoring sheets are intended to provide assistance in most cases but do not cover all permutations of the scoring rules. If you find any errors or omissions, we encourage you to report them to the Caseload Forecast Council.

2015 Washington State Adult Sentencing Guidelines Manual P

Exhibit 28



| | SEATTLE POLICE DEPARTMENT |
|---|---|
| | NARRATIVE TEXT HARDCOPY |
| | GO# 2016-458826 ARREST - FELONY BY FOLLOW-UP UNIT          1312-0 ASSLT-AGG-POLICE-BODYFORCE |

### ASSLT-AGG-POLICE-BODYFORCE
### STATEMENT OF OFFICER MYERS
### NARRATIVE

The following is the statement of Officer C. Myers 5452:

On December 22nd 2016 I was on-duty, in uniform, driving a marked SPD patrol vehicle as 2D3 with my partner Officer R. Anderson #8325. At approximately 1620hrs we heard a SPD bicycle patrol unit in foot pursuit of a suspect in the Westlake Park area.

We were near the SPD West Precinct. We were not close enough to assist with the foot pursuit, and did not arrive before the suspect was stopped. The suspect was stopped and arrested in the alley south of the 300 block of Pike. I am familiar with the 3rd and Pike area. I am well aware that this area is a very high crime area with narcotics, assaults, and robberies commonly reported. I drove to the area and stopped in the 300 block of Pike Street as a cover unit for the officers involved in the foot pursuit related arrest. My role was to ensure that other subjects did not interfere with the arrest or present any threats to the officers in the alley.

Shortly after I arrived I became aware of a black male wearing a black jacket standing at the entrance to the alley yelling at the Officers. The male was later identified as Kyle Canty. Canty was not involved in the arrest. Initially I could not hear what Canty was yelling, but he appeared to be very angry and it looked as if he was trying to go down the alley. Canty's body language was agitated and aggressive with balled fists, bent arms and a puffed out chest. Officer Kang, working as a bicycle patrol officer, was blocking Canty's access. The alley is clearly posted as closed, no trespassing. Officer Kang was physically blocking Canty's path into the alley with his body next to a patrol car.

As I got out of the car Officer Anderson activated our ICVS. I walked over to the mouth of the alley, approaching behind Canty. I could hear Canty yelling challenges to fight Officer Kang. Canty was yelling things similar to "Do you have a problem" and "you want to go?" I know that "You want to go?" is a common challenge to physically fight and was an attempt by Canty to escalate a situation to physical violence.

I could hear Officer Kang calmly telling Canty that they alley was closed and to stay out of the alley. Officer Kang pointed out the posted sign that the alley was closed. I walked up near Canty to monitor his escalating behavior and to assist Officer Kang. I could see that Canty was so agitated in his yelling that he was spitting as he yelled at Officer



**SEATTLE POLICE DEPARTMENT**
**NARRATIVE TEXT HARDCOPY**

GO# 2016-458826 ARREST - FELONY BY     1312-0 ASSLT-AGG-POLICE-BODYFORCE
FOLLOW-UP UNIT

Kang. I heard Canty yell threats to sue the police department. Canty also made reference to just getting out of jail and that he got off (free) for assaulting cops. Officer Kang continued to exhibit a great deal of patience as Canty repeated challenges to fight. Canty had both hands balled into fists with his shoulders drawn back and chest puffed out while yelling and spitting.

I stood by for a short time as Canty was oblivious to my presence as he was focused on yelling at Officer Kang.

Canty eventually looked around and became aware of my presence. Canty reacted by taking a few steps westbound and turning to refocus his anger on me. I stepped southbound so that I was now more in line between Canty and the mouth of the alley. My intent was to provide an additional barrier between Canty and the arrest scene in the alley. The officers in the alley were still busy with a prisoner and collecting evidence and Canty was attempting to interfere with that unrelated investigation.

Canty began yelling at me, still so agitated that he was spitting as he challenged me, yelling, "You wanna go?" I put up both open empty hands with palms facing Canty to tell him there was no reason to yell, he could just walk away, there was no problem. My gesture was intended to be non-threatening and is an example of non-threatening body language while at the same time creating a physical buffer between Canty and the Officers and scene I was protecting. Before I could finish my attempts at verbal de-escalation with a non-threatening stance, Canty suddenly struck me in my right forearm and slammed my forearm into my own chest and punch to my chest.

I pushed forward to counteract the force of Canty trying to push/punch me off balance backward and created some space. I pushed Canty back with my open hands to create distance.

Officer Gordillo came up on my left and asked me, "Did he just assault you?" I confirmed that Canty had.

Officer Gordillo and I moved forward to arrest Canty for Assault and/or Harassment. Canty attempted to evade our attempts to arrest him. I saw Canty punch Officer Gordillo very hard with his right fist to the left side of Officer Gordillo's face. The impact was very hard and I saw Officer Gordillo reel backward from the blow.

I attempted to arrest Canty, but he resisted. I saw that Canty was pulling at Officer Gordillo's equipment vest. Canty resisted my attempts to arrest him and alternated between fleeing and fighting two uniformed officers. I



**SEATTLE POLICE DEPARTMENT**
**NARRATIVE TEXT HARDCOPY**

GO# 2016-458826 ARREST - FELONY BY          1312-0 ASSLT-AGG-POLICE-BODYFORCE
FOLLOW-UP UNIT

tried to take Canty to the ground to better control him, but he actively resisted and spun resulting in his weight lunging sideways onto my right leg. Canty dropped onto my right leg, rolling my right foot under his body, and twisting my right leg and knee causing me to fall onto Canty and my own twisted foot at the same time. I felt a loud pop and could immediately feel my pulse and swelling in my right ankle with a great deal of pain.

I tried to control Canty, but Canty was spitting in my face as he lay on his back face up. I tried to push Canty's face away from my own to avoid his spitting. I saw that Canty had Officer Gordillo's microphone cord grabbed in one of his fists and he was punching with his right hand. I was suddenly punched by Canty along the right side of my face, knocking my safety glasses off my face. I was rocked back by the punch, I came back forward and used my forearms to drop my weight onto Canty pinning his arms down. When I came down I was aware that Canty's right arm was extended straight up toward Officer Gordillo's face as if he had just attempted to punch or grab the officer. Canty was yelling that he didn't touch anyone as he was punching at Officers, and was yelling that he just got off one of these, that he just got out of jail, and the judge let him go.

I moved to my left, which pinned Canty's left arm to the sidewalk. I was aware that additional Officers had arrived and were coordinating Canty's handcuffing. I told other officers that I was injured and couldn't move. I assisted with handcuffing Canty, then moved to the side. I was initially unable to bear weight on my right ankle. I asked another officer to call for Seattle Fire to assist me.

As I waited my ankle continued to swell inside by boot and I felt the pain and throbbing increase. The right side of my face, my right elbow, and both knees were also painful from the fight with Canty.

Seattle Fire Aid 2 arrived and evaluated me at the scene. I was transported by patrol vehicle to Ballard Swedish where evaluation and X-rays confirmed that my right ankle was broken during the assault and subsequent arrest involving Canty.

My injury as a direct result of Canty's actions rendered me unable to return to work, and I will be out for extended recovery.

I had no further contact with Canty.

Author:**CARPENTER, COLIN D**
Related date:**Dec-28-2016  (Wed.) 1347**



**SEATTLE POLICE DEPARTMENT**

**NARRATIVE TEXT HARDCOPY**

GO# 2016-458826  ARREST - FELONY BY      1312-0 ASSLT-AGG-POLICE-BODYFORCE
FOLLOW-UP UNIT

```
I hereby declare (certify) under penalty of perjury under the laws of the
State of Washington that this report is true and correct to the best of
my knowledge and belief (RCW 9A.72.085)

Electronically signed:
CARPENTER, COLIN D          Date: Dec-28-2016          Place: Seattle, WA

                    *** END OF HARDCOPY ***
```

16-1-06917-3 SEA                                                    Canty_K 0302

Exhibit 29



### SEATTLE POLICE DEPARTMENT
### NARRATIVE TEXT HARDCOPY

GO# 2016-458826 ARREST - FELONY BY     1312-0 ASSLT-AGG-POLICE-BODYFORCE
FOLLOW-UP UNIT

### ASSLT-AGG-POLICE-BODYFORCE
### STATEMENT OF OFC GORDILLO
### STATEMENT

Event/GO#: 2016-458826
Date of Occurrence: 12/22/2016
Statement of: Ofc Gordillo 7651

Training and Experience
In May of 2011, I obtained a Juris Doctor from Seattle University School of
Law. In June of 2012, I was admitted to the practice of law by the
Washington State Bar Association. In March of 2013, I was hired by the
Seattle Police Department. In August of 2013, I completed The Basic Law
Enforcement Academy (BLEA) at the Washington State Criminal Justice
Training Center. In December of 2014, I became a certified Crisis
Intervention Team (CIT) officer.
In my capacity as a sworn police officer for the City of Seattle, I work to
increase public safety by responding to emergencies, enforcing criminal
laws, assisting people in crisis, and promoting good community relations.
My current unit of assignment is with the Seattle Police Department's Mary
90 Mountain Bike Squad. This unit is staffed with officers that are highly
pro-active, and each has an in-depth knowledge of street level narcotics
use. I have been trained on what street narcotics look like and how they
are used. I have completed a 4-Day Surveillance Techniques Course and a
4-Day Interview and Interrogation Techniques course. In 2015 alone, I have
made or was directly involved in over a hundred narcotics-related arrests.

ARRIVAL:
On 12/22/2016 at about 1626 hours, Officer Merritt 7673 and I had just
completed another unrelated Drug-traffic loitering (SMC 12A.20.050) arrest
in the 300 block of Pike Street Alley South (see GO 16-458812). I was in
full uniform.
Initially, my attention was focused on investigating this unrelated arrest.
I believed that there was outstanding evidence that was on the ground in
the alley. Specifically, I believed that the suspect in the unrelated
incident and thrown some black tar heroin to the ground in the alley. The
alley south of the 300 block of Pike Street is a clearly posted "No
Trespassing alley."
As I was reading Miranda to the other suspect, I was aware that Suspect/
CANTY, KYLE LYDELL - DOB 07/20/1985 approached the area and began yelling
to our suspect. I do not believe that CANTY knew him, but I do not know for
sure. I have never arrested CANTY, but I was aware that there was a hazard
report for him because I had seen the hazard report for him dated
11/29/2016 in roll call. I was also familiar with CANTY because I had
observed him when he was taken into custody by SWAT a few months prior.

For: 5327    Printed On: Jan-17-2017 (Tue.)    Page 1 of 3



**SEATTLE POLICE DEPARTMENT**

**NARRATIVE TEXT HARDCOPY**

GO# 2016-458826 ARREST - FELONY BY FOLLOW-UP UNIT    1312-0 ASSLT-AGG-POLICE-BODYFORCE

From the Hazard report, I knew CANTY was paranoid, fixated with police and had made several previous threats.

CANTY seemed to be agitated and aggressive by our very presence, and I could hear him yelling at the officers that were assisting in securing the area. I believe those officers were Officer Kennedy 7725 and Officer Hudson 7759. Although I do not recall what has said it was clear to me that Officer Kennedy 7725 and Officer Hudson 7759 were calmly and professionally keeping CANTY from interfering and entering the alley. CANTY was yelling profanity and acting hostile. It appeared to me that CANTY was attempting to enter the alley and intentionally causing a disturbance or fight to impede our investigation. I was in the alley still looking for heroin on the ground, and I told Officer Kennedy 7725 and Officer Hudson 7759 to keep CANTY out of the alley, and I advised CANTY to back up because it was a no trespassing alley.

As I came out of the alley, I saw CANTY push Officer MEYERS - 5452 in the chest area with his hands. I then saw CANTY take a few rapid steps back as if he was about to run. I immediately went to Officer MEYERS to check that he was ok and confirm that CANTY had just pushed him. MEYERS stated he did, and we approached CANTY together. CANTY was backing up as if he was going to run.

CANTY was exhibiting extreme, unfounded paranoia. By my estimation, CANTY had been yelling obscenities at Officer Kennedy 7725 and Officer Hudson 7759 for at least five minutes while I was engaged with the unrelated arrest. CANTY was agitated and aggressive and was not responding to their repeated attempts to de-escalate his aggression and explain that he should not obstruct the investigation.

Once CANTY assaulted Officer MEYERS and began to step back in preparation to run I did not believe de-escalation was feasible. Ofc. MEYERS and I approached together. CANTY then attacked me in such a fast and ferocious manner that I struggle to describe it. CANTY immediately punched me in the left temple area of my head with a very solid right hook. Unfortunately, it connected perfectly, and I saw a sudden flash of light in my vision. I was disoriented. I felt CANTY grab the left side of my load bearing vest and pull me forward. CANTY was so strong that I fell forward on my left side with CANTY and Ofc. MEYERS. My left arm and left elbow hit the sidewalk. CANTY was still pulling my vest, and he managed to pull it so hard that it separated at the seam on the left shoulder. I was frightened because I keep a knife tucked inside my vest at this location and CANTY's hand was only about an inch away. CANTY ripped off my radio microphone and was trying to hit me with it. I was worried that I might get strangled by the cord. CANTY was actively thrashing around, but I was able to pin CANTY'S right arm to the sidewalk with my hands. CANTY was spitting at the other officers and me. Once he was completely pinned CANTY stopped thrashing.

At this point I remember Ofc. MEYERS telling me that his ankle was broken and he could not move. With the assistance of other officers, CANTY was

16-1-06917-3 SEA                                                    Canty_K 0338



**SEATTLE POLICE DEPARTMENT**
**NARRATIVE TEXT HARDCOPY**

GO# 2016-458826 ARREST - FELONY BY                    1312-0 ASSLT-AGG-POLICE-BODYFORCE
FOLLOW-UP UNIT

rolled onto his stomach and handcuffed. I heard other officers immediately
call for fire and a supervisor. I was very dazed and worried about Ofc.
MEYERS ankle. Initially, I thought I was going to be fine and just needed a
few minutes to adjust but I was wrong. I did not see any injuries to CANTY.
CANTY was arrested for two counts of assault. Fire evaluated me at the west
precinct. I had pain in my left elbow, pain on the right side of my head,
and vision out of my left eye was different. Later that night I developed a
severe headache and noticed that I had several new floaters in my left eye.
I also experienced flashes of light and a shadow in the periphery of my
vision. I went to the Harborview emergency room.

ADDITIONAL INFORMATION:
Because of CANTY'S assault on me, I have missed over two weeks of work. I
have been diagnosed with post concussive syndrome and have had numerous
headaches. I have also been diagnosed with posterior vitreous detachment
(PVD) in my left eye. Because of the PVD, I suffer permanent loss of vision
quality in my left eye and an increased risk of retinal detachment.


                                    Author:GORDILLO, CANEK
                               Related date:Dec-22-2016  (Thu.) 1626



                    *** END OF HARDCOPY ***

16-1-06917-3 SEA                                              Canty_K 0339

EXhibit  30

Dr. Zollman consultation

Out of the country june 28- july 13

vitreous detachment - could be caused trauma to head
can be caused by punch to head or pile on by other officers
can be there previously?
gel in eye shadow - floaters are very common - especially as we get older


can lead to retinal detachment here
No retinal detachment

he is experiencing floaters

vitreous detachment - typically happens older but can happen younger with trauma

no real damage to eye - chance in future small - and now minimal risk - this not necessarily
damage

Exhibit 31

## SEATTLE POLICE DEPARTMENT

GO# 2016-458826
OPEN

### GENERAL OFFENSE HARDCOPY
#### KC PROSECUTOR RELEASE COPY
#### (1312-0 ASSLT-AGG-POLICE-BODYFORCE)

Follow Up Report #   11

## Related Text Page(s)

| | |
|---|---|
| **Narrative Text #** | 1 |
| **Document** | STATEMENT |
| **Author** | 6918 - SCHENCK, SCOTT I |
| **Subject** | OFFICER STATEMENT |
| **Related Date/Time** | DEC-23-2016  (FRI.) 1315 |

On 12-22-16 I was working as a Patrol Sergeant at the West Precinct as
2-Mary. Around 1640 hours I responded to the sally port of the West
Precinct where Officer Virgillio (7575) was with a prisoner who was
claiming he had injuries from an officer involved in a use of force. I
brought a camera to take photographs of S/Canty's injuries. S/Canty was in
the back of Officer Virgillio's patrol car and SFD medics were examining
him. The medics told me that they could not find evidence of the eye injury
Canty was claiming but did not discount his claim. I asked them to call for
AMR to transport Canty to the hospital for further evaluation. After that I
identified myself to Canty and told him I was there to take photographs of
his injuries. He asked if I would listen to him and I said I would. He said
he had just beat an assault charge on cops and that "we don't need this
right now." He told me he didn't have a problem with the police but he got
punched three times for doing nothing. I listened to Canty for several
minutes but told him I needed to get some photographs of him so I could
document his injuries. I took several photographs of Canty's left eye area
but did not see anything that appeared to be an injury. Once Canty was
loaded onto the stretcher I noted his right hand had scratches on the
knuckles. I took photographs of this also. I submitted the photographs to
DEMS under UOF-2016-458826. This ended my involvement in this incident.

16-1-06917-3 SEA

Canty_K  0238

Exhibit 32

1

# PROFESSOR GREGORY G. GILBERTSON

### 4722 Snow Grass Place NE, Olympia, WA 98516-6258
### (360) 237-4247 / Email: gilbertson_investigations@reagan.com

## Expert Witness – International Police Trainer - Private Investigator

A dynamic college professor, expert witness, private investigator, international police trainer, and former SWAT team officer. A U.S. Department of Justice and U.S. Department of Defense subject matter expert in policing. The only American college professor to serve in Iraq and Afghanistan war zones. A proven record of designing and implementing police training programs in developing nations and emerging democracies. A criminal justice practitioner with 25 years of "boots on the ground" experience as a college professor, expert witness, international police trainer, guardian ad litem, and senior tactical police officer.

## Expert Analysis & Reports

Professor Gilbertson provides expert witness analysis and case reports in the following areas:

| | | |
|---|---|---|
| • False Arrest | • SWAT | • Police Practices |
| • Self-Defense | • Excessive Force | • Police Misconduct |
| • Police Brutality | • Criminal Defense | • Wrongful Termination |

*"We used Greg for a criminal trial in which self-defense was the primary issue. During this process, Greg was accessible, prompt, thorough and able to explain the necessary components of "use of force" in a manner the jury could understand. Greg's testimony was an integral factor in the jury arriving at not guilty verdict." Michael Blanchard, Attorney, New London, CT*

## Career Highlights

- **Expert Witness** in Police Misconduct, False Arrest & Excessive Force / Police Brutality with Experts.com, ALMExperts.com, & Washington Defender Association
- **International Police Trainer,** Mentor/NATO Liaison – Afghan National Police Academy
- **International Police Trainer,** Baghdad Police College & Basrah Training College
- **Criminal Justice Professor (tenured),** Centralia College, Centralia, WA (18 years)
- **Distinguished Faculty Award Recipient,** Brandman University, 2013, Lacey, WA (6 years)
- **Senior Lecturer,** Criminal Justice, Saint Martin's University, Lacey, WA (11 years)
- **7 Commendations for Meritorious Service,** Atlanta & LaGrange Police Department(s), GA
- **Czech Republic Military Police Medal,** Basrah Training College, Basrah, Iraq
- **Atlanta Police Academy Graduate,** 93% Academic Average
- **Distinguished Military Graduate,** U.S. Army Officer Candidate School, Fort Benning, GA

## Professional Experience

**Professor & Director,** Criminal Justice Program, Centralia College, Centralia, WA          9/99–present

- Designed, developed, and managed the instruction of two associate degree programs in

an Officer and Emergency Personnel, Jeff Adachi, J.D., attorney for the Defendant.

35. Maricopa County, AZ vs. Thandika Singleton, Case No. CR2010-007912-004, Kenneth Countryman, J.D., attorney for the Plaintiff.

36. Gerry Pickens vs. City of Orting, WA and William Drake, Police Chief, et. al., No. 3:15-cv-05529-RBL, Beverly Grant, J.D., attorney for the Plaintiff. *(Deposition)*

37. Dorothy Gaylor and Blayne Cannon, individually as successors in interest of Aeric Graye Cannon, deceased, Plaintiffs vs. Deputy Trevor D. Morin, Deputy Rob W. Stewart, and Deputy Sean C. Denham, Riverside County Sheriff's Department, File Number L151500089, Wrongful Death, Intentional Infliction of Emotional Distress, Negligence, Daniel R. Shapiro, J.D., attorney for the Plaintiffs

38. Andrew Harris Roufa v. King County Department of Adult and Juvenile Detention, et al, Incident Number 12-672, Ms. Leah Altaras, J.D., attorney for the Plaintiff.

39. Wylaiphan Kampradith vs. King County Sheriff's Office, et al, Complaint for Damages, Susan Machler, J.D., attorney for the Plaintiff.

40. Boyd v. City of Tulsa, et al, (CJ-2016-1510), Spencer Bryan, J.D., attorney for the Plaintiff.

41. The Estate of Michael Borquin, by and through Judy Burch, vs. Pierce County, a municipal corporation, Deputy Chad Helligso in his official capacity as a Pierce County Sheriff's Deputy and in his individual capacity, Defendants, United States District Court, Western District of Washington, at Tacoma, No. 3:16-cv-05141-BHS, Jesse Froehling, J.D., attorney for the Plaintiff.

42. The Superior Court of Washington for King County, The State of Washington, Plaintiff, v. Marek J. Michalski, Defendant, Assault in the Second Degree, RCW 9A.36.021(1)(c), No. 16-1-02745-4 SEA, Micol Sirkin, J.D., attorney for the Defendant.

43. The Estate of Marlon Horton vs. City of Chicago et al, 13 CV 6865, Jeffrey Granich, attorney for the Plaintiff.

44. Guy Robert Soderlind Jr. vs. Ursula J. Haigh and Terence Haigh, Christine Barton, Cynthia Hart, the City of Burien, Washington and King County Sheriff's Deputy's Jon Holland, Erin Garza, and John Mansanarez, No. 2:15-cv-01655-RSL, Mark Olson, attorney for the Plaintiff.

45. Robert J. Frantom vs. State of Washington, Washington State Patrol, Kitsap County, and Kitsap County Sheriff's Office, et al, No. 15-2-13409-0, Thomas Olmstead, J.D., attorney for the Plaintiff.

criminal justice and a certificate program in crime scene investigations. Authored and developed 20 individual criminal justice and crime scene investigations courses.

**Adjunct Professor,** Criminal Justice, Brandman University, Lacey, WA              8/10–12/16
- Instructed a wide variety of criminal justice courses to Bachelor's degree seeking students at Brandman University, a division of the Chapman University System (CA).

**International Police Trainer,** Kabul, Afghanistan (MPRI / Engility)              11/08–12/09
- Senior Mentor and NATO Liaison to commanding general of Afghan National Police Academy. Advised commander on all aspects of academy operations. Directly responsible for 50 million dollars in academy renovations. Collaborated with NATO and the Ministry of Interior in developing policy and doctrine manual for Afghan National Police.

**Expert Witness & Private Investigator,** Gilbertson Investigations, Olympia, WA  8/02–present
- Responsible for all operational aspects of private investigations agency specializing in expert witness incidents involving police excessive force, false arrest, and self-defense casework.

**Senior Lecturer,** Criminal Justice, Saint Martin's University, Lacey, WA              5/97–11/08
- Served as senior instructor in the criminal justice department of private, faith-based university to students at Joint Base Lewis-McChord extension campuses for 11 years.

**International Police Trainer,** Baghdad & Basra, Iraq (MPRI / Engility)              5/05–06/06
- Supervised instruction of 500 Iraqi police cadets as Deputy Director of United Kingdom's Basrah Training College. Supervised police trainers from the United Kingdom, United States, and Denmark. Designed and developed curriculum for the Baghdad Police College.

**Security Officer,** Kent & White River School District(s), Kent & Buckley, WA              8/96–08/99
- Developed and managed a school district security program. Investigated criminal acts committed on district property. Investigated student complaints against faculty and staff.

**Guardian ad Litem,** Pierce County Superior Court, Tacoma, WA              9/97–9/99
- Conducted wide ranging investigations into allegations of misconduct and child abuse made during dissolution and child custody proceedings for the Pierce County Superior Court.

**SWAT Officer,** Superior Court Investigator, Senior Patrolman, LaGrange P.D. GA    2/91–4/96
- Completed 3000 hours of SWAT tactical police training and operational experience. Served as Superior Court Investigator, Stakeout Squad Detective, and Senior Police Patrolman.

**Police Officer,** Atlanta Police Department, Atlanta, GA              8/88–02/91
- Primary law enforcement focus on public housing, street-level crime, narcotics enforcement, and domestic violence intervention with major metropolitan law enforcement agency.

## University Degrees
- **Master's degree, Justice Administration,** Columbus State University, Columbus, GA
- **Bachelor's degree, History**, University of Washington, Seattle, WA

## Law Enforcement Training

- SWAT Certification
- US Army SWAT School
- SWAT Submachine Gun

- Police Tactical Rifle
- Police Tactical Shotgun
- VIP Executive Protection

- Criminal Procedures
- Interviews & Interrogations
- Mediation & Dispute Resolution

## Expert Analysis Provided to Television, Radio, Internet News, and Newspapers

I have been quoted, interviewed, or appeared as an expert witness in police practices or criminal investigations for the following television, radio, and internet or news articles:

1. "Law and Order: You the Jury". Appeared in television program as an expert witness for attorney Casey Garrett, Houston, TX, June 2016.

2. Alternet.org: "What's the Best Way to Weed Out Potential Killer Cops?" by David Krajicek, May 15, 2016

3. USA TODAY – Wisconsin: "The unraveling of a murder case." By John Ferak, October 15, 2015

4. "Celebrity Court" Radio Interview with host/attorney Elizabeth Kelly regarding NYPD false arrest of tennis star James Blake, September 15, 2015

5. Alternet.org: "Cop 'Roid Rage: Are Steroids Behind the Worst Police Abuses?" by David Krajicek, August 19, 2015

6. Newsmax TV: "The Hard Line with Ed Berliner". Professor Gregory Gilbertson discusses Louisiana theatre shooting with former New York City police commissioner Bernard Kerik, July 26, 2015

7. The Olympian: "Olympia police shooting sparks another push for citizen review." June 17, 2015

8. Newsmax TV: The Hard Line with John Cardillo. "Professor Gregory G. Gilbertson discuss Texas police pulling gun on unarmed teens." June 9, 2015

9. Alternet.org: "If You Run You're Done: Why Cops Go Berserk When People Run from Them" by David Krajicek, May 21, 2015

10. Newsmax TV: "The Hard Line with Ed Berliner". See Professor Gregory Gilbertson's interview regarding police brutality and excessive force. April 22, 2015

11. USA TODAY – Wisconsin: "Flaws surface in Beck Murder Investigation" By John

ORIGINAL

Exhibit 33

COPY TO COURT OF APPEALS ___MAY 3 0 2017___

# THE SUPERIOR COURT OF THE STATE OF WASHINGTON FOR KING COUNTY

FILED
KING COUNTY WASHINGTON
MAY 26 2017
SUPERIOR COURT CLERK

| STATE OF WASHINGTON<br>Plaintiff | No. 16-1-06917-3 SEA |
|---|---|
| VS.<br><br>KYLE LYDELL CANTY<br>Defendant. | APPEAL NOTICE PURSUANT TO RULE 3.1 CrR (E) |

Comes Now the defendant Kyle Lydell Canty, In Propria Persona and of SUI Juris on the 22nd day of the month of May year 2017, hereby puts this Court on official notice of Appeal Pursuant to RULE 3.1 CrR (E) MR. Canty is Challenging the Superior Courts of King County and Attorney Sandro Parrotta WSBA# 27948

P 1 of 6

# Facts

1. MR Canty has been in custody illegally awaiting trial Since December 22, 2016

2. Sandro Parrotta is a private attorney Paid by King County Department of Public Defense by Way of Contract

3. Sandro Parrotta Was assigned to MR. Canty in the month of December 2016 in Clear violation of RPC Rule 1.7 Conflict of interest: Current Clients Section (a) 2, and RPC Rule 1.3 Dilligence

4. Sandro Parrotta Was assigned to MR. Canty after he learned that MR. Canty on Record Said that he Wanted to represent himself in Court, Sandro Parrotta Was

P 2 of 6

Previously sent to represent MR Canty on a different Cause number three months Prior, for a short period.

5. Sandro Parrotta was sent by King County to set MR. Canty up because MR. Canty filed Civil action (lawsuit) against King County.

6. Sandro Parrotta made up lies about MR. Canty after MR. Canty realized by reading signed documents, that Sandro Parrotta set MR. Canty up multiple times.

7. Sandro Parrotta sealed Court documents with out notifying MR. Canty ahead of time, Came to court and lied on the record, MR. Canty didn't get a Chance to read the documents until the day of Court.

P 3 of 6

8. Sandro Parrotta lied in the documents and said that MR. Canty threatend to hit him, was making other threats towards him, and basically he was so afraid of MR. Canty that he is now withdrawing from the case.

9. Sandro Parrotta made these false and unfounded statements against MR. Canty because he is protecting the Seattle Police department and their officers, Sandro Parrotta is protecting King County, and all of the discovery that him and MR. Canty have looked at clearly says that the Seattle Police department is guilty of official police misconduct.

10. Sandro Parrotta withdraws himself from MR. Canty's case 2 weeks before MR. Canty's trial is suppose

P 4 of 6

to begin, Sandro Parrotta's motion to Withdraw as Counsel was granted and Sealed on the 19th day of May 2017, MR. Canty objected multiple times on the record, however assistant Chief Judge Dean S. Lum granted Sandro Parrotta's illegal motion.

## Law and arguement

1. PURSuant to Rule 3.1(E)CrR Withdrawal of Lawyer- Whenever a Criminal Cause has been Set for trial, no lawyer Shall be allowed to Withdraw. (Law)

2. MR. Canty's argument is all things mentioned in this legally binding document, also Sandro Parrotta's lies doesn't amount to good and sufficient reasons to Withdraw from the Case Unless

P 5 of 6

he can prove beyond a re-
asonable doubt that MR.
Canty really said the things
that Sandro Parotta claims
in his sworn affidavit.
See Exhibit (A) Sandro Parotta's
Sworn Affidavit

Prepared by:

2  05/22/2017

Kyle Lydell Canty
BA# 216035994
500 Fifth Ave
Seattle WA 98104

P 6 of 6

Exhibit 34



# WSBA

## OFFICE OF DISCIPLINARY COUNSEL

**Felice P. Congalton**
Associate Director

June 15, 2017

Kyle Canty
BKG #216035994
King County Correctional Facility
500 5th Ave
Seattle, WA 98104-2332

      Re:    ODC File: 17-00970
             Your grievance against lawyer Sandro Parrotta

Dear Mr. Canty:

We received your grievance against a lawyer and assigned the file number indicated above. The Office of Disciplinary Counsel must review and may investigate a grievance against a lawyer to determine if the lawyer's conduct should affect his or her license to practice law. We are not a substitute for protecting your legal rights. We cannot offer you legal advice or represent you in legal proceedings.

We reviewed your grievance and it appears you are concerned with the manner in which your lawyer represented you in a criminal case. Ineffective assistance of counsel issues are best raised in court proceedings. Therefore, the general policy of this office is not to investigate claims of ineffective assistance of counsel unless there is a judicial finding of impropriety. It does not appear that the court found any impropriety.

Based on the information we reviewed, we are dismissing your grievance under Rule 5.7(a) of the Supreme Court's Rules for Enforcement of Lawyer Conduct. We will take no further action. If you do not mail or deliver to us a written request for review of this dismissal within **forty-five (45) days** of the date of this letter, the decision to dismiss your grievance will be final. Should there be a judicial finding of impropriety, you may request that we reopen this matter.

Sincerely,

*Felice P. Congalton*

Felice P. Congalton
Associate Director

Enclosure: copy of grievance
cc: Sandro Parrotta (with enclosure)

DO NOT SEND US ORIGINALS. We will scan and then destroy the documents you submit.

Name Kyle Lydell Canty
Bkg.# 2160235044
King County Correctional Facility
500 5th Ave
Seattle, WA 98104

FOR LEGAL MAIL ONLY

Clerk, of Judge
Hon. James P. Donohue
U.S. District Court
U.S. District Courthouse
700 Stewart Street
Seattle WA 98101



US POSTA
$03.9
First-Cl
Mailed From 98104
08/08/2017
0324 0061807160

Legal Ma