The Honorable Richard A. Jones
The Honorable James P. Donohue

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KYLE LYDELL CANTY,<br><br>                 Plaintiff,<br><br>vs.<br><br>CITY OF SEATTLE, et al.,<br><br>                 Defendants. | No. 2:16-cv01655-RAJ-JPD<br><br>KING COUNTY DEFENDANTS' MOTION FOR DISMISSAL UNDER FRCP 37(d) AND LCR 41(b) AND MOTION FOR SUMMARY JUDGMENT<br><br>NOTE ON MOTION CALENDAR<br>October 27, 2017 |

## I.    INTRODUCTION

After exhibiting erratic and dangerous behavior suggestive of a mental disorder, Plaintiff Kyle Canty was detained for an emergent 72-hour commitment under Washington's Involuntary Treatment Act ("ITA"), RCW Ch. 71.05.  Four levels of professionals were concerned enough about Mr. Canty's mental condition to support his detention for evaluation and treatment, including Seattle Police Officers, Designated Mental Health Professional (DMHP) Melinda Hasegawa, and a psychiatric doctor and emergency room social worker at Harborview Medical Center.  Mr. Canty filed suit against several City of Seattle Defendants as well as King County,

KING COUNTY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 1

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1  DMHP Melinda Hasegawa, and DMHP Gail Bonicalzi (King County Defendants).

2      Plaintiff has refused to appear for a properly noted deposition or engage in a discovery
3  conference.  Plaintiff has likewise refused to accept mail from all defendants and has failed to
4  comply with the Court's mandatory efiling since his incarceration at the Washington
5  Correctional Center.  The Court should dismiss Plaintiff's suit as a sanction for failing to appear
6  for his deposition, failure to accept mail from defendants and failure to comply with the Court's
7  mandatory efiling under Fed. R. Civ. P 37(d) and LCR 41(b).  Alternatively, the Court should
8  grant summary judgment for DMHP Gail Bonicalzi because Plaintiff cannot point to any
9  individual actions she took in this matter, for both DMHP Bonicalzi and DHMP Melinda
10 Hasegawa because their actions are immune from suit under federal and state law, and for King
11 County as Plaintiff has failed to state a claim under *Monell*. [1]

12     **II.    STATEMENT OF CASE AND EVIDENCE RELIED UPON**

13     The factual recitation regarding the involuntary commitment of Plaintiff Canty is
14 intentionally omitted from this motion to allow for the motion to be filed without being sealed.
15 King County Defendants rely on the *Declaration of Gail Bonicalzi* (Dkt. 91) and the sealed
16 *Declaration of Melinda Hasegawa* (Dkt. 94) and sealed Exhibit 1 (DMHP file).  King County
17 Defendants also rely upon the *Declaration of Gregory Jackson* (Dkt. 122), the *Fourth*
18 *Declaration of Samantha Kanner*, and the records and pleadings filed in this case.

19     **III.    FRCP 37(d)(2) CERTIFICATION**

20     King County Defendants hereby certify, pursuant to Fed. R. Civ. P 37(d)(2), that they
21 have in good faith attempted to confer with Mr. Canty regarding discovery that is the subject of
22 this motion. However, given Mr. Canty's refusal to accept mail from defendants and refusal to
23

---

[1] *Monell v. New York Department of Social Servs.,* 436 U.S. 658 (1978).

KING COUNTY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 2

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

participate in his deposition, defendants have been unable to confer with him. *Jackson Decl.,* ¶¶3-6 (Dkt. 122); *Third Declaration of Kanner,* ¶¶4-5 (Dkt 107); *Fourth Kanner Decl.,* ¶¶3-5.

### IV. ISSUES

A. Should this Court dismiss this suit as a sanction for Canty's failure to appear at his deposition, refusing to accept mail from defendants and failure to comply with mandatory e-filing?  Yes.

B. Should the court dismiss Canty's claims against DMHP Bonicalzi because she took no individual action in this matter?  Yes.

C. Is a DMHP's decision on emergent detention subject to absolute immunity?  Yes.

D. Is the decision of DMHP Hasegawa to detain Canty for civil commitment protected by qualified immunity?  Yes.

E. Are defendants entitled to summary judgment where Plaintiff fails to adequately plead First, Fifth and Eighth Amendment Violations? Yes.

F. Is King County entitled to summary judgment when there is no evidence of *Monell* liability?  Yes.

### V. FRCP 37(d) AND LCR 41(b) SANCTION

Fed. R. Civ. P. 37(d)(1)(A)(i) gives the Court the power to sanction a party for failing to appear for a properly noted deposition. Fed. R. Civ. P. 37(b)(2)(A)(v) provides that the Court may dismiss the action in whole or in part as a sanction for this type of discovery violation. On September 6, 2017, pursuant to LCR 30(a)(2) and Fed. R. Civ. P. 30(b), and after obtaining agreement by Washington State Corrections Center officials, City of Seattle defendants properly noted Plaintiff's deposition for 1PM on September 14, 2017 to occur in a conference room at the Washington State Correctional Facility in Shelton, Washington. *Jackson Decl., ¶*4, Ex. 2 (Dkt

KING COUNTY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 3

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

122).  Plaintiff was served with both the notice of the deposition as well as a subpoena for the deposition that day.  *Id.*  Undersigned counsel for King County Defendants made arrangements to attend and depose Plaintiff at that time.  *Fourth Kanner Decl., ¶4-5*.  Undersigned counsel spent approximately two hours driving to the prison facility in Shelton from her office in Seattle.  *Id.*  When undersigned counsel arrived at the prison facility for the deposition, she was informed that Plaintiff Canty had refused to leave his cell to attend the deposition and discovery conference.  *Id.*  Undersigned counsel reviewed video footage of Plaintiff Canty sitting in his prison cell under a white bed sheet refusing to come out.  *Id.*  In an attempt to document Plaintiff Canty's refusal, undersigned counsel and codefendants' counsel went on the record.  *Id.*  Due to Plaintiff Canty's incarcerated status and his refusal to respond to letters or to accept mail from defendants, defendants have been unable to effectively engage Mr. Canty in any substantive discovery discussion.

Rule 37 sanctions are intended to "punish[ ] evasion of pretrial discovery." Rosenberg, *Sanctions to Effectuate Pretrial Discovery*, 58 Colum.L.Rev. 480, 482 (1958); see 8 C. *Wright & A. Miller, Federal Practice and Procedure* § 2281 at 753 (1970) ("Without adequate sanctions, the procedures for discovery would be ineffectual."). *Wanderer v. Johnston*, 910 F.2d 652, 655 (9th Cir. 1990).  The Supreme Court has granted district courts considerable discretion to impose the extreme sanction of dismissal or default where there has been flagrant, bad faith disregard of discovery duties. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976).

The Ninth Circuit has fashioned a set of factors for this Court to apply in considering whether a dismissal of default is appropriate as a Rule 37 sanction. The Court is to consider:

(1) the public's interest in expeditions resolution of litigation;

KING COUNTY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 4

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

(2) the court's need to manage its docket;

(3) the risk of prejudice to the party seeking sanctions;

(4) the public policy favoring disposition of cases on their merits; and

(5) the availability of less drastic sanctions.

*Conn. Gen. Life. Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007)(citations omitted).

The first two of these factors clearly favor the imposition of dismissal as a sanction in this case as dismissal would expeditiously resolve this matter and would assist the Court in managing its dockets. Likewise, the prejudice to all defendants is obvious in this matter, if Plaintiff is permitted to refuse to be deposed without consequence or allow defendants to examine his full mental health records[2], then defendants are subject to trial by ambush (or summary judgment by ambush). Further, Plaintiff has already demonstrated his intent to hide relevant facts from defendants[3] and to disobey court orders. [4] Further, there is a limited availability of lesser sanctions in this matter as Plaintiff is indigent and therefore unlikely to be deterred by a monetary sanction. Thus dismissal is the appropriate sanction in this matter.[5]

## VI. SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Ninth Circuit precedent, "[q]ualified immunity is particularly amenable

---

[2] King County Defendants requested Plaintiff sign releases for records from Harborview Medical Center and Western State Hospital but Plaintiff has never responded to this request. *Fourth Kanner Decl.*, ¶3.
[3] *See* Dkt 120, p. 4 stating "**I clearly have a spare set of original untampered medical files from Harborview Medical Center that the defendants will never find**" and Dkt. 119, p. 7 stating "**also the Plaintiff has the real copy of the medical records in question in a secret undisclosed location and will not be using anything that the defendants claim is a true copy…**" (emphasis added).
[4] For example, Plaintiff's failure to comply with the court's efiling requirement and refusal to accept mail.
[5] Rather than repeating the arguments under LCR 41 (b)(2), King County Defendant's join in the City of Seattle Defendant's arguments on these grounds.

KING COUNTY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 5

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

to summary judgment adjudication because 'the entitlement is an *immunity from suit* rather than a mere defense to liability.'" *Martin v. City of Oceanside*, 360 F.3d 1078, 1081 (9th Cir. 2004)(*quoting Hunter v. Bryant,* 502 U.S. 224, 227 (1991)).  To avoid summary judgment, the nonmoving party must present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

**A.   CLAIMS AGAINST DMHP BONICALZI SHOULD BE DISMISSED BECAUSE SHE TOOK NO INDIVIDUAL ACTION.**

To make out a prima facie case under Section 1983 against an individual state official, a plaintiff must show that:

1) The official acted under color of law;

2) In so acting, the official deprived the plaintiff of specific rights secured by the Constitution; and

3) The official's acts were a proximate cause of the injury stated.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams*, 106 S.Ct. 622 (1986)); <u>Borunda v. Richmond</u>, 885 F.2d 1384, 1391 (9th Cir. 1988).  With regard to individually named individuals, the Complaint must connect each individual defendant's conduct to the alleged violation of the constitution or a federal statute and connect the violation to the named defendants. *Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3rd Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989).  When there are allegations against multiple defendants the complaint must plead the personal involvement of each defendant with specificity and with facts sufficient to overcome an immunity defense. *Biase v. Kaplan*, 852 F.Supp. 268, 287 (D. N.J. 1994).  While DMHP Bonicalzi did the initial intake regarding the potential civil commitment of Plaintiff Canty, the decision regarding his

KING COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 6

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

emergent detention was solely made by DMHP Hasegawa. *Hasegawa Decl.,* ¶9 (Dkt. 94). As DMHP Bonicalzi did not make the decision to detain Plaintiff Canty, there is no individual action that could raise a cause of action in this matter.

## B.  ABSOLUTE IMMUNITY PROTECTS A DMHP'S ACTIONS REGARDING EMERGENCY DETENTION.

Absolute immunity is extended to "qualifying state officials sued under 42 U.S.C. §1983," in order to ensure "the independent functioning of executive officials acting in a quasi-judicial capacity" so that "they can exercise their adjudicative discretion without fear of intimidation or harassment." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 923 (9th Cir. 2004). In determining application of absolute immunity, federal courts apply a "functional approach" to determine "whether the actions taken by the official are 'functionally comparable' to that of a judge or a prosecutor. *Id.* at 923. Several "nonexclusive factors" from *Butz v. Economou*, 438 U.S. 478 (1978) govern application of absolute immunity: "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) the [agency's] insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." *Olsen,* 363 F.3d at 923. Because a DMHP charged with an emergent 72 hour commitment decision under RCW 71.05.153 undertakes both quasi-prosecutorial and quasi-judicial functions, the *Butz* factors heavily favor a grant of absolute immunity for both DMHP Hasegawa and Bonicalzi[6] in this case.

**Ensuring Performance of Functions Without Harassment.** As pointed out by DMHP Hasegawa, the "primary role of a DMHP is to undertake a neutral investigation of persons

---

[6] Assuming, *arguendo*, that doing the intake would qualify as an individual action for purposes of maintaining an action under §1983.

KING COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

referred for possible civil commitment under the ITA and make an unbiased determination of whether the person meets statutory and constitutional requirements for civil commitment." *Hasegawa Decl.,* ¶5 (Dkt. 94).  When undertaking an emergent detention decision under RCW 71.05.153, a DMHP is performing both quasi-prosecutorial and quasi-judicial functions.

Similar to a public prosecutor, the emergent detention statute grants a DMHP discretion on whether to initiate a civil commitment case.  Under *Imbler v. Pachtman*, 424 U.S. 409 (1976), prosecutors are immune for initiating and presenting the state's case because they often must make decisions that could engender colorable claims of constitutional deprivation "upon short notice and with poor information." *Miller v. Gammie*, 335 F.3d 889, 896 (9th Cir. 2003).  Immunity is important because a prosecutor's role is "likely to provoke 'with some frequency' retaliatory suits by angry defendants." *Butz v. Economou*, 438 U.S. 478 at 510 (*quoting Imbler*, 424 U.S. 409, 425 (1976)).  In their emergent detention functions, immunity is appropriate because a DMHP is required to labor under similar conditions with similar responsibilities.  *See Butz,* 438 U.S. at 515 (noting that the decision to initiate an action "might be distorted if their immunity from damages arising from that decision was less than complete.").

A DMHP's role in emergent detentions under RCW 71.05.153 is also quasi-judicial.  A DMHP determines the facts, weighs the facts, and applies those facts to legal criteria. When the DMHP determines that commitment is appropriate and that there are sufficient grounds for commitment, the DMHP orders the patient held for up to a 72 hour period – similar to a judge's role in a non-emergent 72 hour commitment.  *Compare* RCW 71.05.150 *with* RCW 71.05.153. The commitment order is then issued under the DMHP's sole signature and authority using a Washington State Superior Court cause number and a "Custody Authorization" order form.  The DMHP's order authorizes the hospital and law enforcement to take the patient into custody and

KING COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

hold the patient for up to 72 hours for evaluation and treatment.[7]  Like other orders of a judicial or quasi-judicial nature, it is served on the patient.

The need for DMHPs to make civil commitment decisions unbiased by concerns of personal liability and consistent with due process overwhelmingly weighs in favor of absolute immunity.  The same rationale that supports absolute immunity for judges also requires absolute immunity for DMHPs in the emergent detention setting:

> Judges enjoy absolute immunity from civil rights suits in order to keep the judicial decision-making process pristine. As noted earlier, we expect and require the judge to be an impartial fact finder. When he or she weighs the merits of a case, we do not want the scales to be tipped by fear of litigation. The adjudicatory process simply could not work if the adjudicator had to anticipate a possible lawsuit from every dissatisfied litigant.

*Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981).   Absent the protection of absolute immunity, "there is the same danger that the decision-maker might not impartially adjudicate the often difficult cases that come before them." *Id.* at 1303.

The need for impartial decision-making is particularly important in civil commitments.  It is well-established that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). A commitment determination "by an independent decision maker" materially reduces the risk of erroneous commitment." *Doe v. Gallinot*, 657 F.2d 1017, 1023 (9th Cir. 1981).  *See also In re Det. of R.R.*, 77 Wn. App. 795, 801, 895 P.2d 1 (1995) (Recognizing that "mental health commitment statutes and fundamental concepts of justice require that mental health commitment decisions be made in a neutral and impartial atmosphere.").  Because DMHPs serving emergent detention functions need to maintain independence and impartiality, the court should grant absolute immunity.  *See Mishler v. Clift,* 191 F.3d 998, 1009 (9th Cir.1999) (Absolute immunity

---

[7]  A violation of the Custody Authorization would constitute Escape in the Third Degree under RCW 9A.76.130.

KING COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 9

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

appropriate where medical board officials undertook both quasi-judicial and quasi-prosecutorial functions).

**Safeguards that reduce the need for private damages actions.** Although it is true that absolute immunity precludes a suit for private damages, any qualification of immunity "would disserve the broader public interest."[8] *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981). Full immunity is appropriate because other safeguards exist for persons facing a 72-hour emergency commitment. Within three hours of arriving at an emergency room, the hospital must perform an evaluation. RCW 71.05.153(4). In order to minimize further the risk of erroneous detentions, the treatment and evaluation center is required to revisit application of commitment criteria to the patient within 24 hours of admission. RCW 71.05.210. Patients are afforded immediate access to appointed counsel and informed of their rights. RCW 71.05.360, .217. A person detained for 72 hours can seek release through a petition for writ of habeas corpus. RCW Ch. 7.36. By statute, no person can be held beyond 72 hours unless the treatment and evaluation hospital petitions for a 14 day commitment and it is ordered by the court. RCW 71.05.153. These safeguards favor application of absolute immunity to the DMHP's emergent 72 hour commitment decision. *See Sellars,* 641 F.2d at 1304 ("safeguards, especially the right to habeas corpus relief, are sufficient to protect petitioner's constitutional rights"); *In re Det. of June Johnson*, 179 Wn. App. 579, 589, 322 P.3d 22, *review denied*, 181 Wn.2d 1005 (2014) (discussing substantial safeguards surrounding emergent detention process).

**The DMHPs insulation from political influence.** One factor that helps to insulate

---

[8] The fact that DMHPs are granted qualified immunity by state statute does not preclude absolute immunity for emergent detention decisions under §1983. First, absolute immunity under §1983 is determined by federal law. Second, under the Ninth Circuit's functional analysis, the same public official can have absolute immunity for some functions and only qualified immunity for other functions. *Engebretson v. Mahoney*, 724 F.3d 1034, 1038 n.2 (9th Cir. 2013). The quasi-judicial function of ordering emergent detention for 72 hours is the function at issue in this case.

KING COUNTY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 10

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

DMHPs from political influence is the requirement of professional mental health qualifications and licensure. RCW 71.05.020(11) (30). A person is *appointed* DMHP through a merit selection process. *Hasegawa Decl.,* ¶2. The risk of political influence is decreased because Washington's civil commitment process is generally confidential. DMHPs administer well-defined statutory criteria and are subject to ethical standards. *Hasegawa Decl.,* ¶¶4-9. The "totality of these procedural safeguards" ensures that DMHPs are sufficiently insulated from political pressures. *See Olsen,* 363 F.3d at 925 (addressing similar safeguards for medical board).

**Remaining *Butz* factors: Precedent, Adversariness and Correctibility.** The remaining *Butz* factors also support absolute immunity. A DMHP operates against the backdrop of statutory commitment criteria and procedures where the DMHP must apply judicial precedent interpreting RCW 71.05 and addressing constitutional limitations of the state's civil commitment authority. *Hasegawa Decl.,* ¶4. Although DMHPs do not preside over adversarial hearings, they are required to consider various sources when making commitment decisions. *Hasegawa Decl.,* ¶¶4-6. Defense attorneys are appointed upon initiation of commitment proceedings. RCW 71.05.360. The Washington Courts also have a tradition of waiving mootness concerns to further develop the case law surrounding 72 hour detention decisions. *See generally Johnson*, 179 Wn.App. 579 (addressing emergent detention). Overall, the remaining nonexclusive *Butz* factors support application of absolute immunity.

In the context of emergent detention under RCW 71.05.153, the functions of a DMHP are "sufficiently judicial and prosecutorial" to entitle them to absolute immunity. *Olsen,* 363 F.3d at 926. Based on absolute immunity, this Court should grant summary judgment dismissing Canty's claims against the DMHPs. *See Byrne v. Kysar*, 347 F.2d 734, 736 (7th Cir. 1965)

KING COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

KING COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

(Absolute immunity granted to court-appointed members of statutory medical commission who examined plaintiff and recommended civil commitment); *Boston v. Lafayette Cty., Miss.*, 744 F. Supp. 746, 751 (N.D. Miss. 1990), *aff'd* 933 F.2d 1003 (5th Cir. 1991) (Absolute immunity granted by special master appointed by court who ordered plaintiffs' temporary detention for psychiatric evaluation); *McArdle v. Tronetti*, 769 F. Supp. 188, 191 (W.D. Pa. 1991), *aff'd,* 961 F.2d 1083 (3d Cir. 1992) (Absolute immunity granted to osteopath who diagnosed inmates psychiatric condition and prison counselor who instituted civil commitment proceedings). DMHPs should not be subject to this type of action due to their quasi-judicial role in deciding emergency 72-hour commitments.

## C.   QUALIFIED IMMUNITY ALTERNATIVELY APPLIES TO THE DMHPS.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity is an "exacting standard [that] gives government officials breathing room to make reasonable but mistaken judgments," and "protect[s] all but the plainly incompetent or those who knowingly violate the law." *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015).  A two-part inquiry determines whether a government official is entitled to qualified immunity:  (1) Do the facts, when considered in a light most favorable to the plaintiff, show the violation of a constitutional right; and (2) If a constitutional violation is shown, was the violated constitutional right clearly established in law? *Jackson v. City of Bremerton,* 268 F.3d 646, 651 (9th Cir.2001) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If either question can be answered in the negative, then qualified immunity applies to shield the official from liability. *Pearson* 555 U.S. at 236.  A

KING COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 12

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1  court has wide discretion on which question to answer first. *Id.*

### 1. Neither DMHP Violated Any Constitutional Right

Under the first question, officers are entitled qualified immunity if their conduct did not violate the constitution. The facts alleged, taken in the light most favorable to the party asserting injury, must "show that the officer's conduct violated a constitutional right." *Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 1051-52 (9th Cir. 2014).

There was no violation of Plaintiff Canty's Fourth Amendment rights because reasonable cause supported his detention for evaluation under the ITA. Under RCW 71.05.153, police officers have the "authority to take a person to a hospital for mental evaluation upon 'reasonable cause to believe that such person is suffering from a mental disorder and presents an imminent likelihood of serious harm or is in imminent danger because of being gravely disabled.'" *Luchtel v. Hagemann*, 623 F.3d 975, 979 (9th Cir. 2010). When the requirements of the statute are satisfied officers are "entitled to subdue her, to arrest her, and to get her to a hospital for assessment." *Id.*

Even under a more demanding probable cause standard, there was sufficient cause to detain Canty for a mental health evaluation under RCW 71.05.153.[9] As the Sixth Circuit has indicated, "[a] showing of probable cause in the mental health seizure context requires only a 'probability or substantial chance' of dangerous behavior, not an actual showing of such behavior." *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997). "Just as actual innocence will not render an arrest invalid if it is based on then-existing probable cause that criminal activity is occurring, . . . a mental health seizure can rest upon probable cause even when the

---

[9] Other cases have recognized that a mental health seizure must be based on probable cause. *See Maag v. Wessler*, 960 F.2d 773, 775 (9th Cir. 1991). There is no clearly established law regarding the difference between the RCW 71.05.153 "reasonable cause" language and a probable cause standard.

KING COUNTY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 13

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

person seized does not actually suffer from a dangerous mental condition." *Id.*

Here, ample cause to detain plaintiff on May 7, 2013 under the provisions of RCW 71.05.153 is present in the record.  The DMHPs had been informed that Plaintiff threatened the corporate office of his employer, had been threatening and harassing police officers, and was suffering from a mental disorder. *Hasegawa Decl.,* ¶¶10-14, Ex. 1.  The symptoms of such mental disorder were not only observed by DMHP Hasegawa but also by a social worker and psychiatrist at Harborview Medical Center who both supported the emergent detention.  *Id.*

Because probable cause supported the determination of the DMHP, Canty's emergent 72 hour detention in accord with RCW 71.05.153 did not violate his constitutional rights. *See also Luchtel v. Hagemann*, 623 F.3d 975, 979 (9th Cir. 2010) ("The officers had reasonable cause under [RCW 71.05.153] on the basis of Luchtel's paranoid comments to the officers and the 911 reports that Luchtel had been hiding under a car with her son, screaming that someone was trying to kill her and that she would kill herself."); *Maag*, 960 F.2d at 776 ("Thus we find that the officers had probable cause to take Maag into protective custody, based on the Montana statute, the information from family members and friends, the officers' own observations, and Dr. Bell's recommendation that Maag be brought to the hospital."); *Gooden v. Howard Cty., Md.*, 954 F.2d 960, 966 (4th Cir. 1992) (Officer's decision to detain plaintiff under Maryland mental health statute was reasonable when based on multiple complaints, personal observations, and their own investigations.).

   **2.**      **Neither DMHP Violated Any "Clearly Established Right"**

Plaintiff Canty bears the "burden of demonstrating that the specific right allegedly violated [by the DMHP] was clearly established at the time of the incident." *Greene v. Camreta,* 588 F.3d 1011, 1031 (9th Cir.2009).  Here, a grant of qualified immunity is mandatory because

KING COUNTY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 14

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

the rights surrounding the decision of a DMHP to invoke involuntary commitment fall far below the "clearly established" standard. The DMHPs were not "clearly incompetent" in carrying out their duties under RCW 71.05.153.

The lack of a clearly established right is further supported by Washington case law affirming the emergent detention process against constitutional attack. In *Johnson*, 179 Wn.App. 579, the Washington Court of Appeals rejected a due process challenge to the RCW 71.05.153 emergent detention procedure. The Ninth Circuit's seeming endorsement of the RCW 71.05.153 "reasonable cause" standard in *Luchtel,* 623 F.3d 975 further clouds the legal standard applicable to emergent, 72 hour mental health commitments for evaluation and treatment. By acting within the terms of the statute, the DMHPs violated no clearly established rights. *See Mucha v. Jackson*, 786 F.3d 1064, 1066 (7th Cir. 2015)("A state law cannot preempt the Fourth Amendment, but it can establish a standard of conduct that is consistent with the amendment but particularized to a specific situation; for the amendment itself is extremely terse (only 54 words in length).").

Because Canty cannot possibly meet his burden of a "clearly established right," the DMHPs are entitled to qualified immunity. The Court should thus grant summary judgment. *See also Hall v. City of Fremont*, 520 Fed. Appx. 609, 611 (9th Cir. 2013) (In mental health detention, lack of clearly established right established qualified immunity even where factual issue precluded presence of probable cause).

**D.  CANTY FAILS TO STATE ANY CLAIMS UNDER THE FIRST, FIFTH, OR EIGHTH AMENDMENTS.**

DMHP's questioning of Plaintiff Canty did not violate his Fifth Amendment rights. First, DMHP Hasegawa read Plaintiff Canty his Miranda rights prior to questioning. *Hasegawa Decl.*, Ex. 1 p. 18. Second, even assuming Plaintiff contests her account and alleges that was not read
KING COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 15

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

his rights or that he invoked his right to an attorney, his Fifth Amendment rights were not violated because they were never admitted as testimony against him in a criminal case.[10] *Chavez v. Martinez,* 538 U.S. 760, 767, 123 S. Ct. 1994, 2001, 155 L. Ed. 2d 984 (2003) (holding that a Fifth Amendment violation occurs only when statements made in violation are admitted in a criminal trial). Plaintiff has likewise alleged that the defendants violated his First and Eighth Amendment rights but his complaint alleges no facts that could conceivably support a violation of those rights.[11]

### E.   CANTY'S CLAIMS AGAINST KING COUNTY SHOULD BE DISMISSED.

Canty's claims against King County should be dismissed because *respondeat superior* cannot support liability under 42 U.S.C. §1983. *Monell v. New York Department of Social Servs..,* 436 U.S. 658, 691(1978). Canty has neither alleged, nor identified a specific and widespread custom, or King County policy that operated to violate his rights. *Safouane v. Fleck*, 226 Fed. Appx. 753, 760 (9th Cir. 2007).

### VII.   CONCLUSION

For the foregoing reasons, the Court should dismiss Canty's entire suit with prejudice.

DATED this 29th day of September, 2017.

                DANIEL T. SATTERBERG
                King County Prosecuting Attorney

                By: */s/ Samantha D. Kanner*
                SAMANTHA D. KANNER, WSBA #36943
                Senior Deputy Prosecuting Attorney

---

[10] Charges related to any allegations DMHP Bonicalzi spoke to Plaintiff about prior to his civil commitment were dismissed on a pretrial motion. (Dkt. 38-1). Additionally, DMHP Bonicalzi would not have been called as a witness in that case as her records would not have been available to the police or criminal prosecutor given their private nature.

[11] Plaintiff Canty's detention under the Involuntary Treatment Act was at Harborview Medical Center, not a King County Facility.

KING COUNTY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 16

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

Attorneys for King County Defendants
500 Fourth Avenue, 9th Floor
Seattle, WA 98104
Telephone: (206) 296-8820
E-Mail: Samantha.Kanner@kingcounty.gov

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on September 29th, 2017, I electronically filed the foregoing document(s) with the Clerk of the Court using the CM/ECF E-Filing System, thus electronically serving counsel for City of Seattle Defendants, and notifying of such filing to the following:

**Kyle Lydell Canty**
**DOC #401358**
**Washington Corrections Center**
**P.O. Box 900**
**Shelton, WA 98584**
**DOCWCCInmateFederal@DOC1.WA.GOV**

I certify under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

DATED this 29th day of September, 2017.


/s/*Lindsey Macalalad*
LINDSEY MACALALAD
Legal Secretary

KING COUNTY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 17

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819