UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KYLE LYDELL CANTY,

                Plaintiff,

    v.

CITY OF SEATTLE, *et al.*,

                Defendants.

Case No. C16-1655-RAJ-JPD

REPORT AND RECOMMENDATION

## INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action proceeding under 42 U.S.C. § 1983. This matter is now before the Court on defendants' motions to dismiss this action as a discovery sanction based upon plaintiff's refusal to answer discovery requests or to appear for his deposition.[1] Plaintiff has been given an opportunity to respond to defendants' motions, but has not availed himself of that opportunity. The Court, having reviewed defendants' motions, and the balance of the record, concludes that defendants' motions to dismiss should be granted, and this action should

---

[1] The City of Seattle defendants request, in the alternative, that the Court compel discovery. The King County defendants request, in the alternative, that they be granted summary judgment.

REPORT AND RECOMMENDATION - 1

be dismissed, with prejudice, for failure of plaintiff to comply with the rules of discovery as set forth in the Federal Rules of Civil Procedure.

## BACKGROUND

The operative complaint in this action is plaintiff's second amended complaint which was filed on June 1, 2017 while plaintiff was confined in the King County Jail. (*See* Dkt. 38.) Plaintiff alleged in his second amended complaint that defendants violated his constitutional rights by stalking and attempting to kill him between July 5 and July 7, 2016, by unlawfully arresting him on July 8, 2016 and having him civilly committed to Harborview Medical Center for mental health evaluation and treatment, and by unlawfully arresting him a second time on July 13, 2016. (*See id*.) Plaintiff identified the following defendants in his second amended complaint: the City of Seattle; King County; City of Seattle police officers Timothy Renihan, Sean Culbertson, Marshal Coolidge, and Andrew Hancock; and, King County mental health professionals Gail Bonicalzi and Melinda Hasegawa. (*See id*.)

Defendants filed timely answers to plaintiff's second amended complaint (Dkts. 60, 64), and on August 11, 2017, this Court issued a Pretrial Scheduling Order setting deadlines for the completion of discovery and for the filing of dispositive motions (Dkt. 87). The deadline established for the completion of discovery was November 13, 2017. (*See id*. at 1.) Sometime in August 2017, after plaintiff was convicted and sentenced in King County Superior Court on charges of assaulting two Seattle police officers, he was transferred from the King County Jail to the Washington Corrections Center ("WCC") in Shelton, Washington. (*See* Dkts. 73, 98.)

On July 21, 2017, the same day the King County defendants filed their answer to plaintiff's second amended complaint, counsel for the King County defendants sent plaintiff a letter requesting that he sign and return an enclosed release for medical records from the

REPORT AND RECOMMENDATION - 2

University of Washington Medical Network, and an enclosed authorization and stipulation to obtain medical records from Harborview Medical Center and Western State Hospital. (Dkt. 124 at 1-2.) Plaintiff never responded to that letter. (*Id*. at 2.) On August 16, 2017, the City of Seattle defendants sent a set of interrogatories and requests for production to plaintiff at WCC via U.S. Mail. (*See* Dkt. 122 at 1 and Ex. 1.) Also included in that mailing were authorizations and stipulations for plaintiff's signature to permit defendants to obtain copies of relevant medical records from Harborview Medical Center, King County Adult Detention, and Western State Hospital. (*Id*.) On September 1, 2017, the City of Seattle's discovery requests were returned unopened, with a notation indicating that plaintiff had refused to accept the mail. (*See id*.)

On September 6, 2017, the City of Seattle issued a notice of deposition and a subpoena which were hand delivered to plaintiff the same day by a member of the WCC staff. (*See id*. at 2 and Ex. 2.) The deposition was arranged with the cooperation and agreement of the WCC administration, and was scheduled to occur at WCC on September 14, 2017. (*See id*.) Counsel for the King County defendants intended to participate in the deposition as well. (Dkt. 124 at 2.)

On September 8, 2017, prior to plaintiff's scheduled deposition, counsel for the City of Seattle defendants sent plaintiff a letter at WCC indicating an intention to confer with plaintiff regarding other discovery matters during plaintiff's deposition on September 14, 2017. (*See* Dkt. 122 at 2 and Ex. 3.) Counsel specifically referenced plaintiff's prior refusal to accept delivery of the City of Seattle defendants' discovery requests, and the authorizations to receive records from plaintiff's health care providers, which had been mailed to plaintiff in August 2017. (*See id*.) Counsel for the King County defendants likewise intended to request that plaintiff sign releases for his complete medical records, which he had previously failed to provide, when counsel appeared for plaintiff's deposition. (*See* Dkt. 124.)

REPORT AND RECOMMENDATION - 3

On September 14, 2017, counsel for the City of Seattle defendants, counsel for the King County defendants, and a court reporter travelled to WCC to take plaintiff's deposition. (Dkt. 122 at 2; Dkt. 124 at 2.) Upon arriving at WCC, counsel were advised by WCC staff that plaintiff refused to leave his cell to participate in his deposition and a discovery conference. (*See id.*) WCC staff permitted counsel for the City of Seattle defendants to speak with plaintiff from outside his cell. (Dkt. 122 at 2.) Plaintiff was sitting on the bed inside his cell with a sheet covering him and he refused to respond to counsel's questions. (*Id.* at 3.) WCC staff digitally recorded counsel's interaction with plaintiff, and counsel for the King County defendants reviewed this video footage while still on the premises at WCC. (Dkt. 124.) Counsel's description of what she saw on the video footage was consistent with the description of events as related by counsel for the City of Seattle defendants. (*See id.*) Prior to departing WCC, counsel documented plaintiff's refusal to participate on the record. (*See* Dkt. 122, Ex. 4.)

Following this unsuccessful attempt to take plaintiff's deposition, defendants filed their motions to dismiss this action based on plaintiff's refusal to participate in the discovery process. (Dkts. 121, 123.) Plaintiff failed to respond in any fashion to defendants' dispositive motions, though he did find time during the period he could have been preparing his response to file a series of frivolous motions and other documents. (*See* Dkts. 135-143.)

On October 30, 2017, the Court issued an Order striking multiple documents filed by plaintiff which were not in compliance with the Court's Prisoner E-Filing Initiative. (Dkt. 149.) The Court also noted therein plaintiff's failure to respond to the pending dispositive motions, despite having had ample time to do so. (*Id.*) The Court nonetheless granted plaintiff another opportunity to respond given that a ruling in defendants' favor on the pending motions would result in termination of this action. (Dkt. 149 at 3.) Plaintiff was directed to file any response to

REPORT AND RECOMMENDATION - 4

the pending dispositive motions by November 27, 2017.  (*Id.*)  He was also advised that defendants had made a compelling argument for dismissal based on his failure to participate in the discovery process, and he was warned that if he continued to refuse to participate in discovery the Court would have no alternative but to recommend dismissal of this action.  (*Id.*)

The Court subsequently learned that plaintiff had been released from WCC, without a forwarding address, on the same date the Court issued its Order re-noting the pending dispositive motions.  (*See* Dkts. 151, 152, 154.)  On October 31, 2017, counsel for the City of Seattle defendants sent letters by certified mail to plaintiff at his last known addresses, and included with those letters copies of (1) this Court's October 30, 2017 Order striking certain submissions and re-noting defendants' dispositive motions, (2) the City of Seattle defendants' Interrogatories and Requests for Production, and (3) the City of Seattle defendants' authorizations and stipulations for plaintiff's medical records.  (Dkt. 152 at 2 and Ex. C.)  Plaintiff was asked to provide the Court and counsel with his current address, to respond to the enclosed discovery requests, and to sign and return the authorizations and stipulations.  (*See id.*)  The certified letters were delivered and signed for on plaintiff's behalf at both of the addresses to which they were sent.  (*See id.* and Ex. D.)

On December 7, 2017, plaintiff submitted a notice of change of address in which he identified 77 S. Washington Street, Seattle, WA 98104, as his new and permanent address.  (*See* Dkt. 155.)  This is one of the two addresses to which counsel for the City of Seattle defendants had sent the October 31, 2017 letter and attachments requesting action from plaintiff.  (*See* Dkt. 152, Ex. C.)  Also on December 7, 2017, plaintiff submitted a "Notice of Unavailability" in which he indicated that he would be unavailable for an unspecified period of time because Washington Department of Corrections officers had broken his tibia before his release from

REPORT AND RECOMMENDATION - 5

1   WCC and he was going to require surgery.  (Dkt. 156.)  Plaintiff attached to his notice an "After

2   Visit Summary," prepared by a physician at the University of Washington on November 6, 2017,

3   which stated as follows:

4   > You have a ligament knee injury (ACL avulsion of tibial eminence).  In order to have surgery for your knee you need to have a stable housing situation for 6
5   > months after surgery.  Please notify us if you are able to do this.

6   (Dkt. 156-1 at 1.)  This document also specifically indicated that plaintiff had no upcoming visits

7   scheduled.  (*Id.*)  This is the last communication the Court received from plaintiff.

8                                              DISCUSSION

9   Defendants move to dismiss this action as a discovery sanction based on plaintiff's

10  refusal to answer discovery or to participate in a deposition.[2]  Pursuant to Fed. R. Civ. P.

11  37(d)(1), a court may impose sanctions if a party fails to appear for his deposition after being

12  served with proper notice, or if a party fails to respond to interrogatories or requests for

13  production after being properly served with such discovery requests.  Permitted sanctions for

14  such discovery violations include dismissal of the action.  *See* Fed. R. Civ. P. 37(b)(2)(A)(v) and

15  (d)(3).

16  District courts have substantial discretion to impose the extreme sanction of dismissal

17  where there has been flagrant, bad faith disregard of discovery duties.  *Nat'l Hockey League v.*

18  *Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).  The Ninth Circuit has recognized that

19  "[o]nly willfulness, bad faith, and fault justify terminating sanctions," and has identified a five-

20  part test to apply in determining whether a case dispositive sanction under Fed. R. Civ. P.

21

22  [2] Defendants also argue that dismissal of this matter under LCR 41(b) is warranted based on plaintiff's failure to prosecute this action by refusing to accept documents that are mailed to him and by refusing to participate in the Court's mandatory e-filing program.  While there are many indications that plaintiff has no intention of
23  prosecuting this action in good faith, he does not, at present, meet the requirements for dismissal under LCR 41(b).

REPORT AND RECOMMENDATION - 6

37(b)(2) is appropriate. *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (internal quotation and citation omitted). The five factors include: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id*. (citing *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003)).[3] The fifth factor contains three subparts which require the court to assess "whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." *Id*.

The Ninth Circuit has explained that this test is "not mechanical," and is not a set of conditions precedent for the imposition of sanctions. *Id*. Rather, the test provides the district court with a way to think about what to do in a given case. *See id*. The Ninth Circuit has also made clear that "[t]he most critical factor to be considered in case-dispositive sanctions is whether 'a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts.'" *Id*. at 1097 (citing *Valley Engineers*, 158 F.3d at 1058).

Certainly, the first two factors identified above; *i.e.*, the public's interest in expeditious resolution of litigation and the court's need to manage its docket, favor dismissal of this action as plaintiff's absolute refusal to participate in any form of discovery precludes this action from moving forward in any constructive way. The third factor also favors dismissal as the risk of prejudice to defendants is significant if the Court permits this action to proceed in the face of

---

[3] This Court notes that the Ninth Circuit's citation to *Jorgensen* is incorrect. The quoted language, in fact, comes from the Ninth Circuit's decision in *Valley Engineers Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).

REPORT AND RECOMMENDATION - 7

plaintiff's obstructive conduct. Defendants should not be required to defend this action without access to plaintiff's full mental health records, and without being able to depose plaintiff. Plaintiff has given no indication that he is willing to permit either of these things to occur. Moreover, as defendants correctly note, plaintiff has already demonstrated his willingness to disobey court orders,[4] and his intent to hide relevant facts from defendants.[5]

With respect to the fourth factor, the Court acknowledges the public policy favoring disposition on the merits, but that objective can only be achieved if plaintiff elects to cooperate in the process, something he has steadfastly refused to do during the pendency of this action. Plaintiff has inundated the Court and defendants with frivolous motions and other unnecessary documents, but has taken no steps to help actually move this case forward. Finally, as to the fifth factor, the availability of less drastic sanctions, the Court has considered that option, but can conceive of no lesser sanctions that are likely to influence plaintiff's behavior. Plaintiff is indigent and, thus, monetary sanctions are unlikely to have any deterrent effect. Plaintiff has already demonstrated that he is distrustful of, and therefore uncooperative with, counsel for

---

[4] Plaintiff was notified on five separate occasions that compliance with the Court's Prisoner E-Filing Initiative was mandatory, and he consistently ignored these notices. When the Court, on September 15, 2017, issued an Order directing plaintiff to show cause why he was not complying with the mandatory Prisoner E-Filing Initiative, plaintiff essentially responded that because he had never entered into any agreement with the Court to comply with the Prisoner E-Filing Initiative, he was not bound by it. (Dkt. 134.) The Court ultimately ordered that 17 improperly file documents be stricken from the record due to the inadequacy of plaintiff's response to the Order to Show Cause. (*See* Dkt. 149.)

[5] In a declaration filed by plaintiff on September 25, 2017, plaintiff explained how he had requested and obtained his medical files from Harborview Medical Center approximately a year and a half prior, and how he had ordered a paper form of the records "because he knew the King County Prosecutors Office would be dumb enough to order Cd/DVD format in order to alter the records, and then say that they're authentic." (Dkt. 120 at 4.) Plaintiff went on to state that "I clearly have a spare set of original untampered medical files from Harborview Medical Center that the defendants will never find." (*Id.*; *see also*, Dkt. 119 at 7 ("the Plaintiff has the real copy of the medical records in question in a secret undisclosed location and will not be using anything that the defendants claim is a true copy").)

REPORT AND RECOMMENDATION - 8

defendants, and he seems to have no compunction about disobeying this Court's directives if it serves his purposes.

Moreover, plaintiff was specifically advised in the Court's Order granting him additional time to respond to defendants' dispositive motions that defendants had made a compelling argument for dismissal of this action based upon plaintiff's failure to participate in the discovery process, and warned plaintiff that the Court would have no alternative but to recommend dismissal of this action if he continued in his refusal to participate in discovery.  Despite this warning, plaintiff has made no apparent effort to respond to the discovery requests sent to him by the City of Seattle defendants on October 31, 2017 (*see* Dkt. 152, Ex. C), nor has he made any attempt to file a response to defendants' dispositive motions.  As noted above, plaintiff did submit a notice of unavailability to the Court citing his need for surgery on his knee/tibia, but the medical documentation submitted with that notification indicated that in order for plaintiff to have the recommended surgery, he would need to have a stable housing situation for six months after surgery.  (*See* Dkts. 156, 156-1.)  As far as this Court can discern, plaintiff is currently homeless and has been since his release from custody.[6]  It therefore seems unlikely that the cited medical issue precludes him from litigating this action.

Because plaintiff has refused to participate in the discovery process, because this action cannot move forward without plaintiff's participation, because defendants have already invested substantial resources in attempting to defend this action only to be thwarted by plaintiff's recalcitrant behavior, and because plaintiff has ignored warnings that this action would likely be

---

[6] The mailing address provided by plaintiff upon his release from custody is an emergency shelter in Seattle.

REPORT AND RECOMMENDATION - 9

dismissed absent his participation in the discovery process, dismissal of this action as a discovery sanction is warranted.

## CONCLUSION

Based on the foregoing, this Court recommends that defendants' motions to dismiss this action as a discovery sanction be granted, and that plaintiff's second amended complaint and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **March 21, 2018**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 23, 2018.**

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 28th day of February, 2018.

_____
JAMES P. DONOHUE
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 10