```
___ FILED      ___ ENTERED
___ LODGED     ___ RECEIVED

       JUL 24 2018    DJ

         AT SEATTLE
   CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                      DEPUTY
```

HON. Richard A. Jones

HON. James P. Donohue

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

KYLE LYDELL CANTY,

               Plaintiff,

VS

CITY OF SEATTLE, et al

               Defendants.

Case NO.  2:16-cv-01655-RAJ-JPD

Hidden Declarations of S.P.D.

Officer Marshall Coolidge

With Exhibits Attached

### Certification of Oath

I Kyle Lydell Canty does certify that these are the multiple contradicting declarations of Officer Marshall Coolidge of the Seattle Police. The multiple declarations of Marshall Coolidge shall be used against him in a court of law! Also it shall be used against him in the karmic laws of the universe.  Seattle Police Department officer Marshall Coolidge is above the age of 18 years old, does not have common sense and is not a logical thinker. Attached is the original declarations of Marshall Coolidge. The King County Chief Prosecutor Daniel T. Satterberg tried to hide these documents.

Kyle Lydell Canty
77 S. Washington St.
Seattle WA, 98104

## Statement of Issues

The plaintiff has Major "Question of Fact" issues with the defendant who goes by the name of Marshall Coolidge, along with the rest of the defendants. Should the U.S. District Court Western District of Washington At Seattle continue to try to hide contradicting clear convincing evidence that proves that all of the defendants are compulsive liars from the very start? Should the administrative body of the United States District Court Western district of Washington at Seattle continue to allow this high level of Corruption?

## Statement of Facts

1. In the defendant and terrorist Marshall Coolidge's multiple contradicting declarations that he gave to his fellow Seattle Police Department Colleagues he flat out says and quote.." Prior to this briefing, while we were parked in the 600 block of Pine ST. Canty approached our vehicle passenger side and **began filming us with his phone** as we sat in our SUV. Canty asked us several question about why we were there, At some moments his phone was six inches from our window"( See Exhibits Attached)

2. In the defendant and terrorist Marshall Coolidge's multiple declarations that he gave to his fellow Seattle police Department colleagues he flat out says and quote.. "At approximately 1900 hours, we approached northbound on 4rth Ave approaching pike St. I was seated in the rear driver's seat, as our SUV pulled through the intersection of 4rth and pike I heard that he was on northwest corner of 4rth and pike. Kyle walked up to our SUV driver's side. I got out of the car and moved to Kyle's left arm to retrain it in an escort position simultaneously telling him that he was under arrest. I forced his left arm behind his back in a gooseneck wristlock he began to and continued to yell, **"why are you attacking me"** he was wearing a light jacket and had a large bag."( See Exhibits Attached)

Kyle Lydell Canty
77 S. Washington St.
Seattle WA, 98104

3. In the defendant and terrorist Marshall Coolidge's multiple contradicting declarations that he gave to his fellow Seattle Police Department colleagues he flat out says and quote" I was not injured during the incident." "( See Exhibits Attached)

4. In the defendant and terrorist Marshall Coolidge's multiple contradicting declarations that he gave to his fellow Seattle Police Department colleagues he flat out says and quote.. " Kyle Repeated, Don't talk to me and I want a lawyer" "( See Exhibits Attached)

### Conclusion

Does the United States District Court Western District Court Western District of Washington At Seattle realize that clearly the Seattle Police Department Officers and Federal Bureau of Retardation were so focused on the cell phone video footage evidence that they went through great lengths to knowingly, intentionally, maliciously, and willfully destroy, they totally forgot to destroy all of the paper evidence. Why would these idiots leave all of this paper evidence behind of their misconduct and open the doors of hell for themselves? It seems to us that all of the defendants are on a Taliban mission screaming Ji-Had Ji-Had because this is just plain suicide going up against a force such as the plaintiff Kyle Lydell Canty and his team, didn't these idiots know that this was going to happen? The Federal Bureau of Retards must have not told them about this part lol lmao.

Prepared by:
*07/24/2018*
Kyle Lydell Canty

WE WILL NOW BEGIN TO TEACH THE WORLD HOW ONE

LEGALLY AND MENTALLY ATTACKS THE UNITED STATES

VIOLENCE IS NOT NEESARRY AT THIS POINT

ESPECIALLY NOT WITH THIS PAPPER TRAIL, THEY LEFT BEHIND LOL LMAO!

"FORM SF- 95"

Kyle Lydell Canty
77 S. Washington St.
Seattle WA, 98104



| | | |
|---|---|---|
| **SEATTLE POLICE DEPARTMENT** | | **GO# 2016-244744** |
| **GENERAL OFFENSE HARDCOPY** | | **REFERRED TO NON-LAW ENFORCEMENT AGENCY** |
| KC PROSECUTOR RELEASE COPY | | |
| (X-100 CRISIS) | | |

Follow Up Report # 3

### Related Text Page(s)

```
    Narrative Text # 2
         Document  [REPORT SNAPSHOT]
           Author  6666 - COOLIDGE, MARSHALL O
          Subject  REPORT SNAPSHOT
Related Date/Time  SEP-08-2016 (THU.) 1558
```

```
Textual representation of the officer's MRE report


REPORT INFORMATION
==============================================================================
Offense # : 244744
Offense year : 2016
Submitted by : 6666 (COOLIDGE, MARSHALL O (6666))
Date reported : 09-08-2016


NARRATIVE TEXT
==============================================================================
Subject : COOLIDGES STATEMENT
Type of text : ST (STATEMENT)
Author : 6666 (COOLIDGE, MARSHALL O)
Related Date : 09-08-2016
Time : 1556
On 07-08-2016 I was working as a SWAT officer in a marked police SUV with
Sgt. Hancock, Ofc. Bonet, and Ofc. Keating. I was equipped with my ICV
microphone. I have been a police officer for approximately sixteen years,
have been on the SWAT team for over three years, and I attended the WSCJTC
40 hour CIT course. On this day we were working as rapid response unit
following the murder of five Dallas police officers that occurred one day
prior. At approximately 1840 hours we were summoned to the SPD Real Time
Crime Center to attend a briefing to (arrest for "emergent detention" -
Threats to Shoot Police Officers/Crisis), Kyle L. Canty B/M/07-20-85. At
the RTCC I was handed a bulletin stating that on 7-7-16, during a march in
Seattle, Canty told police that the box he was carrying had extended
magazines and was going to buy a Glock 19. According to the bulletin he
stated today that if police approach him that he would shoot them. The
bulletin stated that Kyle presents an "Imminent likelihood of serious harm
per RCW 71.05.153." When I saw the picture on the bulletin I recognized
the picture as a male that I saw in the 600 block of Pine St. approximately
fifteen minutes prior. Det Renihan stated during the briefing that he
would likely fight with us. As we were leaving the briefing I heard via
radio that officers had located him and had him in sight near 4th Ave and
```



| | | |
|---|---|---|
| | **SEATTLE POLICE DEPARTMENT** | GO# 2016-244744 |
| | **GENERAL OFFENSE HARDCOPY** | REFERRED TO NON-LAW ENFORCEMENT |
| | KC PROSECUTOR RELEASE COPY | AGENCY |
| | (X-100 CRISIS) | |

Follow Up Report #  3

## Related Text Page(s)

| | |
|---|---|
| Narrative Text # | 1 |
| Document | STATEMENT |
| Author | 6666 - COOLIDGE, MARSHALL O |
| Subject | COOLIDGES STATEMENT |
| Related Date/Time | SEP-08-2016 (THU.) 1556 |

On 07-08-2016 I was working as a SWAT officer in a marked police SUV with Sgt. Hancock, Ofc. Bonet, and Ofc. Keating. I was equipped with my ICV microphone. I have been a police officer for approximately sixteen years, have been on the SWAT team for over three years, and I attended the WSCJTC 40 hour CIT course. On this day we were working as rapid response unit following the murder of five Dallas police officers that occurred one day prior. At approximately 1840 hours we were summoned to the SPD Real Time Crime Center to attend a briefing to (arrest for "emergent detention" - Threats to Shoot Police Officers/Crisis), Kyle L. Canty B/M/07-20-85. At the RTCC I was handed a bulletin stating that on 7-7-16, during a march in Seattle, Canty told police that the box he was carrying had extended magazines and was going to buy a Glock 19. According to the bulletin he stated today that if police approach him that he would shoot them. The bulletin stated that Kyle presents an "Imminent likelihood of serious harm per RCW 71.05.153." When I saw the picture on the bulletin I recognized the picture as a male that I saw in the 600 block of Pine St. approximately fifteen minutes prior. Det Renihan stated during the briefing that he would likely fight with us. As we were leaving the briefing I heard via radio that officers had located him and had him in sight near 4th Ave and Pine.

Prior to this briefing, while we were parked in the 600 block of Pine St, Canty approached our vehicle passenger side and began filming us with his phone as we sat in our SUV. Canty asked us several questions about why we were there. He seemed to be taunting us to elicit a reaction from us. At some moments his phone was less than six inches from our windows. After several minutes of this behavior, we were summoned to the above briefing, not knowing that he was the subject of that briefing.

At approximately 1900 hours we approached northbound on 4th Ave approaching Pike St. I was seated in the rear driver's side seat. As our SUV pulled through the intersection of 4th and Pike I heard that he was on the northwest corner of 4th and Pike. Kyle walked up to our SUV driver's side. I got out of the car and moved to Kyle's left arm to restrain it in an escort position simultaneously telling him that he was under arrest. He immediately tensed up and tried to pull away. I forced his left arm behind his back in a "gooseneck" wristlock. He began to and continued to yell, "Why are you attacking me? He was wearing a light jacket and had a large

*Officer George Statement*

On 07-08-2016 I was working as a SWAT officer in a marked police SUV with Sgt. Hancock, Ofc. Bonet, and Ofc. Keating. I was equipped with my ICV microphone. I have been a police officer for approximately sixteen years, have been on the SWAT team for over three years, and I attended the WSCJTC 40 hour CIT course. On this day we were working as rapid response unit following the murder of five Dallas police officers that occurred one day prior. At approximately 1840 hours we were summoned to the SPD Real Time Crime Center to attend a briefing to (arrest for "emergent detention" – Threats to Shoot Police Officers/Crisis), Kyle L. Canty B/M/07-20-85. At the RTCC I was handed a bulletin stating that on 7-7-16, during a march in Seattle, Canty told police that the box he was carrying had extended magazines and was going to buy a Glock 19. According to the bulletin he stated today that if police approach him that he would shoot them. The bulletin stated that Kyle presents an "Imminent likelihood of serious harm per RCW 71.05.153." When I saw the picture on the bulletin I recognized the picture as a male that I saw in the 600 block of Pine St. approximately fifteen minutes prior. Det Renihan stated during the briefing that he would likely fight with us. As we were leaving the briefing I heard via radio that officers had located him and had him in sight near 4th Ave and Pine.

Prior to this briefing, while we were parked in the 600 block of Pine St, Canty approached our vehicle passenger side and began filming us with his phone as we sat in our SUV. Canty asked us several questions about why we were there. He seemed to be taunting us to elicit a reaction from us. At some moments his phone was less than six inches from our windows. After several minutes of this behavior, we were summoned to the above briefing, not knowing that he was the subject of that briefing.

At approximately 1900 hours we approached northbound on 4th Ave approaching Pike St. I was seated in the rear driver's side seat. As our SUV pulled through the intersection of 4th and Pike I heard that he was on the northwest corner of 4th and Pike. Kyle walked up to our SUV driver's side. I got out of the car and moved to Kyle's left arm to restrain it in an escort position simultaneously telling him that he was under arrest. He immediately tensed up and tried to pull away. I forced his left arm behind his back in a "gooseneck" wristlock. He began to and continued to yell, "Why are you attacking me? He was wearing a light jacket and had a large backpack on his back. He continued to tense his arm and squirm his body. I placed my left foot on top of his left foot while Ofc. Keating and Sgt. Hancock attempted to restrain other limbs. I told him that we were arresting him for an emergent detention. After struggling with him for approximately thirty seconds I felt Kyle falling backwards as a result of Ofc Keating forcing him backwards in an attempt to take him to the ground. Maintaining control of his left arm I lowered Kyle to the ground and onto his right side and then rolled him to his stomach. I straddled his legs with my legs to prevent him from flailing and or kicking out of our restraining techniques. While holding his left arm Sgt Hancock placed handcuffs on him. Once he was handcuffed I double locked the cuffs to prevent them from getting tighter. I maintained control of Kyle's legs while waiting for the ambulance

to arrive with the gurney. Before the ambulance arrived I saw Det. Renihan approach Kyle and attempt to tell him what was happening. Kyle continued to yell, interrupting Det. Renihan.

AMR EMTs Brittney Holm and Wendy Benitez of Unit 909 (206-444-4444) arrived with the gurney. At this point Kyle was face up in a semi seated position canted to one side. When the gurney arrived Kyle kick his legs attempting to defeat my control of his legs. I had been straddling his legs just above his knees with my legs to restrain them. Knowing that we would have to lift him on to the gurney as he was not likely to cooperate, I adjusted my control of his legs by wrapping my arms around both of his legs, just above the knee. As I did this, Kyle continued to kick his legs, kneeing me in the side of my head, on and above the ear causing brief discomfort from the impact. Based on the circumstance that he was already handcuffed and restrained by several officers, I believe a reasonable person would have realized that escape was no longer possible. I believe that his physical actions were an attempt to harm those within reach who was restraining him. Even though he was struggling with us, Ofc. Keating, Ofc. Rurey, and I lifted him to get him on to the gurney. I was able to maintain enough of a grip around his legs near the knees to assist with the lift onto the gurney. Once on the gurney I lost control of his legs completely and backed up to prevent from getting kicked again. He continued to kick at me with both feet while his upper body was controlled by the other officers. I was just beyond his range at the end of the gurney as he kicked. As he was kicking toward me he was looking directly at me as though he was targeting me to strike me. I was able to move to the side of the gurney and regain control of his legs without getting struck a second time. I restrained his legs while AMR Wendy secured the soft restraints. Once his legs were secured I removed my hands from his legs. Once Kyle was fully restrained AMR Wendy and Brittney wheeled him to the ambulance. Sgt. Hancock chose Ofc. Rurey and I to ride in the ambulance with AMR to Harborview. I entered the ambulance and sat in the jump seat behind the driver's seat.

While enroute to Harborview AMR Brittney attempted to take vital signs and ask medical questions of Kyle. Kyle repeated, "Don't talk to me." And "I want my lawyer." Approximately half way to Harborview Kyle yelled that the handcuffs hurt and indicated that his right wrist hurt. I explained to him that because he was restrained on the gurney handcuffed behind his back and his likelihood to continue to fight with us, I could not loosen the cuffs at that time. He continued to yell that he wanted his lawyer and to not talk to him, even though I was not attempting to. At some point during the transport my ICV microphone shut down.

We arrived at Harborview Medical Center and exited the ambulance. AMR Brittney and Wendy rolled Kyle into the entrance of HMC. I informed Sgt Gaedcke who arrived approximately one minute later that he complained of handcuff pain and that I didn't think it safe or feasible to loosen them while he was on the gurney in the ambulance. When more officers arrived at the hospital a few minutes later, we loosened the gurney restraints across his upper body and Ofc. Keating removed the handcuffs and AMR

EMT's secured his wrists in the soft restraints. I did not observe any injuries on Kyle. I left the hospital and returned to finish my statement. I was not injured during the incident.